**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PFIZER INC.,<br><br>                      Plaintiff,<br><br>       v.<br><br>TEVA PHARMACEUTICALS USA and<br>TEVA PHARMACEUTICAL INDUSTRIES LTD.<br><br>                  Defendants. | Civil Action No. 06-89 (GMS) |

**OPENING BRIEF OF DEFENDANTS TEVA PHARMACEUTICALS USA, INC.**
**AND TEVA PHARMACEUTICAL INDUSTRIES LTD.**
**IN SUPPORT OF THEIR MOTION TO TRANSFER VENUE**
**TO THE SOUTHERN DISTRICT OF NEW YORK PURSUANT TO 28 U.S.C. § 1404(a)**

Mary B. Matterer #2696
MORRIS, JAMES, HITCHENS & WILLIAMS LLP
222 Delaware Avenue, 10th Floor
P.O. Box 2306
Wilmington, DE  19899-2306
Tel.: (302) 888-6960
Fax: (302) 571-1750
mmatterer@morrisjames.com

*Counsel for Defendants Teva Pharmaceuticals*
*USA, Inc. and Teva Pharmaceutical Industries Ltd.*

*Of Counsel*:
Steven J. Lee
Elizabeth J. Holland
Sheila Mortazavi
Cynthia Lambert Hardman
KENYON & KENYON LLP
One Broadway
New York, NY 10004
Tel.: (212) 425-7200
Fax: (212) 425-5288

Date:  February 23, 2006

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................. 1

II.     NATURE AND STAGE OF THE PROCEEDINGS ............................. 2

III.    SUMMARY OF ARGUMENT ............................................................ 3

IV.     STATEMENT OF FACTS ................................................................... 4

        A.      There is a Closely Related Action Involving the Same Accused Products
                and Similar Azithromycin Crystal Form Patents Currently Pending in the
                Southern District of New York .................................................................. 4

        B.      Teva USA and Teva Ltd. Have Filed a Mirror-Image Declaratory
                Judgment Action in the Southern District of New York ........................... 6

        C.      Delaware Bears No Meaningful Connection to This Litigation ................ 6

                1.      Delaware is Not Pfizer's Home Turf ............................................. 6

                2.      There are No Documents or Witnesses Located in Delaware ........ 7

        D.      Litigating This Case in Delaware Would Pose a Burden to the Israeli
                Witnesses ................................................................................................ 7

V.      ARGUMENT ...................................................................................... 8

        A.      Transfer to the Southern District of New York Is Warranted ................... 8

                1.      Transfer Would Serve the Interests of Justice  ............................... 8

                2.      Pfizer Did Not Bring This Action on its Home Turf .................... 10

                3.      New York is The Most Convenient Forum for the Parties and
                        Witnesses  .................................................................................. 11

                4.      The Balance of Interests Weighs Heavily In Favor of Transfer ... 12

        B.      The Action Could Have Been Brought in the Southern District of New
                York ....................................................................................................... 15

VI.     CONCLUSION ................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affymetrix, Inc. v. Synteni, Inc.*,
  28 F. Supp. 2d 192 (D. Del. 1998) .............................................................................8, 10

*Allergan, Inc. v. Alcon Labs., Inc.*,
  No. 02-1682-GMS, 2003 U.S. Dist. LEXIS 2564 (D. Del. Feb. 25, 2003) ..........11, 12, 13

*Arrow Commc'n Labs., Inc. v. John Mezzalingua Assocs., Inc.*,
  No. 05-357-SLR, 2005 U.S. Dist. LEXIS 25004 (D. Del. Oct. 26, 2005) ...................9, 10

*At Home Corp. v. Cox Commc'ns Inc.*,
  No. 02-1486-JJF, 2003 U.S. Dist. LEXIS 18320 (D. Del. Oct. 8, 2003) .........................14

*Bayer Bioscience N.V. v. Monsanto Co.*,
  No. 03-023-GMS, 2003 U.S. Dist. LEXIS 4594 (D. Del. March 25, 2003) ..............12, 13

*Brunswick Corp. v. Precor Inc.*,
  No. 00-691-GMS, 2000 U.S. Dist. LEXIS 22222 (D. Del. Dec. 12, 2000) .......................8

*Corixa Corp. v. IDEC Pharms. Corp.*,
  No. 01-615-GMS, 2002 U.S. Dist. LEXIS 2980 (D. Del. Feb. 25, 2002).........................12

*Jumara v. State Farm Ins. Co.*,
  55 F.3d 873 (3d Cir. 1995).................................................................................................8

*Kirschner Bros. Oil, Inc. v. Pannill*,
  697 F. Supp. 804 (D. Del. 1998).................................................................................11, 12

*Liggett Group Inc. v. R.J. Reynolds Tobacco Co.*,
  102 F. Supp. 2d 518 (D.N.J. 2000) ...................................................................................8

*Nilssen v. OSRAM Sylvania, Inc.*,
  No. 00-695-JJF, 2001 U.S. Dist. LEXIS 25570 (D. Del. May 1, 2001).............................9

*Original Creatine Patent Co. v. Kaizen, Inc.*,
  No. 02-471-SLR, 2003 U.S. Dist. LEXIS 988 (D. Del. Jan. 22, 2003)............................12

*Sumito Mitsubishi Silicon Corp. v. MEMC Elec. Materials, Inc.*,
  No. 04-852-SLR, 2005 U.S. Dist. LEXIS 5174 (D. Del. March 30, 2005)........................8

*Virgin Wireless, Inc. v. Virgin Enters. Ltd.*,
  201 F. Supp. 2d 294 (D. Del. 2002)..................................................................................10

ii

**Statutes and Rules**

28 U.S.C. § 1391(b) ...................................................................................................15

28 U.S.C. § 1391(c) ...................................................................................................15

28 U.S.C. § 1400(b) ...................................................................................................15

28 U.S.C. § 1404(a) ...............................................................................1, 3, 8, 12, 14, 15

35 U.S.C. § 271(a) .......................................................................................................3

35 U.S.C. § 271(e)(2)(A) .............................................................................................3

10 Del. Code § 3104 ...................................................................................................15

N.Y. Civ. Prac. Laws and Rules § 302 .....................................................................15

Defendants Teva Pharmaceuticals USA, Inc. ("Teva USA") and Teva Pharmaceutical Industries Ltd. ("Teva Ltd.") respectfully submit this brief in support of their motion to transfer venue to the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1404(a).

## I.    INTRODUCTION

Pfizer commenced this patent infringement action in the District of Delaware even though Teva USA and Pfizer have been litigating substantially similar issues before Judge Loretta A. Preska of the Southern District of New York for over two years (the "New York Action"). In both this action and the New York action, Pfizer has alleged that Teva USA's generic azithromycin tablets infringe a Pfizer patent claiming a crystalline form of the drug azithromycin. In the New York Action, Pfizer has claimed that Teva USA's generic azithromycin tablets infringed a patent claiming azithromycin dihydrate. In the current action, Pfizer claims that those same tablets infringe, instead, a patent claiming azithromycin sesquihydrate.

Both this action and the New York Action concern the same technology, and the parties have already submitted extensive briefing to Judge Preska on the complex scientific issues in the case, including polymorphism of molecular crystals and the analytical techniques used to identify and quantify crystalline forms of compounds. Judge Preska has also been briefed on the crystalline form of the active pharmaceutical ingredient ("API") in Teva USA's generic azithromycin tablets, and the formulation, manufacture and labeling of Teva USA's generic azithromycin products – all of which will undoubtedly be at issue in the present action. Transferring this case to the Southern District of New York would therefore result in a significant conservation of judicial resources.

1

Moreover, there is no connection between Delaware and Pfizer's cause of action. New York, not Delaware, is Pfizer's home turf. The witnesses that Teva USA and Teva Ltd. will likely seek to depose, and may want to have appear at trial, are current or former Pfizer employees located in New York and Connecticut. The witnesses that Pfizer will likely seek to depose are, for the most part, Teva Ltd. employees located in Israel, where Teva USA's generic azithromycin tablets were researched and developed, and where they are manufactured and tested. None of Teva USA's or Teva Ltd.'s documents or witnesses are located in Delaware.

In sum, Pfizer's choice of Delaware as the forum for this suit does not reflect any rational and legitimate concerns. It is simply a case of forum shopping. For the reasons set forth below, Teva USA and Teva Ltd.'s motion should be granted, and this case should be transferred to the Southern District of New York.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

This is a patent infringement action. The accused products are 250 mg, 500 mg and 600 mg generic azithromycin tablets marketed by Teva USA pursuant to Abbreviated New Drug Application ("ANDA") Nos. 65-153, 65-193 and 65-150, respectively ("Teva USA's azithromycin products"). (Complaint, D.I. 1, at ¶ 23.) These same azithromycin products are the subject of the currently pending New York Action. (*See* Declaration of Cynthia Lambert Hardman in Support of Teva's Motion to Transfer, filed herewith ("Hardman Dec."), Exs. A, B.) The patent in suit is U.S. Patent No. 6,977,243 (the "'243 patent"), which claims azithromycin sesquihydrate, a particular crystalline form of the drug azithromycin. (Complaint, D.I. 1, ¶ 16 and Exs. A and B thereto.)

2

In its complaint, Pfizer alleges that Teva USA infringed the '243 patent under 35 U.S.C. § 271(e)(2)(A) by filing ANDAs seeking to market its azithromycin products, and under 35 U.S.C. § 271(a) by importing and selling its azithromycin products. (*Id.* ¶¶ 25-28.) In addition, Pfizer alleges that Teva Ltd. has actively induced Teva USA to directly infringe the '243 patent. (*Id.* ¶ 33.)

Pfizer filed its complaint in this action on February 8, 2006. (D.I. 1.) Neither defendant has yet responded to the complaint, a Rule 16 conference has not been scheduled, discovery has not yet begun, and no trial date has been set.

## III.    SUMMARY OF ARGUMENT

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought." The balance of conveniences in this case strongly favors transfer to the Southern District of New York, a jurisdiction where this action could have been brought, and a transfer of venue will significantly advance the interests of justice.

Since September 2003, Teva USA and Pfizer have been litigating a related patent infringement action in the Southern District of New York. In both cases, Pfizer has claimed that Teva USA's azithromycin products infringe one of its azithromycin crystal form patents. The court in the Southern District of New York has already been fully briefed on the accused products and the relevant technology. In addition, Teva USA and Teva Ltd. have filed a "mirror-image" action in the Southern District of New York, seeking a declaratory judgment that Teva USA's azithromycin products do not infringe the '243 patent, and that the patent is invalid. Transfer would therefore conserve judicial resources and further the interests of justice.

3

Moreover, the Southern District of New York would be a more convenient forum for all involved.  No work was done in Delaware on either the patent in suit or the accused products, and there are no potential witnesses or documents located in Delaware. New York is Pfizer's home turf, and Pfizer's employees, or former employees, who were involved with the '243 patent are located in New York and neighboring Connecticut, which are outside the subpoena power of this Court.  Most of the witnesses that Pfizer will likely seek to depose are located in Israel.  To the extent these witnesses are required to come to the U.S. for deposition or trial, New York is by far the more convenient forum for them as the only direct flights from Israel to the U.S. arrive into New York.

Because the parties are already litigating substantially the same issues in the Southern District of New York, and because this case has no meaningful connection with Delaware, the Court should grant Teva USA and Teva Ltd.'s motion and transfer this case to the Southern District of New York.

## IV.    STATEMENT OF FACTS

### A.    There is a Closely Related Action Involving the Same Accused Products and Similar Azithromycin Crystal Form Patents Currently Pending in the Southern District of New York

On September 22, 2003, Teva USA brought suit against Pfizer in the Southern District of New York seeking a declaration that its manufacture, use, offer for sale, sale or importation of its azithromycin products would not infringe two Pfizer patents, U.S. Patent No. 5,605,889 (the "'889 patent") and U.S. Patent No. 6,268,489 (the "'489 patent"), and that both patents were invalid.  (Hardman Dec. Exs. A, B.)  The same azithromycin products at issue in the New York Action are the accused products in the present action.  The New York Action was assigned to Judge Loretta A. Preska.  *Teva USA v. Pfizer*, 03cv7423 and 04cv4979 (LAP) (consolidated).  After Pfizer's motion to

4

dismiss for lack of subject matter jurisdiction was denied, Pfizer brought a counterclaim against Teva USA for infringement of the '889 and '489 patents. (Hardman Dec. ¶ 3, Exs. C, D.) Before substantial discovery had taken place, Pfizer granted Teva USA a covenant not to sue with respect to the '889 patent. (Hardman Dec. ¶ 4, Ex. E.) Pfizer, however, continued to litigate infringement of the '489 patent for over two years.

The '489 patent, like the '243 patent in suit in this case, claims a crystalline form of the drug azithromycin. The '489 patent claims the "dihydrate" form of the drug, while the '243 patent claims the "sesquihydrate" form of the drug. (Hardman Dec. Ex. A, at Ex. B, col. 5, line 2; D.I. 1 ¶ 16.) In the New York Action, Pfizer claimed that Teva USA's azithromycin products infringed the '489 patent because they contained azithromycin dihydrate. (Hardman Dec. Exs. C, D.) In the present action, Pfizer alleges, inconsistently, that Teva USA's azithromycin products infringe the '243 patent because they contain azithromycin sesquihydrate. (D.I. 1 ¶ 23.)

Over the course of the New York Action, Judge Preska has had extensive briefing from both Teva USA and Pfizer on, among other things, the compound azithromycin and its crystalline forms; the crystalline form of the API used in Teva USA's azithromycin products; the research, development, composition, formulation, manufacture, testing and labeling of Teva USA's azithromycin products; the analytical techniques used to identify and quantify crystalline forms in general, and crystalline forms of azithromycin in particular, including x-ray crystallography, infrared and Raman spectroscopy and solid state nuclear magnetic resonance spectroscopy; and the scientific theories that attempt to explain when and why particular crystalline forms of compounds, including azithromycin, may be found in particular samples. (Hardman Dec. ¶ 6.) In

connection with the parties' summary judgment motions alone, Judge Preska received an almost two-foot high stack of declarations and exhibits from technical experts covering these and other related issues. (*Id.*)

On the same day that Pfizer filed the present action claiming that Teva USA's azithromycin products infringe its newly issued '243 patent because they contain azithromycin sesquihydrate, it granted Teva USA a covenant not to sue on the '489 patent, which claims azithromycin dihydrate. For the previous two years, until the '243 patent claiming azithromycin sesquihydrate issued, Pfizer had continuously maintained that Teva USA's azithromycin products contained azithromycin dihydrate. The New York Action is still pending before Judge Preska, and Teva USA has an unadjudicated claim for attorneys' fees. (Hardman Dec. ¶ 8, Ex. F.)

**B.     Teva USA and Teva Ltd. Have Filed a Mirror-Image Declaratory Judgment Action in the Southern District of New York**

On February 14, 2006, Teva filed a declaratory judgment action against Pfizer in the Southern District of New York, *Teva Pharmaceuticals USA, Inc. and Teva Pharmaceutical Industries Ltd. v. Pfizer Inc.*, 06cv1134. In that mirror-image action, Teva seeks a declaration that the '243 patent is invalid and not infringed by Teva USA's azithromycin products. (Hardman Dec. Ex. G.)

**C.     Delaware Bears No Meaningful Connection to This Litigation**

**1.     Delaware is Not Pfizer's Home Turf**

Although Pfizer is incorporated in Delaware, it principal place of business and corporate headquarters are in the Southern District of New York. (Complaint, D.I. 1 ¶ 1.) According to Pfizer's website, it does not appear to maintain any facilities of any kind in Delaware. (Hardman Dec. ¶ 10, Ex. H.)

**2.    There are No Documents or Witnesses Located in Delaware**

Pfizer does not appear to have conducted any activities related to the '243 patent in Delaware. The attorneys who prosecuted the '243 patent were based in Pfizer's offices in New York and Connecticut. (Hardman Dec. Ex. I.) The '243 patent indicates that the named inventors reside in Connecticut, which is approximately 125 miles closer to New York than to Delaware. (Hardman Dec. ¶ 12.)

Teva USA and Teva Ltd. similarly have not conducted any related activities in Delaware. The research and development of Teva USA's azithromycin products took place in Israel, and the azithromycin products are manufactured and tested in Israel. (Declaration of Yehuda Livneh, Ph.D. in Support of Teva's Motion to Transfer ("Livneh Dec.") ¶¶ 3-4.) Thus, substantially all the witnesses that Pfizer will likely seek to depose reside in Israel, and substantially all records concerning Teva USA's azithromycin products are located in Israel. (Livneh Dec. ¶ 2.) Indeed, neither Teva USA nor Teva Ltd. has facilities or operations of any kind located in the State of Delaware. (*Id.*)

**D.    Litigating This Case in Delaware Would Pose a
Burden to the Israeli Witnesses**

As set forth above, substantially all the activities concerning Teva USA's API and azithromycin products took place in Israel. Accordingly, Pfizer will likely seek the depositions of many individuals who reside in Israel. In the New York Action, for example, four of the five witnesses deposed by Pfizer resided in Israel. (*Id.* ¶ 6.) All direct flights from Israel to the Unites States arrive into the New York area airports. (*Id.* ¶ 7.) The flight into New York itself is almost twelve hours. (*Id.*) An additional several hour trip to Delaware would pose an unnecessary burden for those witnesses. (*Id.*)

7

V.    **ARGUMENT**

    A.    <u>**Transfer to the Southern District of New York Is Warranted**</u>

        Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district or division where it might have been brought for the convenience of parties and witnesses and in the interest of justice.  As this Court has found, under Third Circuit law, the inquiry into whether to transfer an action under § 1404(a) "is a broad one."  *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 196 (D. Del. 1998) (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)).  The factors to be considered include "a wide variety of private and public interests," and the decision whether to transfer is determined "'on an individualized, case-by case basis.'"  *Id.* at 197 (quoting *Jumara,* 55 F.3d at 883); *see also Sumito Mitsubishi Silicon Corp. v. MEMC Elec. Materials, Inc.*, No. 04-852-SLR, 2005 U.S. Dist. LEXIS 5174, at *5-6 (D. Del. Mar. 30, 2005) (copy attached hereto).

        As the analysis below demonstrates, Pfizer had no rational reason to file this action in Delaware, and considerations of justice, economy and convenience favor transfer.

        1.    **Transfer Would Serve the Interests of Justice**

        This Court has found that "[w]here related lawsuits exist, 'it is in the interests of justice to permit suits involving the same parties and issues to proceed before one court.'"  *Brunswick Corp. v. Precor Inc.*, No. 00-691-GMS, 2000 U.S. Dist. LEXIS 22222, at * 8 (D. Del. Dec. 12, 2000) (copy attached hereto) (quoting *Liggett Group Inc. v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 2d 518, 537 (D.N.J. 2000)).  In *Brunswick*, the court found that "the relevant public factors weighed heavily in favor of transfer," where the parties had a related, but not identical, patent infringement litigation pending in

8

the Western District of Washington. *Id.* at *7. Similarly, in *Arrow Communications Laboratories, Inc. v. John Mezzalingua Associates, Inc.*, No. 05-357-SLR, 2005 U.S. Dist. LEXIS 25004 (D. Del. Oct. 26, 2005) (copy attached hereto), the court granted defendant's motion to transfer the case to the Northern District of New York, where a similar patent infringement action between the parties was pending. *See also Nilssen v. OSRAM Sylvania, Inc.*, No. 00-695-JJF, 2001 U.S. Dist. LEXIS 25570, at *13 (D. Del. May 1, 2001) (copy attached hereto) ("If related cases are pending in the district to which transfer is sought, such fact weighs in favor of the transfer.").

In this case, the existence of the first-filed New York Action weighs heavily in favor of transfer. The New York Action was filed almost two and a half years before the present action, and concerns the same accused products. The patents at issue in both this action and the New York Action are directed to crystal forms of azithromycin. In the New York Action, the parties have already presented the court with extensive briefing on the same complex technological issues that will be relevant to the present action. The New York court's experience with these issues would undoubtedly help to efficiently and economically resolve the issues presented in the present case. *See Arrow Commc'n*, 2005 U.S. Dist. LEXIS 25004, at *11 n.1 (transfer to the Northern District of New York appropriate because "[t]he familiarity with the parties and subject matter possessed by the Northern District of New York will certainly promote expeditiousness in handling the case").

Moreover, the New York court is keenly aware of all the evidence and arguments put forward by Pfizer in the New York Action. The New York court will

therefore be able to effectively evaluate any inconsistent positions that Pfizer might take in the present action.

Finally, Teva has recently filed a mirror-image declaratory judgment action in the Southern District of New York concerning the '243 patent. Courts have not hesitated to transfer venue in these circumstances. *See, e.g., Arrow Commc'n*, 2005 U.S. Dist. LEXIS 25004 (action transferred to venue of later-filed mirror-image action where only connection to Delaware was defendant's incorporation in state); *Virgin Wireless, Inc. v. Virgin Enters. Ltd.*, 201 F. Supp. 2d 294, 301 (D. Del. 2002) (transfer granted where Eastern District of New York was venue of later-filed action predicated on the same transactions and occurrences).

### 2.    Pfizer Did Not Bring This Action on its Home Turf

Although plaintiff's choice of forum is an important consideration in the transfer analysis, it is entitled to less weight where, as here, the plaintiff has not brought suit on its "home turf." *Arrow Commc'n*, 2005 U.S. Dist. LEXIS 25004, at *6-7; *Affymetrix*, 28 F. Supp. 2d at 199. As this Court has reasoned, "the weaker the connection between the forum and *either* the plaintiff *or* the lawsuit, the greater the ability of a defendant to show sufficient inconvenience to warrant transfer." *Affymetrix*, 28 F. Supp. 2d at 199 (emphasis in original).

Pfizer's principal place of business, and therefore its "home turf," is the Southern District of New York. *See id.* at 198 n.6 ("Home turf" is defined as "the forum closest to the plaintiff's residence or principal place of business which can exercise personal jurisdiction over the defendant at the time that the lawsuit is filed."). Since Pfizer has chosen to venture off its home turf in order to sue Teva USA and Teva Ltd. in Delaware, its choice of forum should be given less weight in the overall balance of

10

conveniences. *See Kirschner Bros. Oil, Inc. v. Pannill*, 697 F. Supp. 804, 806 (D. Del. 1998) (plaintiff's decision not to sue on its home turf "lessens the defendant's burden to show that the balance of convenience favors transfer").

### 3. New York is The Most Convenient Forum for the Parties and Witnesses

Pfizer has chosen a forum that has no meaningful connection to this dispute. As set forth above, Pfizer's home turf is New York, and it does not appear that Pfizer has any operations in the State of Delaware. Teva USA and Teva Ltd. likewise have no facilities or other operations in the State of Delaware. (Livneh Dec. ¶ 2.) The fact that the parties, witnesses and relevant documents are located outside of Delaware weighs heavily in favor of transfer. *See Kirschner Bros. Oil*, 697 F. Supp. at 806-07.

Moreover, the Southern District of New York is a much more convenient forum for the potential witnesses who reside in Israel. Pfizer deposed four Israeli citizens in the New York Action, Livneh Dec. ¶ 6, and presumably will seek to depose Israeli witnesses in this action, as the research, development, manufacturing and testing of Teva USA's API and azithromycin products all took place in Israel. Since the only non-stop flights between Israel and the United States land in the New York area airports, the Southern District of New York is by far the most convenient forum for these witnesses. (Livneh Dec. ¶ 7.)

Finally, the fact that Pfizer and Teva USA are Delaware corporations bears little weight in the transfer analysis. *See, e.g., Allergan, Inc. v. Alcon Labs., Inc.*, No. 02-1682-GMS, 2003 U.S. Dist. LEXIS 2564, at *5 (D. Del. Feb. 25, 2003) (copy attached hereto) (transfer granted even though plaintiff and several of the defendants were Delaware entities as there was "little connection between Delaware and [the] action

11

or the parties"); *Corixa Corp. v. IDEC Pharms. Corp.*, No. 01-615-GMS, 2002 U.S. Dist. LEXIS 2980, at * 12 (D. Del. Feb. 25, 2002) (copy attached hereto) (although three of the parties were Delaware corporations, transfer was granted because, among other things, "the court can hardly describe the patents as a local controversy unique to Delaware"); *Kirschner Bros. Oil*, 697 F. Supp. at 807 (ordering transfer and finding: "Given [the] lack of connection with this State, the incorporation of some of the Defendants in Delaware is of little consequence.").

### 4.    The Balance of Interests Weighs Heavily In Favor of Transfer

In light of the above, the balance of interests under § 1404(a) tips strongly in favor of transfer to the Southern District of New York. A transfer to New York would make trial easier, more expeditious, and less expensive, both for the parties and the witnesses. *See Original Creatine Patent Co. v. Kaizen, Inc.*, No. 02-471-SLR, 2003 U.S. Dist. LEXIS 988, at *10 (D. Del. Jan. 22, 2003) (copy attached hereto) (transfer ordered because "[t]he record reflects that neither litigant has ties to Delaware. Geographically, Delaware is inconvenient to everyone. All witnesses, documents and employees are located outside of this forum."). A transfer to the Southern District of New York would not shift any inconvenience from Teva USA and Teva Ltd. to Pfizer; instead, the net convenience for all involved would increase. *See Kirschner Bros. Oil*, 697 F. Supp. at 807-08.

The facts of this case are strikingly similar to both *Allergan, Inc. v. Alcon Labs., Inc.*, 2003 U.S. Dist. LEXIS 2564 (D. Del. Feb. 25, 2003) and *Bayer Bioscience N.V. v. Monsanto Co.*, No. 03-023-GMS, 2003 U.S. Dist. LEXIS 4594 (D. Del. Mar. 25, 2003) (copies attached hereto). In *Allergan*, as here, plaintiff and several of the defendants were Delaware entities with principal places of business elsewhere. The

parties had litigated a related patent infringement suit in the Central District of California, in which the court granted summary judgment of non-infringement against plaintiff. Plaintiff subsequently obtained another patent in the same family, and brought suit in the District of Delaware. In response, defendants filed a mirror-image declaratory judgment action in the Central District of California, and moved to transfer the Delaware action to the Central District of California.

The *Allergan* court granted defendants' motion to transfer, finding that "given the on-going relationship the Central District of California has with the same parties, and the same, or related, patents, the court concludes that the public and private interests are sufficient to tip the balance of convenience strongly in favor of the defendants." *Allergan*, 2003 U.S. Dist. LEXIS 2564, at *5-6. The Court relied upon, among other things, the fact that the parties were "already litigating essentially the same issues in California" and that "no party maintains operations in Delaware." *Id.* at *5. The Court specifically noted that, although the plaintiffs and several of the defendants were Delaware corporations, there was "little connection between Delaware, and [the] action or the parties." *Id.*

Likewise in *Bayer*, the court transferred a first-filed action to the District of Missouri where the parties had been litigating other related patents for two years. The Court again found that, although defendant was a Delaware entity, there was little connection between the suit and Delaware. *Bayer*, 2003 U.S. Dist. LEXIS 4594, at *6.

Similarly here, transfer is appropriate because the parties have been litigating a related case in the Southern District of New York for over two years, and Teva USA and Teva Ltd. have recently filed a mirror-image action in the Southern

13

District of New York.   No party maintains operations in Delaware, but Pfizer has its principal place of business in the Southern District of New York.

Finally, Pfizer's choice to sue in Delaware rather that the Southern District of New York, which is the logical venue for this action, can only be viewed as an exercise in forum shopping.   By instituting this action in Delaware instead of its home turf of New York, Pfizer apparently hopes to start with a clean slate before a new judge.[1] There are already indications that Pfizer intends to make arguments in this case inconsistent with those it made in the New York Action.   For example, Pfizer contended in the New York Action that Teva USA's azithromycin products contained azithromycin dihydrate, but now contends that those same products contain azithromycin sesquihydrate instead.

Pfizer's forum shopping should not be permitted.   As this Court has found, "when a Court finds or it appears based on the circumstances that a party is making an effort at forum shopping, transfer is warranted."   *At Home Corp. v. Cox Commc'ns, Inc.*, No. 02-1486-JJF, 2003 U.S. Dist. LEXIS 18320, at *6 (D. Del. Oct. 8, 2003) (copy attached hereto).

Based on the above, transfer to the Southern District of New York serves the "convenience of parties and witnesses" and is "in the interest of justice."   28 U.S.C. § 1404(a).   Teva's motion should therefore be granted.

---

[1]    Pfizer made no motion to transfer the New York Action to another district.   Pfizer's acceptance of the Southern District of New York as a forum in which to litigate indicates that Pfizer does not consider that court to be inconvenient or unacceptable.

### B.    The Action Could Have Been Brought in the Southern District of New York

Transfer under § 1404(a) may be made "to any other district or division where it might have been brought."  Pfizer cannot reasonably dispute that this action could have brought against Teva USA and Teva Ltd. in the Southern District of New York.  Venue is proper in the Southern District of New York under 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b).  The Southern District of New York could have exercised specific personal jurisdiction over Teva USA with respect to Pfizer's cause of action in this case, as Teva USA's azithromycin products, the allegedly infringing products, are sold in New York.  *See* N.Y. Civ. Prac. Laws and Rules § 302(a).  In addition, there are no relevant differences between the long-arm statutes of Delaware and New York for the purposes of establishing personal jurisdiction over Teva Ltd.  *Compare* 10 Del. Code § 3104 *with* N.Y. Civ. Prac. Laws and Rules § 302.  Accordingly, transfer under § 1404(a) is appropriate.

## VI.    CONCLUSION

Given that judicial economy would be served by transferring this case to the Southern District of New York where a related case is already pending; that Pfizer's choice of forum is not its home turf; and that litigating in New York would be more convenient to the witnesses and the parties, the Court should grant the motion of Teva USA and Teva Ltd. and transfer this case to the Southern District of New York.

Dated: February 23, 2006

By: _____
Mary B. Matterer #2696
MORRIS, JAMES, HITCHENS & WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE  19801
(302) 888-6800
mmatterer@morrisjames.com

*Counsel for Defendants Teva Pharmaceuticals
USA, Inc. and Teva Pharmaceutical Industries Ltd.*

*Of Counsel:*
Steven J. Lee
Elizabeth J. Holland
Sheila Mortazavi
Cynthia Lambert Hardman
KENYON & KENYON LLP
One Broadway
New York, NY 10004
Tel.: (212) 425-7200
Fax:  (212) 425-5288

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of February, 2006, I electronically filed the foregoing document, **OPENING BRIEF OF DEFENDANTS TEVA PHARMACEUTICALS USA, INC. AND TEVA PHARMACEUTICAL INDUSTRIES LTD. IN SUPPORT OF THEIR MOTION TO TRANSFER VENUE TO THE SOUTHERN DISTRICT OF NEW YORK PURSUANT TO 28 U.S.C. § 1404 (a)**, with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Rudolf E. Hutz, Esq.
Daniel C. Mulveny, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
Wilmington, DE 19801

Additionally, I hereby certify that on the 23rd day of February, 2006, the foregoing document was served as indicated:

**VIA HAND DELIVERY**
Rudolf E. Hutz, Esq.
Daniel C. Mulveny, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
Wilmington, DE 19801

Mary B. Matterer (#2696)
MORRIS, JAMES, HITCHENS & WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801
(302) 888-6960
*Attorneys for Defendants*
*Teva Pharmaceuticals USA, Inc. and*
*Teva Pharmaceutical Industries Ltd.*

# UNREPORTED DECISIONS

LEXSEE 2003 US DIST LEXIS 2564

**ALLERGAN, INC. and ALLERGAN SALES, LLC, Plaintiffs, v. ALCON LABORATORIES, INC., ALCON RESEARCH LTD., ALCON INC., and BAUSCH & LOMB, INC., Defendants.**

**C.A. No. 02-1682-GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2003 U.S. Dist. LEXIS 2564*

**February 25, 2003, Decided**

**DISPOSITION:** [*1] Defendants' motion to transfer this case granted.

**COUNSEL:** For ALLERGAN INC., ALLERGAN SALES LLC, plaintiffs: William J. Marsden, Jr., Fish & Richardson, P.C., Wilmington, DE.

For ALCON LABORATORIES, INCORPORATED, ALCON RESEARCH LTD., ALCON INC., defendants: Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE.

For BAUSCH & LOMB INC., defendant: Jack B. Blumenfeld, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory M. Sleet

**OPINION:**

**MEMORANDUM AND ORDER**

**I. INTRODUCTION**

On December 16, 2002, the plaintiffs, Allergan, Inc. and Allergan Sales, LLC (collectively "Allergan"), filed the above-captioned action seeking a declaratory judgment against the defendants, Alcon Laboratories, Inc., Alcon Research, Ltd., Alcon, Inc., and Bausch & Lomb, Inc. (collectively "Alcon and B&L"). Specifically, Allergan asserts infringement of its U.S. Patent No. 6,465,464 B2 ("the '464 Patent"). The '464 Patent is based on a continuation application of two Allergan patents asserted in a prior California action.

Presently before the court is Alcon and B&L's motion to transfer this action to the Central District [*2] of California, Southern Division. For the reasons that follow, the court will grant this motion.

**II. BACKGROUND**

Both of the plaintiffs are Delaware entities with their principle place of business in Irvine, California. The defendant Alcon Laboratories, Inc. is a Delaware corporation with its principal place of business in Forth Worth, Texas. Alcon Research, Ltd. is a limited partnership organized under the laws of Texas, with Alcon Laboratories, Inc. as a general partner. Alcon, Inc. is the parent of Alcon Laboratories, and is a Swiss corporation headquartered in Hunenberg, Switzerland. Finally, Bausch and Lomb is a New York corporation, with its principle place of business in Rochester, New York.

On January 9, 2002, Allergan filed suit against Alcon and B&L in the Central District of California asserting infringement of United States Patent Nos. 6,199,415 B1 ("the '415 Patent") and 6,248,741 B1 ("the '741 Patent"). Alcon moved for summary judgment of non-infringement, which the court granted on May 8, 2002. *See Allergan, Inc. v. Alcon Laboratories, Inc., 200 F. Supp. 2d 1219 (C.D. Cal. 2002).* B&L subsequently filed a similar motion, which was also granted. [*3]

On October 15, 2002, Allergan obtained the '464 patent, which issued as a continuation of the application that led to the '741 patent, which, in turn, is a continuation of the application that led to the '415 patent. The '464 patent is the subject of the current action.

The defendants in the present case filed a "mirror image" declaratory judgment action against Allergan concerning the '464 patent in the Central District of California on December 23, 2002.

Case 1:06-cv-00089-JJF   Document 9-2   Filed 02/23/2006   Page 3 of 35

Page 2
2003 U.S. Dist. LEXIS 2564, *

## III. DISCUSSION

Alcon and B&L move to transfer this action to the District Court for the Central District of California, Southern Division pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides that "for convenience of [the] parties and witnesses, in the interest of justice," the court may transfer a civil action "to any other district ... where it might have been brought." 28 U.S.C. § 1404(a). The parties do not dispute that this action could have been filed in the Central District of California, Southern Division. The court will, therefore, move on with the inquiry as directed by the Third Circuit. See Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). [*4]

When considering a motion to transfer, the court must determine 'whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum.' Id. This inquiry requires "a multi-factor balancing test" embracing not only the statutory criteria of convenience of the parties and the witnesses and the interests of justice, but all relevant factors, including certain private and public interests. Id. at 875, 879. These private interests include the plaintiff's choice of forum; the defendants' preference; whether the claim arose elsewhere; and the location of books and record, to the extent that they could not be produced in the alternative forum. n1 Id. at 879. Among the relevant public interests are: "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; [and] the public policies of the fora." Id. at 879-80 (citations omitted).

n1 The first three of these private interest collapse into other portions of the Jumara analysis. The court, therefore, will consider them in the context of the entire inquiry only. See Affymetrix, Inc. v. Synteni, Inc. and Incite Pharmaceuticals, Inc., 28 F. Supp. 2d 192 (D. Del. 1998).

[*5]

Upon consideration of these factors, the court finds that the defendants have met their burden of demonstrating that transfer is appropriate. In reaching this conclusion, the court relied on the following considerations, among others: (1) while the plaintiffs and several of the defendants are Delaware entities, and should reasonably expect to litigate in the forum, there is little connection between Delaware and this action or the parties; (2) each party either maintains its principle place of business in California, or has facilities there, whereas no party maintains operations in Delaware; (3) the parties are large and international organizations with apparently substantial assets; (4) because the parties are already litigating essentially the same issues in California, travel time and convenience in the aggregate would be substantially increased with a transfer of forum; and (5) any disparity in court congestion is not so great as to weigh against transfer due to the defendants' "mirror image" action currently pending in the Central District of California, Southern Division. Thus, given the on-going relationship the Central District of California has with the same parties, and [*6] the same, or related, patents, the court concludes that the public and private interests are sufficient to tip the balance of convenience strongly in favor of the defendants.

## III. CONCLUSION

For the aforementioned reasons, IT IS HEREBY ORDERED that:

1. The defendants' motion to transfer this case (D.I. 6) is GRANTED.

2. The above-captioned action is hereby TRANSFERRED to the United States District Court for the Central District of California, Southern Division.

Dated: February 25, 2003

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

LEXSEE 2005 US DIST LEXIS 25004

**ARROW COMMUNICATION LABORATORIES, INC., Plaintiff, v. JOHN
MEZZALINGUA ASSOCIATES, INC., Defendant. JOHN MEZZALINGUA
ASSOCIATES, INC., Counterclaim Plaintiff, v. ARROW COMMUNICATION
LABORATORIES, INC., and TRESNESS IRREVOCABLE PATENT TRUST,
Counterclaim Defendants.**

**Civ. No. 05-357-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2005 U.S. Dist. LEXIS 25004*

**October 26, 2005, Decided**

**COUNSEL:** [*1] Richard D. Kirk, Esquire, of The
Bayard Firm, Wilmington, Delaware, for Arrow Com-
munication Laboratories, Inc., and Tresness Irrevocable
Patent Trust. Of Counsel: R. Terrance Rader, Esquire,
Charles W. Bradley, Esquire, Glenn E. Forbis, Esquire,
Linda D. Kennedy, Esquire, and Shelly L. Hokenstad,
Esquire, of Rader, Fishman & Grauer PLLC, Bloomfield
Hills, Michigan, and Lawrence P. Trapani, Esquire, of
Manlius, New York.

Jeffrey B. Bove, Esquire, and Kevin M. Baird, Esquire, of
Connolly Bove Lodge & Hutz LLP, Wilmington, Dela-
ware, for John Mezzalingua Associates, Inc. Of Counsel:
James R. Muldoon, Esquire, and John A. Wasleff, Esquire,
of Wall, Marjama & Bilinski, LLP, Syracuse, New York.

**JUDGES:** ROBINSON Chief Judge.

**OPINION:**

MEMORANDUM OPINION

Dated: October 26, 2005
Wilmington, Delaware

**ROBINSON Chief Judge**

**I. INTRODUCTION**

On June 3, 2005, plaintiff Arrow Communication
Laboratories, Inc. ("plaintiff") filed a complaint in the
United States District Court for the District of Delaware
alleging patent infringement by defendant John Mezzal-
ingua Associates, Inc. ("defendant"). (D.I. 1) Plaintiff
claims to be the lawful owner of all right, title and interest
in [*2] *U.S. Patent No. 5,745,838 ("the '838 patent")* .
(Id. ) Plaintiff alleges that defendant is infringing the *'838
patent* by manufacturing, selling and offering for sale in

the United States, and by importing into the United States,
electronic filters covered by one or more of the claims of
the *'838 patent*. (Id.) Plaintiff further alleges that defen-
dant is actively inducing others to infringe the *'838 patent*,
(Id.)

On June 6, 2005, defendant filed an action for de-
claratory judgment of patent non-infringement and inva-
lidity in the United States District Court for the Northern
District of New York. (D.I. 9, ex. A) On August 11, 2005,
plaintiff's infringement suit was referred to the Magistrate
Judge of the District of Delaware for the purpose of ex-
ploring alternative dispute resolution. (D.I. 29) Trial is
scheduled for November 2006. (Id.)

**II. BACKGROUND**

Plaintiff is a corporation organized under the laws of
the State of New York with its principal place of business
in Syracuse, New York. Defendant is a corporation or-
ganized under the laws of the State of Delaware with its
principal place of business in East Syracuse, New York.

**III. STANDARD OF REVIEW** [*3]

Defendant moves the court to transfer this matter,
pursuant to *28 U.S.C. § 1404 (a)*, to the United States
District Court for the Northern District of New York. (D.I.
6) *Section 1404 (a)* provides: "For the convenience of the
parties and witnesses, in the interests of justice, a district
court may transfer any civil action to any other district or
division where it might have been brought." *28 U.S.C. §
1404(a) (2003)*. A plaintiff's choice of forum is to be
accorded substantial weight and courts should only
transfer venue if the defendant is truly regional in char-
acter. See *Bergman v. Brainin, 512 F. Supp. 972, 973 (D.
Del. 1981)* (citing *Shutte v. Armco Steel Corp., 431 F.2d
22, 25 (3d Cir. 1970))*. A defendant has the burden of

2005 U.S. Dist. LEXIS 25004, *

establishing that "the balance of convenience of the parties and witnesses strongly favors" transfer. Id. Accordingly, "defendants brought into suit in Delaware must prove that litigating in Delaware would pose a 'unique or unusual burden' on their operations" for a Delaware court to transfer venue. See *Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*, 157 F.R.D. 215 (D. Del. 1993). [*4] A motion to transfer venue may also be granted if there is a related case which has been first filed or otherwise is the more appropriate venue in which to litigate the issues between the parties. See *American Bio Medica Corp. v. Peninsula Drug Analysis Co.*, 1999 U.S. Dist. LEXIS 12455, 1999 WL 615175, *5 (D. Del. 1999).

In reviewing a motion to transfer venue, courts have not limited their consideration to the three factors enumerated in § 1404 (a) (i.e., convenience of parties, convenience of witnesses, and interests of justice). The Third Circuit, in fact, has indicated that the analysis for transfer is very broad and has urged consideration of "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (internal quotations and citation omitted). These factors entail six private and five public interests. Private interests include: (1) the plaintiff's forum preference as manifested by the plaintiff's original forum choice; (2) the defendant's forum preference; (3) whether the claim arose [*5] elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of the books and records to the extent that the files could not be produced in the alternative forum, Id. Public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; and (5) the familiarity of the trial judge with the applicable state law in diversity cases. Id.

In considering the private interest factors under *Jumara*, the court, consistent with Third Circuit precedent, adheres to the notion that transfer is not to be liberally granted and plaintiff's choice of forum is a paramount consideration. The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. *C.R. Bard, Inc. v. Guidant Corp.*, 997 F. Supp. 556, 562 (D. Del. 1998); [*6] *Cypress Semiconductor Corp. v. Integrated Circuit Sys.*, 2001 U.S. Dist. LEXIS 20803, 2001 WL 1617186 (D. Del. Nov. 28, 2001); *Cont'l Cas. Co. v. Am. Home Assurance Co.*, 61 F. Supp.2d 128, 131 (D. Del. 1999). Although

transfer of an action is usually regarded as less inconvenient to a plaintiff if the plaintiff has not chosen its "home turf" or a forum where the alleged wrongful activity or injury occurred, the "plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer." *In re ML-Lee Acquisition Fund II, L.P.*, 816 F. Supp. 973, 976 (D. Del. 1993).

## IV. DISCUSSION

As an initial matter, the court notes that venue is proper in Delaware as defendant is incorporated under the laws of the State of Delaware. Nevertheless, the District of Delaware is not plaintiff's "home turf," since it maintains its principal place of business in New York. In this sense, it appears to be more convenient to both the plaintiff and defendant to try the instant litigation in the Northern District of New York. [*7] Indeed, this court previously recognized that,

> when the plaintiff has chosen to bring suit in a district that is not plaintiff's "home turf" and that has no connection to any acts giving rise to the lawsuit, convenience to the plaintiff is not as great as it would be were plaintiff litigating at or near plaintiff's principal place of business or at the site of activities at issue in the lawsuit.

*Burstein v. Applied Extrusion Techs. Inc.*, 829 F. Supp. 106, 110 (D. Del. 1992) (citing *Sports Eye, Inc. v. Daily Racing Form, Inc.*, 565 F. Supp. 634, 637 (D. Del. 1983) (internal citations omitted)). Moreover, the locus of the alleged infringement occurred in Syracuse, New York. If defendant has infringed the '838 patent, such infringement was done primarily in Syracuse, where the accused products were developed, manufactured and sold. Based on the evidence offered, the majority of the witnesses with discoverable information also are located in and around Syracuse, New York. In addition, most of defendant's documents relating to the production, promotion, marketing and sales of the accused product are maintained in central New York. On this [*8] basis, the court concludes that the private factors under *Jumara* weigh in favor of transferring the case at bar to the United States District Court for the Northern District of New York.

One of the public interest factors under Jumara involves the administrative considerations of the courts. More than fifty years ago, the Third Circuit Court of Appeals adopted the "first-filed rule" where "in all cases of federal concurrent jurisdiction the court which first had

2005 U.S. Dist. LEXIS 25004, *

possession of the subject must decide it." *Crosley Corp. v. Hazeltine Corp., 122 F.2d 925, 929 (3d Cir. 1941)* (quoting *Smith v. M'Iver, 22 U.S. (9 Wheat.) 532, 6 L. Ed. 152 (1824))*. Consequently, the second-filed action is usually stayed or transferred to the court where the first-filed action is pending. *Peregrine Corp. v. Peregrine Indus., Inc., 769 F. Supp. 169, 171 (E.D. Pa. 1991); Dippold-Harmon Enterprises, Inc. v. Lowe's Companies, Inc., 2001 U.S. Dist. LEXIS 18547, Civil Action No. 01-532-GMS, 2001 WL 1414868 (D. Del. 2001)*. The rule "encourages sound judicial administration and promotes comity among federal courts of equal rank." [*9] *E.E.O.C. v. University of Pennsylvania, 850 F.2d 969, 971 (3d Cir. 1988)*. The decision to transfer or stay the second action is within the discretion of the trial court. *Id. at 972, 977*. Invocation of the rule will usually be the norm, not the exception. Courts presented with exceptional circumstances may exercise their discretion to depart from the first-filed rule. *Id. at 979*. In this case, it is undisputed that the present patent infringement suit in the District of Delaware was first filed and involves the same patent and the same issues as the declaratory judgment action filed thereafter by defendant in the Northern District of New York. Therefore, the burden is on defendant to present some exceptional circumstances why the court should depart from the first-filed rule.

In support of its argument supporting transfer, defendant states that all of its relevant witnesses reside in New York, all the documents and records related to the accused product are in New York, and the subject matter of the lawsuit has significant local interest in New York. (D.I. 7 at 1-3) In contrast, evidence suggests that the District of Delaware has no [*10] connection to the subject matter of plaintiff's lawsuit, except that defendant is incorporated there. Defendant contends that pursuing the lawsuit in the District of Delaware will generate "significant expenses and other burdens" to the parties. (Id. at 3-4) Given this evidence and noting the regional character of the parties, with the primary business operations of each party located in the Northern District of New York, there are exceptional circumstances present which require the court to depart from the first-filed rule.

In considering the other public interest factors under *Jumara*, the court notes that the parties have taken significant steps to advance the instant litigation in the District of Delaware. The parties have exchanged initial disclosures, are set to explore settlement with the magistrate judge, and have arranged a schedule for litigation, with trial set to occur in about one year. These factors weigh in favor of maintaining the litigation in the District of Delaware. However, factors are also present which weigh in favor of transferring the case to the Northern District of New York. First, defendant's declaratory judgment action, which involves the same subject [*11]

matter as this case, is currently pending in the United States District Court for the Northern District of New York. n1 In addition, both parties are regional in character and operate their businesses out of central New York, suggesting that the Northern District of New York is the most appropriate venue for the parties to litigate. Although a suit in this matter was first filed in Delaware, the public interest factors weighing in favor of keeping the litigation in the District of Delaware are not compelling. The court, therefore, concludes that the public interest factors under *Jumara* favor transferring venue to the Northern District of New York.

> n1 By stipulation of the parties, that case has been stayed pending this court's decision on defendant's motion to transfer venue. (N.D.N.Y., Case No. 05-CV-703 (NAM/DEP), D.I. 6) The court has no reason to believe that, once the stay is lifted, the declaratory judgment action in the Northern District of New York will move forward with any less swiftness than that with which the instant case has progressed in the District of Delaware. The familiarity with the parties and subject matter possessed by the Northern District of New York will certainly promote expeditiousness in handling the case.

[*12]

## V. CONCLUSION

On balance, the court finds that the public interest factors and private interest factors weigh strongly in favor of transferring venue in this case. The court, as a result, concludes that defendant has sufficiently proven that litigating in the District of Delaware would pose a unique burden which merits transfer of venue. For the reasons stated, defendant's motion to transfer is granted. An order consistent with this memorandum opinion shall issue.

### ORDER

At Wilmington this (26th day of October, 2005, consistent with the memorandum opinion issued this same date;

IT IS ORDERED that:

1. Defendant's motion to transfer (D.I. 6) is granted.

2. The above-captioned action shall be transferred to the United States District Court for the Northern District of New York.

United States District Judge

LEXSEE 2003 US DIST LEXIS 18320

AT HOME CORPORATION, Plaintiff, v. COX COMMUNICATIONS, INC., COX@HOME INC., COMCAST CORPORATION, COMCAST ONLINE COMMUNICATIONS, INC., COMCAST PC INVESTMENTS INC., BRIAN L. ROBERTS and DAVID M. WOODROW, Defendants.

Civil Action No. 02-1486-JJF

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

*2003 U.S. Dist. LEXIS 18320*

**October 8, 2003, Decided**

**DISPOSITION:** [*1] Comcast Defendants' Motion for Improper and Inconvenient Venue and Cox Defendants' Motion To Transfer Pursuant To *28 U.S.C. § 1404* were granted.

**COUNSEL:** Edmond D. Johnson, Esquire and Michael L. Vild, Esquire of THE BAYARD FIRM, Wilmington, Delaware.

Of Counsel: Joseph S. Allerhand, Esquire, Richard W. Slack, Esquire, and Daniel S. Cahill, Esquire of WEIL, GOTSHAL & MANGES LLP, New York, New York.

Counsel for Plaintiff At Home Corporation.

Donald E. Reid, Esquire of MORRIS, NICHOLS, ARSHT & TUNNELL, Wilmington, Delaware.

Of Counsel: Michael D. Hays, Esquire, Michael D. Rothberg, Esquire, and Daniel D. Prichard, Esquire of DOW, LOHNES & ALBERTSON, PLLC, Washington, District of Columbia.

Counsel for Defendants Cox Communications, Inc., Cox@Home, Inc., and David M. Woodrow.

Barry M. Klayman, Esquire of WOLF, BLOCK, SCHORR AND SOLIS-COHEN, LLP, Wilmington, Delaware.

Of Counsel: Michael S. Shuster, Esquire and Sheron Korpus, Esquire of WHITE & CASE LLP, New York, New York.

Counsel for Defendants Comcast Corporation, Comcast Online Communications, Inc., Comcast PC Investments Inc., and Brian L. Roberts.

**JUDGES:** Farnan, District Judge.

**OPINIONBY:** Farnan

**OPINION:** [*2]

## MEMORANDUM OPINION

Wilmington, Delaware

**Farnan, District Judge.**

Presently before the Court is the Motion To Dismiss (D.I. 21-1) Or Transfer This Action For Improper And Inconvenient Venue (D.I. 21-2) filed by Comcast Corporation, Comcast Online Communications, Inc., Comcast PC Investments Inc., and Brian L. Roberts (collectively "Comcast Defendants") and the Motion to Dismiss (D.I. 15-1) or Transfer For Improper Venue (D.I. 15-2), or In The Alternative, To Transfer Pursuant To *28 U.S.C. § 1404* (D.I. 15-3) filed by Cox Communications, Inc., Cox@Home, Inc., And David M. Woodrow (collectively "Cox Defendants"). For the reasons discussed, the Court will grant the Comcast Defendants' Motion for Improper and Inconvenient Venue (21-2) and the Cox Defendants' Motion To Transfer Pursuant To *28 U.S.C. § 1404* (D.I. 15-3).

## BACKGROUND AND ALLEGATIONS OF THE PARTIES

In this action, At Home Corporation ("At Home") contends defendants Comcast Corporation ("Comcast"), Comcast Online Communications, Inc. ("Comcast Online"), Comcast PC Investments Inc. ("Comcast PC"), and Brian L. Roberts and Defendants Cox Communications, [*3] Inc. ("Cox"), Cox@Home, and David M. Woodrow ("Woodrow") have committed securities violations and breaches of fiduciary duty.

2003 U.S. Dist. LEXIS 18320, *

The Comcast Defendants assert that the lack of any connection with Delaware makes a transfer of the action to the Southern District of New York appropriate. The Comcast Defendants contend that the Southern District of New York is an easier and more convenient venue. The Comcast Defendants allege essentially the same arguments in support of their motion to dismiss the case for lack of jurisdiction and improper venue.

By their motion to transfer or dismiss, the Comcast Defendants contend that neither they nor this action have sufficient connections to Delaware to make venue proper here. They assert that Comcast, Comcast Online, and Mr. Roberts have no presence in Delaware. The Comcast Defendants assert that the transactions at issue in At Home's securities law claim did not occur in Delaware and that the Court's subject matter jurisdiction over the claim of breach of fiduciary duty is dependent on jurisdiction over the securities law claim. Consequently, the Comcast Defendants assert, both claims must be dismissed or transferred.

The Cox Defendants also support [*4] transferring this case. The Cox Defendants assert because Comcast is an indispensable party to the instant case and venue is improper as to Comcast, venue is improper as to Cox. Cox claims that the transactions creating the claims At Home asserts are not related to Delaware, and that New York is a more convenient venue for the instant case.

At Home responds that venue is proper in Delaware, and that Delaware is a more convenient venue than New York because the action has significant connections to Delaware.

**DISCUSSION**

The Court will first consider the Motions to Transfer filed by the Comcast and Cox Defendants. *28 U.S.C. § 1404(a)* states that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

In the Third Circuit, decisions on motions to transfer are guided by the private and public factors announced in *Jumara v. State Farm Ins. Co. 55 F.3d 873, 879 (3rd Cir. 1995)*. When determining whether or not transfer is warranted in the circumstances presented, district courts must balance all of the relevant [*5] factors and respect that a plaintiff's choice of forum is entitled to substantial deference and should not be lightly disturbed when it is due to legitimate, rational concerns. *Id. at 883*. The burden is upon the movant to establish that the balance of the in-

terests strongly weighs in favor of transfer, and a transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer. See *Continental Cas. Co. v. American Home Assurance Co., 61 F. Supp.2d 128, 131 (D.Del. 1999)*.

**PRIVATE CONSIDERATIONS**

The Court finds that the Comcast Defendants do not have a significant relation to Delaware. Comcast and Comcast Online are not residents of Delaware. Comcast is incorporated, and has its principal place of business, in Pennsylvania. Comcast Online has merged with Comcast and is not a distinct entity. Mr. Roberts is not a resident of Delaware and does not transact business in Delaware. While Comcast PC is organized under Delaware law, it is not qualified to do business in Delaware, and its slight connection to Delaware is overwhelmed by the lack of connection of the other three Comcast Defendants.

The Court also finds [*6] that At Home has not shown that any acts or transactions involved in this case occurred in Delaware. Further, the Court finds that none of At Home's factual allegations demonstrate a connection to Delaware.

**PUBLIC CONSIDERATIONS**

With regard to the public interest factors, the Court finds that At Home is engaging in forum shopping and attempting to force this case into the District of Delaware. Obviously, when a Court finds or it appears based on the circumstances that a party is making an effort at forum shopping, transfer is warranted. Additionally, the Court finds that the local interest of New York, where the transactions that form the basis of the claims asserted is stronger than the local interest of Delaware in resolving this dispute.

After considering the relevant factors for transfer of this case, the Court finds, balancing the relevant private and public factors, that the convenience of the parties and witnesses will best be served by transferring this action to the Southern District of New York where proper venue exists. Accordingly, the Motion to Transfer under 1404(a) will be granted and the case will be transferred to the Southern District of New York.

**CONCLUSION** [*7]

For the reasons discussed, the Court will grant the Comcast Defendants' Motion for Improper and Inconvenient Venue and the Cox Defendants' Motion To Transfer Pursuant To *28 U.S.C. § 1404*. An Order consistent with this Memorandum Opinion has been entered.

LEXSEE 2003 US DIST LEXIS 4594

**BAYER BIOSCIENCE N.V., Plaintiff, v. MONSANTO COMPANY, Defendant.**

**C.A. No. 03-023 GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2003 U.S. Dist. LEXIS 4594*

**March 25, 2003, Decided**

**DISPOSITION:** [*1] Motion to transfer case granted.

**COUNSEL:** For BAYER BIOSCIENCE N V, plaintiff: George Pazuniak, Connolly, Bove, Lodge & Hutz, Wilmington, DE.

For MONSANTO COMPANY, defendant: Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE.

For MONSANTO COMPANY, counter-claimant: Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE.

For BAYER BIOSCIENCE N V, counter-defendant: George Pazuniak, Connolly, Bove, Lodge & Hutz, Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory M. Sleet

**OPINION:**

**MEMORANDUM AND ORDER**

**I. INTRODUCTION**

On January 10, 2003, the plaintiff, Bayer Bioscience, N.V. ("Bayer"), filed the above-captioned action alleging that Monsanto Company ("Monsanto") is engaging in activity that infringes Bayer's U.S. Patent No. 5,659,123 ("the '123 patent").

Presently before the court is Monsanto's motion to transfer the case to the United States District Court for the Eastern District of Missouri pursuant to *28 U.S.C. § 1404(a)*. For the following reasons, the court will grant this motion. [*2]

**II. BACKGROUND**

Bayer is a foreign corporation headquartered in Ghent, Belgium. Monsanto is a Delaware corporation, with its headquarters in St. Louis, Missouri.

The patent at issue involves a corn product that has been genetically modified to express a particular "Bt" gene that makes the corn resistant to a type of Coleopteran insect known as the corn rootworm. For the past two years, Monsanto and Bayer have been engaged in litigation in the Eastern District of Missouri regarding four other patents assigned to Bayer. Those four patents all generally relate to crops genetically engineered with a "Bt gene," purportedly rendering the crops toxic to a class of insects known as Lepidopteran insects.

On December 27, 2002, the Missouri District Court issued a summary judgment order finding that all four of the patents-in-suit in that case were unenforceable due to inequitable conduct. On January 10, 2003, Bayer filed the present action. Also on January 10, 2003, Monsanto filed a declaratory judgment action for noninfringement in the Missouri District Court.

**III. DISCUSSION**

**A. The "First-Filed" Rule**

Where two patent lawsuits involving the same claims are filed in [*3] different jurisdictions, the Federal Circuit requires that the first-filed action be given preference absent special circumstances. *See Genentech v. Eli Lilly & Co., 998 F.2d 931, 937 (Fed. Cir. 1993)*. The first-filed doctrine also serves to prevent a multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising from common matters. *See id. at 937*.

Applying the first-filed rule, Bayer now argues that it would be improper for the court to transfer this first-filed action to the Eastern District of Missouri. While the court does not dispute that this action is first-filed, albeit only by several hours, for the following reasons, the court concludes that the *1404(a)* factors nevertheless weigh in

2003 U.S. Dist. LEXIS 4594, *

favor of litigating this dispute in Missouri. *See id. at 937-38* (noting that "the trial court's discretion tempers the preference for the first-filed suit, when such preference should yield to the forum in which all interests are best served.").

### B. *Section 1404(a)*

*Section 1404(a)* provides that "for the convenience of [the] parties and [the] witnesses, in the interest of justice," the court may transfer [*4] this action to "any other district where it might have been brought." *28 U.S.C. § 1404(a)*. Bayer suggests that the Eastern District of Missouri may not have personal jurisdiction over it. n1 Importantly, however, Bayer fails to suggest that it could not have originally brought this action in Missouri, rather than in Delaware. Thus, because Bayer could have brought this action in the proposed transferee district, the court will move on with the inquiry as directed by the Third Circuit. *See Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).*

> n1 As it is not the court's province to determine the question of another court's personal jurisdiction, the court expresses no opinion on this issue.

When considering a motion to transfer, the court must determine 'whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.' *Id.* This inquiry requires "a multi-factor balancing test" [*5] embracing not only the statutory criteria of convenience of the parties and the witnesses and the interests of justice, but all relevant factors, including certain private and public interests. *Id. at 875, 879.* These private interests include the plaintiff's choice of forum; the defendants' preference; whether the claim arose elsewhere; and the location of books and records, to the extent that they could not be produced in the alternative forum. n2 *Id. at 879.* Among the relevant public interests are: "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; [and] the public policies of the fora." *Id. at 879-80* (citations omitted).

> n2 The first three of these private interest collapse into other portions of the *Jumara* analysis.

The court, therefore, will consider them in the context of the entire inquiry only. *See Affymetrix, Inc. v. Synteni, Inc. and Incite Pharmaceuticals, Inc., 28 F. Supp. 2d 192 (D. Del. 1998).*

[*6]

Upon consideration of these factors, the court finds that Monsanto has met its burden of demonstrating that transfer is appropriate. In reaching this conclusion, the court relied on the following considerations, among others: (1) while the defendant is a Delaware entity, and should reasonably expect to litigate in this forum, there is little connection between Delaware and this action or the parties; (2) no party maintains operations in Delaware; (3) the parties are large and international organizations with substantial assets; (4) because the parties are litigating apparently related issues in Missouri, travel time and convenience in the aggregate would be substantially increased with a transfer of forum; and (5) any disparity in court congestion is not so great as to weigh against transfer due to the "mirror image" action currently pending in the Eastern District of Missouri. Thus, given the on-going relationship that the Eastern District of Missouri has with the same parties, and the same, or related, patent or patents, the court concludes that the public and private interests are sufficient to tip the balance of convenience strongly in favor of transfer.

### IV. CONCLUSION [*7]

For the aforementioned reasons, IT IS HEREBY ORDERED that:

> 1. Bayer's Motion for Leave to File a Sur-Reply (D.I. 10) is GRANTED as unopposed.
>
> 2. Monsanto's Motion to Transfer this case (D.I. 5) is GRANTED.
>
> 3. The above-captioned action is hereby TRANSFERRED to the United States District Court for the Eastern District of Missouri.

Dated: March 25, 2003

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

LEXSEE 2000 US DIST LEXIS 22222

**BRUNSWICK CORPORATION, Plaintiff, v. PRECOR INCORPORATED., Defendant.**

**C.A. No. 00-691-GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2000 U.S. Dist. LEXIS 22222*

**December 12, 2000, Decided**
**December 12, 2000, Filed**

**DISPOSITION:** [*1] Precor's motion to transfer granted.

**COUNSEL:** For BRUNSWICK CORPORATION, plaintiff: Robert W. Whetzel, Richards, Layton & Finger, Wilmington, DE.

For PRECOR INCORPORATED, defendant: Samuel David Brickley, II, Connolly, Bove, Lodge & Hutz, Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory M. Sleet

**OPINION:**

### MEMORANDUM AND ORDER

On August 1, 2000, the plaintiff, Brunswick Corporation, and its division Life Fitness ("Life Fitness") brought this patent infringement action against Precor Incorporated ("Precor"). Life Fitness alleges that Precor is infringing its U.S. Patent No. *6,095,951* (" *'951* patent") relating to exercise treadmills. Presently before this court is Precor's motion to transfer this case to the United States District Court for the Western District of Washington, pursuant to *28 U.S.C. § 1404*(a). Because the court finds that a transfer would convenience the parties and the witnesses while serving the interests of justice, Precor's motion to transfer is granted.

### I. BACKGROUND

#### A. The parties

Life Fitness and Precor both design, manufacture, [*2] and sell exercise equipment and both directly com-

pete with one another in the exercise fitness market. Although both parties are incorporated in Delaware, neither party maintains a physical presence (e.g., offices or facilities) in this state. Life Fitness has its principal place of business in Franklin Park, Illinois and Precor has its principal place of business in Bothell, Washington.

#### B. Prior Litigation Between the Parties

"Life Fitness and Precor are no strangers to each other, nor to patent litigation." D.I. 7, at 2. In 1994, Precor filed a patent infringement suit against Life Fitness in the United States District Court for the Western District of Washington ("1994 litigation"). At issue in the 1994 litigation were . U.S. Patent Nos *5,599,259, 5,752,897* and certain Claims of U.S. Patent No. *5,382,207* (respectively the " *'259, '897,* and *'207* patents"). The *'207* patent is the parent of the *'951* patent currently at issue in the case before the court.

In the 1994 litigation, Claims 1-36 of *'207* patent were dismissed on summary judgment in February 1996 leaving only claims 37, 38, and 39 at issue. In early September 1999, Life Fitness voluntarily stipulated to the dismissal [*3] of the claims for infringement of the *'259* and *'897* patents as well as Claims 38-39 of the *'207* patent. As a result of this stipulation, these claims were dismissed with prejudice in an order dated September 23, 1999. *See Precor Inc. v. Life Fitness,* No. C94-1586C (W.D. Wash. Sept. 23, 1999) (stipulation and order of dismissal). Thus, the only infringement claim remaining for trial related to Claim 37 of the *'207* patent. In October 1999, Life Fitness lost at trial as to this one patent claim. The judgment from the 1994 litigation is currently on appeal to the Federal Circuit.

### II. DISCUSSION

Pursuant to *28 U.S.C. § 1404*(a), the court may transfer this action to "any other district where it might

2000 U.S. Dist. LEXIS 22222, *

have been brought" when it appears that a change of venue would "convenience" the parties and the witnesses while serving the "interest of justice." *28 U.S.C. § 1404*(a) (1993). The parties here agree that Life Fitness could have brought this action in the Western District of Washington. *See 28 U.S.C. S 1391*(b)(1) (1993). Moreover, this lawsuit could have initially been filed in Washington because it is a patent [*4] infringement matter. *See 28 U.S.C. § 1400*(b). Therefore, the court will next apply the most relevant public and private factors to the facts of the case as directed by the Third Circuit's decision in *Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir.1995).*

In *Jumara*, the Third Circuit Court of Appeals identified a nonexclusive list of factors that have been used to guide courts in the exercise of their discretion in ruling on requests for transfer. *55 F.3d at 879-80; see also Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp.2d 192, 196-97 (D. Del. 1998).* These factors fall into two groups: those relating to the private convenience of the litigants and those affecting the public interest in the fair and efficient administration of justice. *Jumara, 55 F.3d at 879-80.* n1 The court should apply these factors to determine, "on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Id. at 883* (citing *Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 30-31, 101 L. Ed. 2d 22, 108 S. Ct. 2239 (1988)).* [*5] The burden is on moving party to show that balance of convenience and the interests of justice weighs in favor of transfer. *See Jumara, at 879.*

> n1 The private interests may include: 1) the plaintiff's original forum preference; 2) the defendant's forum preference; 3) whether the claim arose elsewhere; 4) the convenience of the parties; 5) the convenience of the witnesses-- but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and 6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum). *Jumara, 55 F.3d at 879-880.* The public interests may include: 1) the enforceability of the judgment; 2) practical considerations that make the trial easy, expeditious, or inexpensive; 3) the relative administrative difficulty in the two fora resulting from court congestion; 4) the local interest in deciding local controversies at home; 5) the public policies of the fora; and 6) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.*

[*6]

A. Private Factors

The court concludes that the balance of the private factors tips slightly in favor of transfer. In this case, the court finds the convenience of the parties, the convenience of the witnesses, and the location of records and books to be the most pertinent of the private factors. Although both parties are incorporated in Delaware, Precor maintains its headquarters in the Western District of Washington and Life Fitness in Franklin Park, Illinois. Additionally, neither of the parties, their witnesses, or any of the potentially relevant documents and records are located in Delaware.

Recognizing that the balance of convenience tips toward the Western District of Washington, Precor further argues that Life Fitness will suffer no greater inconvenience in traveling to Washington than Delaware. In contrast, Life Fitness argues that its choice of forum is paramount. The court acknowledges that a plaintiff's choice of forum is a "paramount" consideration that is not to be "lightly disturbed." *Schutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970); see also Jumara v. State Farm Ins. Co., 55 F.3d 873, 879-80 (3d Cir. 1995).* In this case, [*7] however, the plaintiff's preference for Delaware is not given as much deference because most of the events at issue, that is, the design and manufacture of the exercise equipment, occurred outside of Delaware. *See Britamco Underwriters, Inc. v. Wallace, 56 F. Supp. 2d 542, 545 (E.D. Pa. 1999).* "The transfer of a case will generally be regarded as less inconvenient to a plaintiff if the plaintiff has not chosen . . . a forum where the alleged wrongful activity occurred." *Continental Casualty Co. v. American Home Assurance Co., 61 F. Supp. 2d 128, 131 (D. Del. 1999).* Thus, because the parties are located outside of Delaware, the witnesses as well as the relevant documents and records are located in Washington, and the product at issue was designed and manufactured in Washington, the Western District of Washington is a more convenient forum for the litigation.

B. Public Factors and the Interest of Justice

Although the private factors tip slightly in favor of the Western District of Washington, the relevant public factors weigh heavily in favor of transfer. Most relevant to the courts inquiry is whether there are practical considerations that would make [*8] trial "easy, expeditious, or inexpensive." *Jumara, 55 F.3d at 879.* In this case, there has already been litigation on the '207 patent, a parent patent of the one at issue here, in the Western District of Washington. This matter is on appeal. Moreover, the parties are currently litigating another patent infringement matter involving exercise equipment in the Western District of Washington. n2 Where related lawsuits exist, "it is in the interests of justice to permit suits involving the same parties and issues to proceed before one court." *See Liggett Group, Inc. v. R.J. Reynolds Tobacco Co., 102 F. Supp. 2d 518, (D.N.J. 2000) (citations omitted). Thus, the

2000 U.S. Dist. LEXIS 22222, *

court finds that transferring this case would promote the interests of justice.

> n2 The parties disagree as to whether this is a directly related matter.

## III. CONCLUSION.

Finding that the balance of convenience and the interests of justice weigh in favor of transfer,

IT IS HEREBY ORDERED that:

1. Precor Incorporated's [*9] Motion to Transfer is GRANTED; and

2. This matter shall be TRANSFERRED to the Western District of Washington.

Date: December 12, 2000

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

LEXSEE 2002 US DIST LEXIS 2980

**CORIXA CORPORATION, a Delaware corporation, et al., Plaintiffs, v. IDEC PHARMACEUTICALS CORPORATION, a Delaware corporation, Defendant.**

**C.A. No. 01-615 GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2002 U.S. Dist. LEXIS 2980*

**February 25, 2002, Decided**

**DISPOSITION:** [*1] Defendant's motion to transfer action to Southern District of California GRANTED, Matter TRANSFERRED.

**COUNSEL:** For CORIXA CORPORATION, COULTER PHARMACEUTICAL INC., SMITHKLINE BEECHAM CORPORATION, plaintiffs: Thomas C. Grimm, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

For IDEC PHARMACEUTICALS CORPORATION, defendant: Philip A. Rovner, Potter Anderson & Corroon, LLP, Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory Moneta Sleet

**OPINION:**

MEMORANDUM AND ORDER

I. INTRODUCTION

On September 10, 2001, IDEC Pharmaceutical Corporation ("IDEC") filed a complaint in the Southern District of California against Coulter Pharmaceutical Inc. ("Coulter"), Corixa Corporation ("Corixa"), and the Regents of the University of Michigan ("Michigan"). In its complaint, IDEC seeks a declaratory judgment of non-infringement and/or invalidity of five patents. On September 11, 2001, the Oncologic Drugs Advisory Committee ("ODAC") indicated that it would recommend a limited FDA approval of IDEC's drug Zevalin. On September 12, 2001, at approximately 8:33 A.M. PST, IDEC [*2] filed a first amended complaint which included a sixth patent.

On September 12, 2001, at 12:07 P.M. EST, Corixa, Coulter, and GlaxoSmithKline (GSK) (collectively "Corixa") filed the above-captioned action against IDEC. n1 Corixa alleges that IDEC is infringing U.S. Patent Nos. 6,015,542, ("the 542 patent"), 6,090,365 ("the 365 patent"), and 5,595,721 ("the 721 patent"). These patents are three of the patents involved in the California declaratory judgment action.

n1 On September 28, 2001, Michigan was added as a plaintiff in this action.

Presently before the court is IDEC's motion to stay the proceedings, or alternatively, to dismiss or transfer this action to the Southern District of California. n2 For the reasons that follow, the court will grant IDEC's motion to transfer.

n2 IDEC sought to stay the proceedings pending a ruling from the California court on a motion to dismiss. On January 30, 2002, the California court denied the motion to dismiss. IDEC's current motion to stay is therefore moot.

[*3]

II. BACKGROUND

IDEC is a Delaware corporation with its sole place of business in the San Diego area. Coulter is a Delaware corporation with its principle place of business in the San Francisco Bay area. Corixa is a Delaware corporation based in Seattle, Washington. GSK is a Pennsylvania corporation with its principle place of business in Philadelphia, Pennsylvania. The University of Michigan is a constitutional corporation of the State of Michigan, located in Ann Arbor, Michigan.

The patents at issue involve technology for the treatment of lymphoma using targeted radioimmuno-therapy. Coulter and Michigan are co-owners of the 542, 365, and 721 patents. Corixa and GSK are the licensees of these patents. Both IDEC and Corixa are currently seeking FDA approval for a commercial embodiment of their respective inventions for the treatment of lymphoma using radioimmunotherapy.

With these facts in mind, the court will now turn to the motion presently before it.

III. DISCUSSION

A. The "First-Filed" Rule

Where two patent lawsuits involving the same claims are filed in different jurisdictions, the Federal Circuit requires that the first-filed action be given preference [*4] absent special circumstances. *See Genentech v. Eli Lilly & Co., 998 F.2d 931, 937 (Fed. Cir. 1993)*. The first-filed doctrine also serves to prevent a multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising from common matters. *See id. at 937*. This doctrine applies equally well where the first-filed action is one for a declaratory judgment. *See id. at 938* (noting that, where the declaratory action can resolve the various issues, a first-filed declaratory action is entitled to precedence as against a later-filed patent infringement action.)

Applying the first-filed rule, IDEC argues that the present case should be transferred to the Southern District of California. Notwithstanding that the cases at issue are "mirror image" cases where the court is asked to construe the same patents, Corixa argues that the first-filed rule is inapplicable to the present situation.

Corixa first argues that GSK has not been joined in the California litigation. The record before the court indicates that GSK is Coulter's licensee. It is unclear whether GSK is an exclusive licensee. However, even were the court to accept [*5] Corixa's argument that GSK is an exclusive licensee, that alone does not indicate that GSK is a necessary party to this litigation. Corixa concedes that GSK is a licensee with fewer than all substantial rights. As such, GSK, while likely a proper party to the California lawsuit, is not a necessary party. *See Intellectual Property Development, Inc. v. TCI Cablevision of California, Inc., 248 F.3d 1333, 1348 (Fed. Cir. 2001)* (holding that an exclusive licensee possessing fewer than all substantial rights may not sue in its own name without joinder of the patent owner.) Finally, to the extent that the parties believe that GSK is a necessary party, GSK may request permission to join the California litigation. n3

n3 Corixa expresses concern over whether the California court has subject-matter jurisdiction over an action between IDEC and GSK. As it is not the court's province to determine another court's subject matter jurisdiction, the court expresses no opinion on this.

Corixa next argues that the [*6] first-filed rule is inapplicable to the present situation because IDEC improperly "raced to the courthouse" in order to file its motion in California. In support of this contention, Corixa points out that its right to file an infringement suit against IDEC did not ripen until after ODAC recommended that the FDA approve Zevalin. However, before ODAC publicly recommended approval, but after IDEC had reason to believe they would do so, IDEC "raced" to file its declaratory judgment action.

The court acknowledges that IDEC's filing seems providential since ODAC's recommendation became public the day after IDEC filed its suit. In its November 6, 2001 Order, however, the California court specifically found that IDEC possessed a reasonable apprehension of suit when it filed its declaratory judgment action. The California court continued by stating that, "an actual controversy existed when IDEC filed the complaint under consideration. Consequently the court finds that IDEC's filing suit was not motivated by "forum shopping alone," but rather was a legitimate exercise of its opportunity under the Declaratory Judgement Act . . . ." This court sees no reason to disagree with the California court's [*7] findings.

Given the information presently before it, the court concludes that having two separate trials in mirror image cases would defeat the purposes of the first-filed rule, namely, sound judicial administration and comity among federal courts of equal rank. *See EEOC v University of Pennsylvania, 850 F.2d 969, 971 (3d Cir. 1988)*. Accordingly, the court finds that the application of the rule weighs heavily in favor of transferring this case to the Southern District of California.

B. Section 1404(a)

Transfer to the Southern District of California is also mandated under a section 1404(a) analysis. Section 1404(a) provides that "for the convenience of [the] parties and [the] witnesses, in the interest of justice," the court may transfer this action to "any other district where it might have been brought." *28 U.S.C. § 1404(a)*. There is no dispute that this action could have been filed in the Southern District of California. The court will, therefore, move on with inquiry as directed by the Third Circuit. *See Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995)*.

2002 U.S. Dist. LEXIS 2980, *

In *Jumara*, the Third Circuit provided [*8] a list of factors to assist the district courts in determining "whether, on balance, the litigation would more conveniently proceed and the interests of justice [would] be better served by a transfer to a different forum." *Id.* These factors include six private and five public interests which the court may consider. *See id.*

### 1. The Private Interests

The private interests most relevant to this case include: (1) the convenience of the parties as indicated by their relative physical and financial position; (2) the convenience of the witnesses, but only to the extent that they may be unavailable for trial in one of the fora; and (3) the location of records and other documents, again, only to the extent that these files cannot be produced in the alternate forum. n4

> n4 For the reasons the court discussed in a previous opinion, it will not afford any weight to the first three *Jumara* factors, specifically, the plaintiff's initial choice of forum, the defendant's preferred venue, and whether the claim arose elsewhere. *See Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp. 2d 192, 197-201 (D. Del. 1998).* In not affording weight to these factors, the court avoids the risk of double-counting these interests and thereby throwing off the transfer analysis. *See id.* Instead, the court will consider whether the Southern District of California is a more convenient forum for the parties and the witnesses, while also serving the interests of justice. *See 28 U.S.C. § 1404(a).*

[*9]

### a. The Convenience of the Parties

Geographically, California is not more inconvenient for the parties than Delaware. Michigan must travel whether the suit is in California or Delaware. GSK is one of the world's largest pharmaceutical companies, and cannot complain about location. The remainder of the parties are based on the West Coast. Furthermore, transfer to California would reduce the overall inconvenience to all parties involved. The parties must already be prepared to litigate the related case currently pending in the Southern District of California. Bringing witnesses and relevant documents to only one location, here California, minimizes the level of disruption caused to all parties by the litigation. This is certainly a more economical and efficient result than having each party moving witnesses and documents between two states, depending on which of these related actions is being litigated at that time. Thus, this factor weighs in favor of transfer.

### b. The Convenience of Witnesses

Party witnesses or witnesses who are employed by a party carry no weight in the "balance of convenience" analysis since each party is able, indeed obligated, to procure the attendance of its [*10] own employees for trial. *See Affymetrix, 28 F. Supp. 2d at 203.* Expert witnesses or witnesses who are retained by a party to testify carry little weight in determining where the "balance of convenience" lies because they are "usually selected [on the basis] of their reputation and special knowledge without regard to their residences and are presumably well compensated for their attendance, labor and inconvenience, if any." *See id.* (internal citations omitted). Fact witnesses who possess first-hand knowledge of the events giving rise to the lawsuit, however, have traditionally weighed quite heavily in the "balance of convenience" analysis. *See id.*

There is no evidence on the record that would indicate that Delaware would be an inconvenient forum for potential non-party witnesses. However, the court notes that all the material witnesses in this dispute, party or otherwise, will be in California already to litigate the related matter now pending in the Southern District of California. Requiring that they come to Delaware to litigate this action separately cannot be considered convenient and in the interest of justice. However, as there is no clear evidence [*11] that a non-party witness will be unable to attend trial in Delaware, this factor must weigh against transfer.

### c. The Location of Records and Other Documents

The technological advances of recent years have significantly reduced the weight of this factor in the "balance of convenience" analysis. *See id. at 205.* There is no indication that either party would be unable to produce the relevant records and documents in Delaware. Thus, because this factor is relevant only insofar as the documents would be unavailable in one forum, the court finds that this factor must weigh against transfer.

From a practical standpoint, however, the court notes that any relevant documents will already be in California for the litigation of that case. The court sees no need to require that the parties move the same documents across the country. Rather, it would be much more efficient to litigate these related actions in one location. However, these considerations are more relevant to the first factor discussed *supra.*

### 2. The Public Factors

As other courts have noted, depending on the circumstances of the case, some of the "public interest" factors listed in *Jumara* may play no role [*12] in the "balance of convenience." *See id. at 205.* The court thus

2002 U.S. Dist. LEXIS 2980, *

elects to discuss only the factors most relevant to the pending case.

a. Practical Considerations Making Trial Easy, Expeditious or Inexpensive

This factor appears to substantially repeat the "first-filed" analysis advanced by IDEC, and accepted by the court, in Section III.A, *supra*. As such, the court declines to further address this issue here, since it has already taken this argument into consideration.

b. Delaware's Interest in this Controversy

Three of the parties in this action are Delaware corporations. However, while the court is mindful of Delaware's interest, that alone will not tip the "balance of convenience" in its favor. This is so because the court can hardly describe the patents as a local controversy unique to Delaware. *See Affymetrix, 28 F. Supp. 2d at 207.* Instead, the patents deal with the treatment of lymphoma. This clearly has far-reaching implications. Accordingly, this factor does not weigh against transferring this case to California.

c. Collective Travel Time and Cost

A mirror image action is currently pending in California. Thus, to require the parties [*13] to simultaneously litigate virtually the same case on different coasts

would certainly increase the collective travel time and cost. Thus, this factor weighs in favor of transfer.

IV. CONCLUSION

The court concludes that the "balance of convenience" tips strongly in favor of transferring this action to the Southern District of California.

For these reasons, IT IS HEREBY ORDERED that:

    1. IDEC's alternative motion to transfer this action to the Southern District of California (D.I. 8) is GRANTED.

    2. The above-captioned matter is hereby TRANSFERRED to the United States District Court for the Southern District of California.

Dated: February 25, 2002

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

LEXSEE 2001 US DIST LEXIS 25570

**OLE K. NILSSEN and GEO FOUNDATION, LTD., Plaintiffs, v. OSRAM SYLVANIA, INC, and OSRAM SYLVANIA PRODUCTS, INC., Defendants.**

**Civil Action No. 00-695-JJF**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2001 U.S. Dist. LEXIS 25570*

**May 1, 2001, Decided**

**DISPOSITION:** [*1] Defendants' motion to transfer case granted.

**COUNSEL:** Donald F. Parsons, Jr., Esquire and Mona A. Lee, Esquire of MORRIS, NICHOLS, ARSHT & TUNNELL, Wilmington, Delaware.

Of Counsel: Harry J. Roper, Esquire, Raymond N. Nimrod, Esquire, John E. Titus, Esquire, and Jonathon Hill, Esquire of ROPER & QUIGG, Chicago, Illinois. Attorneys for Plaintiffs.

Richard K. Hermann, Esquire of BLANK ROME COMISKY & MCCAULEY LLP, Wilmington, Delaware.

Of Counsel: Brian D. Sieve, Esquire, Thomas G. Pasternak, Esquire, Andrew M. Johnstone, Esquire, and Kevin J. O'Shea, Esquire of KIRKLAND & ELLIS, Chicago, Illinois. Attorneys for Defendants.

**JUDGES:** Joseph Farnan, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Joseph Farnan

**OPINION:**

**MEMORANDUM OPINION**

Wilmington, Delaware

**FARNAN, District Judge.**

· Presently before the Court is Defendants' Motion to Transfer Pursuant to *28 U.S.C. § 1404(a)* (D.I. 15). For the reasons stated below, the Court will grant the motion.

**BACKGROUND**

Ole K. Nilssen ("Mr. Nilssen") is a Florida resident with his principal place of business in Chicago, Illinois. n1 (D.I. 1 at P [*2] 4). Mr. Nilssen is engaged in the business of "identifying, formulating plans for, developing know-how and technology for, and implementing (via licensing agreements) promising new business opportunities in the field of electronics, including electronic ballasts." (D.I. 1 at P 8). Geo Foundation ("Geo") is a non-profit corporation incorporated in the Cayman Islands, British West Indies. (D.I. 1 at P 5)(Mr. Nilssen and Geo collectively referred to as "Plaintiffs").

> n1 Mr. Nilssen contends that his ongoing business in Illinois, Innovations Center, "is now defunct." (D.I. 24, Exh. 1 at P 8). However, Plaintiffs' Complaint alleges that Mr. Nilssen is currently engaged in "business opportunities." (D.I. 1 at P 4). Further, Mr. Nilssen admits that he still travels to Illinois regularly to "bring closure to [his] other business dealings that take place in Illinois." (D.I. 24, Exh. 1 at P 8). The Court concludes that, for purposes of the instant motion, this record sufficiently establishes that Mr. Nilssen's principal place of business is in Illinois.

[*3]

OSRAM Sylvania, Inc. and OSRAM Sylvania Products, Inc. (collectively "Defendants") are Delaware corporations with their principal places of business in Danvers, Massachusetts. (D.I. 13 at P 6-7). Defendants are engaged in the business of making and selling electronic ballasts. (D.I. 13 at PP 11).

Plaintiffs filed the instant action against Defendants on August 1, 2000. In their Complaint, Plaintiffs contend that Defendants wilfully infringe twenty-six patents that were invented and are owned by Mr. Nilssen and of which Geo holds exclusive licenses. n2 (D.I. 1 at PP 9, 10, 13).

On January 24, 2001, Defendants filed the instant motion to transfer the case to the United States District Court for the Northern District of Illinois. (D.I. 15).

n2 These patents include U.S. Patent No. B1 4,667,345; U.S. Patent No. 4,857,806; U.S. Patent No. 4,954,754; U.S. Patent No. 4,983,887; U.S. Patent No. 5,013,974; U.S. Patent No. 5,047,690; U.S. Patent No. 5,164,637; U.S. Patent No. 5,185,560; U.S. Patent No. 5,189,342; U.S. Patent No. 5,191,262; U.S. Patent No. 5,214,356; U.S. Patent No. 5,233,270; U.S. Patent No. 5,341,067; U.S. Patent No. 5,343,123; U.S. Patent No. 5,402,043; U.S. Patent No. 5,416,386; U.S. Patent No. 5,432,409; U.S. Patent No. 5,446,347; U.S. Patent No. 5,471,118; U.S. Patent No. 5,479,074; U.S. Patent No. 5,481,160; U.S. Patent No. 5,510,680; U.S. Patent No. 5,510,681; U.S. Patent No. 5,621,279; U.S. Patent No. 5,736,819 and U.S. Patent No. 6,002,210. (D.I. 1 at P 9).

[*4]

DISCUSSION

Under 28 U.S.C. § 1404(a), "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Since it is undisputed that Plaintiffs could have brought the instant action in the Northern District of Illinois, the Court's only task is to determine whether the factors enumerated in § 1404(a) warrant a transfer under the circumstances.

In determining whether or not to transfer venue under § 1404(a), a district court must consider a number of different factors. These factors include several private interests: (1) the convenience of the parties due to their relative physical and financial conditions, (2) the convenience of the expected witnesses, but only so far as the witnesses might be unavailable for trial if the trial is conducted in a certain forum, and (3) the location of books and records, to the extent that these books and records could not be produced in a certain forum. Memminger v. InfoCure Corp., 2000 U.S. Dist. LEXIS 22077, C.A. No. 00-707-JJF, slip op. at 4 (D. Del. Nov. 14, 2000)(citing [*5] Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995)). n3 These factors also include several public interests:

(1) the enforceability of the judgment, (2) practical considerations regarding the ease, speed, or expense of trial, (3) the admin-

istrative difficulty due to court congestion, (4) the local interest in deciding local controversies in the home forum, (5) the public policies of the two fora, and (6) the trial judge's familiarity with the applicable state law in diversity cases.

Id. (citing Jumara, 55 F.3d at 879-80). When determining whether or not transfer is warranted under the circumstances, district courts must balance all of the relevant factors. Jumara, 55 F.3d at 883. "The burden is upon the [moving party] to establish that the balance of the [factors] strongly weighs in favor of the requested transfer, and a transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer." Memminger, 2000 U.S. Dist. LEXIS 22077, slip op. at 4-5. Below, the Court will analyze the factors relevant to the instant motion.

n3 Jumara also listed the following private interests that district courts should consider: (1) the plaintiff's choice of forum, (2) the defendant's preferred forum, and (3) whether the claim arose elsewhere. 55 F.3d at 879. Subsequent decisions of this Court, however, have determined that these interests are subsumed by the other Jumara factors. Memminger, 2000 U.S. Dist. LEXIS 22077, slip op. at 5. Therefore, to avoid considering the same interests twice, the Court will not considered them separately. Id.

[*6]

A. Convenience of the Parties

The Court concludes that the convenience of the parties due to their relative physical and financial conditions weighs slightly in favor of transfer. Defendants' principal places of business are located in Danvers, Massachusetts. (D.I. 16 at 5). Many of Defendants' accused products are manufactured in Lake Zurich, Illinois, which is within the Northern District of Illinois. (D.I. 16 at 5). Defendants' contacts with Delaware, on the other hand, are minimal: Defendants are incorporated under Delaware law, Defendants have one salesperson who works out of a home office in Delaware, and some of Defendants' accused products are sold in Delaware. n4 (D.I. 16 at 5). See Memminger, 2000 U.S. Dist. LEXIS 22077, slip op. at 6-7 (recognizing that the mere fact a defendant is incorporated in a given forum does not mean that transfer to another forum is not warranted); Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp., 11 F. Supp. 2d 729, 730-30 (S.D.N.Y. 1998)(holding that the Southern District of New York's connection to the litigation was "tenuous" for

Case 1:06-cv-00089-JJF    Document 9-2    Filed 02/23/2006    Page 25 of 35

Page 3
2001 U.S. Dist. LEXIS 25570, *

purposes of venue transfer analysis when the defendant was incorporated in New York and over 100 of the [*7] defendant's allegedly infringing products were sold in New York). Also supporting the requested transfer is the fact that Mr. Nilssen's principal place of business is in Illinois, and that several of his current and former employees reside in Illinois.

n4 Plaintiffs' contention that their "claim arose" in Delaware, because some of Defendants' accused products are sold in Delaware, lacks merit. Defendants' products are sold nationwide; therefore, Delaware does not have any special "connection" to the case that would weigh against the requested transfer.

Based on these considerations, the Court concludes that it would be more convenient to litigate in the Northern District of Illinois rather than in Delaware. However, this factor weighs only slightly in favor of transfer because both Defendants are large companies that are financially capable of litigating in a distant forum. *Motorola Inc. v. PC-Tel, Inc., 58 F. Supp. 2d 349, 358 (D. Del. 1999)*(holding that when the party seeking transfer is a [*8] multimillion dollar company, unless the company can articulate "some unique or unexpected burden" associated with litigating in a distant forum, this factor only weighs slightly in favor of transfer).

**B. Convenience of the Witnesses**

The Court concludes that the convenience of the witnesses weighs strongly in favor of transfer. The convenience of the witnesses is the most important factor in venue transfer analysis. *Mentor Graphics v. Quickturn Design Sys., Inc., 77 F. Supp. 2d 505, 510 (D. Del. 1999)*. The convenience of a witness is only relevant, however, "to the extent that the witness may actually be unavailable for trial in one of the fora." *Asten Inc. v. Weavexx Corp.*, 2000 WL 1728354, at *4 (D. Del. Feb. 11, 2000)(quoting *Jumara, 55 F.3d at 879*). A party need not allege that a witness definitely will be unavailable for trial; rather, it is sufficient for purposes of venue transfer analysis if the witness is not subject to a court's subpoena power. *Mentor Graphics, 77 F. Supp. 2d at 511*. However, witnesses employed by the parties are not considered by a court conducting venue transfer analysis because [*9] the parties are obligated to procure the presence of their own employees at trial. *Id.*

In the instant case, Defendants contend that no witnesses reside in Delaware but that a number of principal witnesses reside in the Northern District of Illinois, including: (1) Dale Fiene - an employee of Mr. Nilssen, (2) Robert Schneider - a former employee of Mr. Nilssen, (3)

employees of Defendants, (4) employees of Motorola, Inc, and (5) employees of Advance Transformer, Inc. ("Advance"). (D.I. 16 at 10). In response, Plaintiffs contend that Defendants' contentions are unavailing because (1) Defendants have failed to explain the nature of these witnesses' testimony, and in several cases, have even failed to name the witnesses, (2) Defendants have failed to show, that the use of videotaped deposition testimony would be an inadequate substitute for live trial testimony, and (3) Defendants have not alleged that any witnesses actually will be unavailable for trial. (D.I. 25 at 11).

The Court concludes that Plaintiffs' second and third arguments can be summarily rejected. As to Plaintiffs' third argument, as previously discussed, a party only needs to establish that witnesses might be unavailable [*10] for trial. As to Plaintiffs' second argument, the Court concludes that videotaped depositions are not an adequate substitute for live trial testimony when conducting venue transfer analysis because "video depositions ... are unlikely to hold the rapt attention of a jury." *AlliedSignal, Inc. v. Cooper Auto., Inc.*, 1997 U.S. Dist. LEXIS 22902, at *11 n.4 (D. Del. July 30, 1997).

Plaintiffs' first argument warrants more consideration. One of these witnesses, Dale Fiene, is a current employee of Mr. Nilssen; therefore, the Court concludes that Mr. Fiene should not be considered in the analysis. n5 (D.I. 24 at 9). The Court also agrees that Defendants' employees do not weigh into the analysis. However, Mr. Schneider, a former employee of Mr. Nilssen, and employees from Motorola and Advance do warrant consideration because they are potential third party witnesses.

n5 To the extent that Mr. Nilssen admits that Mr. Fiene is a current employee, such admission belies Mr. Nilssen's attempt to downplay the extent of his business contacts in Illinois.

[*11]

Plaintiffs contend that these potential third party witnesses do not weigh in favor of transfer because Defendants have failed to specifically identify many of these witnesses by name and/or the content of their testimony. (D.I. 24 at 10-11). However, Defendants specifically identify Mr. Schneider and note that his testimony is relevant because Mr. Schneider has submitted a number of affidavits to the PTO on Mr. Nilssen's behalf. (D.I. 16 at 10). Mr. Schneider's knowledge is relevant to Defendants' affirmative defenses, especially Defendants' allegations of inequitable conduct by Mr. Nilssen during the prosecution of many of the patents in suit.

Defendants' potential witnesses from Motorola and Advance have not been identified by name. However,

2001 U.S. Dist. LEXIS 25570, *

Defendants indicate that Motorola's employees will testify about Motorola's business dealings with Mr. Nilssen and about prior art to the patents in suit. (D.I. 16 at 10). Defendants also indicate that Advance's employees will provide relevant testimony about a reasonable royalty and about prior art. n6 (D.I. 16 at 10). The Court concludes that such identification, especially when fact discovery has yet to take place and when Plaintiffs have [*12] yet to specify the specific patent claims and products implicated in the lawsuit, is sufficient for purposes of venue transfer analysis. n7 Therefore, the Court concludes that the convenience of the witnesses strongly weighs in favor of transfer.

> n6 Advance's employees are knowledgeable on such issues because Advance has a license agreement with Mr. Nilssen. (D.I. 16 at 10).

> n7 The cases cited by Plaintiffs in which the Court refused to afford unnamed witnesses any weight in the analysis involved situations where the movant merely stated that some witnesses existed that would not be available for trial. (D.I. 24 at 10-11)(citing *Motorola, 58 F. Supp. 2d at 359*; Sunds Defibrator, Inc. v. Durametal Corp., 1997 U.S. Dist. LEXIS 1859, 1997 WL 74660, at *3 (D. Del. Jan. 31, 1997)). Defendants' identification of the witnesses distinguishes the instant case from Motorola and Sunds Defibrator.

### C. Practical Considerations

The Court also concludes that practical considerations regarding the [*13] ease, speed, or expense of trial strongly weigh in favor of the requested transfer. If related cases are pending in the district to which transfer is sought, such fact weighs in favor of the transfer. *Affymetrix, Inc. v. Synteni. Inc., 28 F. Supp. 2d 192, 206 (D. Del. 1998)*. In a recent case granting a motion to transfer, the Court relied heavily on the existence of patent litigation in another forum involving "a parent patent of the one at issue" and a patent involving a similar type of product which was arguably "directly related" to the patent at issue. Brunswick Corp. v. Precor Incorp., 2000 U.S. Dist. LEXIS 22222, 2000 WL 1876477, at *3, n.2 (D. Del. Dec. 12, 2000).

In the instant action, Plaintiffs allege infringement of twenty-six patents, at least six of which are also being litigated in the Northern District of Illinois. n8 In the Illinois cases, Markman rulings have already been issued and case dispositive motions have already been filed. (D.I. 16 at 4). Therefore, the Court concludes that the waste of judicial resources in requiring two different courts to construe at least six of the same patents, n9 and to render Markman rulings on each of these patents, [*14] is a factor that strongly weighs in favor of transfer. n10

> n8 The number of patents in the instant case that overlap with patents involved in cases pending in the Northern District of Illinois is in dispute. Defendants contend that thirteen of the patents in this case are being litigated in Nilssen v. Motorola, Inc., Case No. 96-5571, and that three of these patents are also being litigated in Nilssen v. MagneTek, Inc., Case No. 98-2229. (D.I. 16 at 4). Plaintiffs respond that only six patents overlap between the Motorola case and the action presently before the Court. (D.I. 24 at 12 & n.4). The Court concludes that it is unnecessary to determine exactly how many of the patents overlap and will accept as true, for purposes of this motion, that only six patents overlap.

> n9 Defendants point out that the file wrapper for one of the overlapping patents consists of over 1,700 pages.

> n10 Plaintiffs contend that the doctrine of collateral estoppel will prevent any waste of judicial resources by precluding duplicative litigation. However, collateral estoppel only applies when a final judgment is rendered, so it could take months or years for collateral estoppel to become applicable. If Markman rulings are issued in the instant case that conflict with those rendered in the Northern District of Illinois prior to collateral estoppel becoming applicable, this could result in inconsistent judgments virtually guaranteeing that one of the judgments will get reversed on appeal. This judicial waste can be avoided by granting the instant motion to transfer.

[*15]

### CONCLUSION

In balance, the Court concludes that the relevant factors strongly weigh in favor of a transfer to the Northern District of Illinois. Both the convenience of the witnesses and practical considerations strongly weigh in favor of transfer, and the convenience of the parties weighs slightly in favor of transfer. On the other hand, no factors weigh against the requested transfer. n11 As a result, the Court concludes that a transfer to the Northern District of Illinois is warranted under the circumstances.

2001 U.S. Dist. LEXIS 25570, *

n11 Plaintiffs contend that they have a legitimate desire to litigate in Delaware in order to quickly resolve the matter, and that this factor weighs in favor of transfer. (D.I. 24 at 12). However, the statistical evidence submitted by Defendants reveal that civil cases are, on average, resolved more quickly in the Northern District of Illinois than in Delaware; however, in cases that ultimately go to trial, Delaware is a more expedient forum. (D.I. 16, Exh. H). Furthermore, Plaintiffs have admitted that the slow pace in the cases pending in the Northern District of Illinois is "due to the pace set by the lawyers." (D.I. 25, Exh. B at 2). Plaintiffs nonetheless assert that, because a trial date has already been set in the instant case for February 11, 2002, the instant suit will be resolved more quickly if tried in Delaware. However, in complex patent cases such as this, the initial trial date is often pushed back as discovery problems arise. Considering the number of patents at issue in this case and that discovery has yet to commence, the February 11, 2002 trial date looks unrealistic.

After the briefing in this matter was completed, Plaintiffs sent two letters to the Court (D.I. 27; D.I. 28) indicating that the summary judgment motions pending in the Northern District of Illinois cases were going to be further delayed because the motions had been referred to a special master. However, the Northern District of Illinois's referral order, which is attached to one of Plaintiffs' letters, highlights the fact that quick resolution of the lawsuit in this District is unlikely. The Order stated that: "the voluminous documents and arguments involved in the case" and "the legal and factual complexity of the case" would be such a drain on judicial resources that the appointment of a special master is warranted. (D.I. 28). The Court concludes that requiring two different courts to duplicate much of the same work would be inefficient and would not produce a more expedient resolution in this forum.

[*16]

An appropriate Order will be entered.

**ORDER**

At Wilmington, this 1 day of May, 2001, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that Defendants' Motion to Transfer Pursuant to *28 U.S.C. § 1404(a)* (D.I. 15) is **GRANTED.**

Joseph Farnan

UNITED STATES DISTRICT JUDGE

LEXSEE 2003 US DIST LEXIS 988

**THE ORIGINAL CREATINE PATENT COMPANY, LTD, Plaintiff, v. KAIZEN, INC., Defendant.**

**Civil Action No. 02-471-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2003 U.S. Dist. LEXIS 988*

**January 22, 2003, Decided**

**DISPOSITION:** [*1] Defendant's motion to dismiss or, in the alternative, to transfer was granted.

**COUNSEL:** For ORIGINAL CREATINE PATENT COMPANY, LTD, plaintiff: Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE.

For KAIZEN INC., defendant: David L. Finger, David L. Finger, Esq., Wilmington, DE.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINIONBY:** Sue L. Robinson

**OPINION:**

### MEMORANDUM ORDER

At Wilmington this 22nd day of January, 2003, having reviewed defendant's motion to dismiss or, in the alternative, to transfer and the papers submitted in connection therewith;

IT IS ORDERED that said motion to transfer (D.I. 14) is granted, for the reasons that follow: n1

> n1 Because the court is transferring the action to California, Kaizen's motion to dismiss for lack of personal jurisdiction is denied as moot. Kaizen's motions for protective orders (D.I. 25, 31) and OCPC's motion to strike (D.I. 10) are denied without prejudice to renew.

1. **Introduction.** On July 11, 2002, plaintiff, The Original Creatine Patent [*2] Co., Ltd. ("OCPC"), filed an amended complaint for patent infringement against defendant Kaizen, Inc. ("Kaizen"). n2 (D.I. 7) The patents-in-suit are United States Patent Number 5,757,159 ("the '159 patent") and United States Patent Number 5,968,544 ("the '544 patent"). OCPC alleges that Kaizen has made, used, offered for sale, and continues to do the same, creatine-containing products embodying the invention patented in the '544 patent. OCPC further contends that Kaizen has marketed and sold creatine-containing products embodying the invention in the '159 patent. Kaizen filed an answer and asserted affirmative defenses, including inequitable conduct and bad faith. (D.I. 9) Kaizen then filed this motion to dismiss or transfer to the Central District of California. (D.I. 10) OCPC responded with a motion to strike and/ or dismiss fifteen of Kaizen's affirmative defenses. (D.I. 10)

> n2 CPC filed the original complaint incorrectly against Kaizen, Inc., a Delaware corporation unrelated to this action. (D.I. 1, 15)

[*3]

2. **Background.** OCPC is an English corporation with its principal place of business in Leeds, United Kingdom. (D.I. 7, P2) OCPC is the assignee of the two patents-in-suit, the '159 patent, issued to inventors Eric Hultman and Roger C. Harris, and the '544 patent, issued to inventors Alan N. Howard and Roger C. Harris. (Id. at PP5-6) While Hultman resides in Sweden, Howard and Harris reside in the United Kingdom. (D.I. 19, Ex. 1) The attorneys who prosecuted the patents are located in Washington, D.C. and Chicago, Illinois. OCPC has filed four other actions to enforce the patents-in-suit against different defendants, all of which are pending before this court.

3. Kaizen is a California corporation with only one office located in Los Angeles, California. (D.I. 15, Ex. A) Kaizen is a corporation involved in the advertising, distribution and sales of health food products. (Id. at P2) In 1998, Kaizen entered a licensing agreement to market, distribute and sell creatine-containing products from a German company under the trade-name Creapure <TM>.

2003 U.S. Dist. LEXIS 988, *

(Id. at P4) Kaizen claims that all its documents, and employees are located in California. With the exception of two potential [*4] witnesses, n3 Kaizen indicates the remaining reside in California.

> n3 There are two witnesses located in Georgia and Canada. ( D.I. 15 P 9)

**4. Standard of Review.** Under *28 U.S.C. § 1404*(a), a district court may transfer any civil action to any other district where the action might have been brought for the convenience of parties and witnesses and in the interest of justice. Congress intended through § 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. *Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 101 L. Ed. 2d 22, 108 S. Ct. 2239 (1988); Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp.2d 192, 208 (D. Del. 1998).*

The burden of establishing the need to transfer rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." *Bergman v. Brainin, 512 F. Supp. 972, 973 (D. Del. 1981)* [*5] (citing *Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970).* "Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail". *ADE Corp. v. KLA-Tencor Corp., 138 F. Supp.2d 565, 567 (D. Del. 2001); Shutte, 431 F.2d at 25.*

The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. *C.R. Bard, Inc. v. Guidant Corp., 997 F. Supp. 556, 562 (D. Del 1998);* Siemens Medical Systems, Inc. v. Fonar Corporation, C.A. No. 95-261-*SLR, 1995 U.S. Dist. LEXIS 22334,* slip. op. at 8 (D. Del. Nov. 1, 1995); *Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc., 2001 U.S. Dist. LEXIS 20803, 2001 WL 1617186* (D. Del. Nov. 28, 2001). Although transfer of an action is usually considered as less convenient to a plaintiff if the plaintiff has not chosen its "home turf' or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer. [*6] " *In re M.L.-Lee Acquisition Fund II, L.P., 816 F. Supp. 973, 976 (D. Del. 1993).*

The Third Circuit Court of Appeals has indicated the analysis for transfer is very broad. *Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).* Although emphasizing that "there is no definitive formula or list of factors to consider," id., the Court has identified potential factors it characterized as either private or public interests. The private interests include: "(1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." Id. (citations omitted).

The public interests include: "(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; [*7] (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." Id. (citations omitted).

**5. Discussion.** Kaizen argues the public and private interests weigh in favor of a transfer to the Central District of California. Specifically, Kaizen argues that OCPC has no parties, witnesses or evidence related to this action in Delaware. Kaizen avers that OCPC instituted this action in Delaware for the sole reason of accommodating the convenience of its lawyers, who practice in this state. Kaizen contends that the action actually emanates from Los Angeles, California, the location of its sales center. California is also the location of all events and evidence related to the litigation. (D.I. 15, Ex. A)

6. OCPC contends its choice of forum should be afforded deference. (D.I. 19) The Delaware forum was selected because Kaizen has committed patent infringement in this state, argues OCPC. Moreover, the evidence and witnesses necessary to defend against Kaizen's affirmative [*8] defenses are located in Sweden, the United Kingdom, Washington, D.C. and Illinois. Although all of these witnesses will have to travel for trial purposes, OCPC asserts that Delaware is a closer forum than California. Further, because there are three other cases involving the same patents pending before this court, judicial economy will be promoted by maintaining this action. (D.I. 19, Ex. 1) The risk of inconsistent results will be reduced by allowing one judge to become proficient in the patent technology and the relevant facts.

OCPC also raises another issue related to Kaizen's business, or lack thereof, in Delaware. On Kaizen's internet website, the company describes itself as maintaining offices "world-wide," in addition to the California office. (D.I. 19, Ex. 2) The Kaizen website does not accept orders for its products. However, the website does provide a link to an internet nutrition store which sells Kaizen

products. According to the declaration of an OCPC attorney, she was able to place post-complaint orders for Kaizen products, including those alleged to infringe the patents-in-suit, from the linked nutrition store. (D.I. 19, Ex. 3) The orders were made from a Delaware computer [*9] and she received the products in Delaware. The attorney states that she was able to buy a nationally distributed magazine at a Delaware bookstore that contained advertisements for Kaizen products. She was also able to purchase, in person, noninfringing Kaizen products from a Delaware store. She states that the owner of the store told her that he has received solicitations to sell the entire line of Kaizen products. OCPC plans to call the Delaware store owner as a third party witness.

In response, Kaizen urges the court to strike the declaration as it contains impermissible double hearsay. (D.I. 20) However, even if it were considered, Kaizen contends it does not establish that Kaizen conducts business in Delaware or sells the accused products here. Moreover, the fact that Kaizen's website describes its operations as "world-wide" still does not establish any business relationship with anyone in Delaware. Kaizen also argues that any problems with having third party witness testifying in California, can be solved by taking the depositions elsewhere.

Since the parties do not dispute that this action could have been initiated in the Central District of California, an examination of the [*10] private issues implicated by a transfer is warranted. The court finds the balance of private factors weighs in favor of transfer. The record reflects that neither litigant has ties to Delaware. Geographically, Delaware is inconvenient to everyone. All witnesses, documents and employees are located outside of this forum. Although Kaizen may describe itself as a world-wide operation, there has been nothing presented to corroborate this apparent embellishment.

With regard to compulsory process problems, OCPC indicates that a Delaware store owner will be called as a trial witness. However, it has not established that this individual will be unwilling to testify outside of Delaware. Absent a demonstrable obstacle to obtaining personal jurisdiction over a third-party witness, the court declines to consider this as a problem.

Turning to the public interests, the court finds the practical considerations related to trial weigh in favor a transfer. As noted, the expense of trial in Delaware will weigh more heavily on Kaizen. Regardless of the forum, OCPC will incur travel expenses. A transfer to California would eliminate rather than merely shifting the travel expense of one party. See [*11] *Van Dusen v. Barrack, 376 U.S. 612, 646, 11 L. Ed. 2d 945, 84 S. Ct. 805 (1964).*

The court is likewise confident that the Central District of California is well-equipped to decide the issues implicated by this case, regardless of the pendency of OCPC's other infringement actions. Further, considering Kaizen is a California corporation conducting business therein, that forum has a more particular interest in the litigation than Delaware. Accordingly, for the reasons stated, this action is transferred to the Central District of California.

Sue L. Robinson

United States District Judge

LEXSEE 2005 US DIST LEXIS 5174

**SUMITO MITSUBISHI SILICON CORP., aka SUMCO, and SUMCO USA CORP., Plaintiffs, v. MEMC ELECTRONIC MATERIALS, INC., Defendant.**

Civ. No. 04-852-SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

*2005 U.S. Dist. LEXIS 5174*

**March 30, 2005, Decided**

**COUNSEL:** [*1] Richard D. Kirk, Esquire of Morris, James, Hitchens & Williams LLP, Wilmington, Delaware, for Plaintiffs.; Of Counsel: R. Terrence Rader, Esquire, David T. Nikaido, Esquire and Ellen A. Efros, Esquire of Rader, Rishman & Grauer PLLC, Bloomfield Hills, MI.

Patricia S. Rogowski, Esquire of Connolly Bove Lodge & Hutz LLP, Wilmington, Delaware, for Defendant.; Of Counsel: Robert M. Evans, Jr., Esquire and Marc Vander Tuig, Esquire of Senniger Powers, St. Louis, Missouri.

**JUDGES:** ROBINSON, Chief Judge.

**OPINIONBY:** SUE L. ROBINSON

**OPINION:**

**MEMORANDUM OPINION**

Dated: March 30, 2005
Wilmington, Delaware

**ROBINSON, Chief Judge**

**I. INTRODUCTION**

On July 13, 2004, plaintiffs Sumitomo Mitsubishi Silicon Corporation and SUMCO USA Corporation (collectively "plaintiffs") filed the present action against defendant MEMC Electronic Materials, Incorporated. (D.I. 1) In response, defendant filed a motion to dismiss, transfer, or stay plaintiffs' complaint. (D.I. 10) Plaintiffs subsequently filed a first amended complaint. n1 (D.I. 14) Presently before the court is defendant's motion to dismiss, transfer, or stay plaintiffs' amended complaint. n2 (D.I. 19) For the reasons that follow, [*2] the court denies defendant's motion to dismiss or stay plaintiffs' amended complaint, but grants defendant's motion to transfer the case to the United States District Court for the Northern District of California.

n1 The amended complaint alleges defendant monopolized the low defect silicon wafer market in the United States by enforcing or threatening to enforce the "fraudulently-procured" *U.S. Patent No. 5,919,302* ("the '302 patent") and *United States Patent No. 6,287,380* ("the '380 patent"). Plaintiffs also request declaratory judgment that: (1) none of their products infringe the '302 patent or the '380 patent; (2) the '302 patent and the '380 patent are invalid for failure to comply with *35 U.S.C. § § 101, 102, 103, and 112*; (3) the '302 patent and the '380 patent are unenforceable under the doctrine of inequitable conduct; and (4) the '302 patent and the '380 patent are void and unenforceable because of defendant's patent misuse. (D.I. 14 at 22-26)

n2 Since plaintiff filed an amended complaint, its original complaint and all motions related to that original complaint (i.e., D.I. 10) are moot. The court will only issue a ruling on defendant's motion to dismiss, transfer, or stay plaintiffs' amended complaint. The court will consider arguments in motions related to the originally filed complaint only as they pertain to defendant's motion to dismiss, transfer, or stay the amended complaint.

[*3]

**II. BACKGROUND**

Plaintiff Sumitomo Mitsubishi Silicon Corporation is a Japanese corporation with its principal place of business in Tokyo, Japan. (D.I. 14 at 4) Plaintiff SUMCO USA Corporation is a Delaware corporation with its principal place of business in Fremont, California. (Id.) Defendant MEMC Electronic Materials, Inc. is a Delaware corpora-

tion with its principal place of business in St. Peters, Missouri. (Id.) The parties are leading worldwide producers of electronic grade silicon wafers for the semiconductor industries. (Id.)

On December 14, 2001, defendant sued the predecessors in interest of plaintiffs n3 in the Northern District of California ("the Northern District Litigation"). (D.I. 11, ex. 2 at 5; D.I. 14 at 13; D.I. 20 at 3). On July 15, 2002, defendant filed an amended complaint which alleged that plaintiffs directly infringed and induced infringement of the '302 patent. n4 (D.I. 11, ex. 1)

n3 The predecessors in interest to plaintiffs are Mitsubishi Materials Silicon Corporation, Mitsubishi Silicon America Corporation, Sumitomo Mitsubishi Silicon Corporation, SUMCO USA Corporation and SUMCO USA Sales Corporation. (D.I. 11, ex. 6) After a corporate merger in early 2002, the present plaintiffs were formed and defendant amended its complaint accordingly.

[*4]

n4 In the Northern District Litigation, defendant attempted to expand the scope of the litigation to include another patent, the '380 patent, in an effort to preclude plaintiffs from arguing they had a noninfringing alternative to the '302 patent. (D.I. 21, ex. 13 at 9-10) Defendant's attempt to introduce the '380 patent was denied by the court in the Northern District Litigation. (D.I. 24 at ex. C at 4)

In the Northern District Litigation, plaintiffs asserted in their amended answer that the '302 patent: (1) was not infringed; (2) was invalid; and (3) was unenforceable because of alleged inequitable conduct by defendant for failure to disclose material prior art to the United States Patent Office. (D.I. 11, ex. 3 at 3-4)

At the conclusion of discovery in the Northern District Litigation, plaintiffs and defendant filed motions for summary judgment: (1) of zero damages (D.I. 11, ex. 2 at 22); (2) of invalidity of the '302 patent (id. at 38); (3) of noninfringement of the '302 patent (id. at 45); (4) that the '302 patent correctly listed all inventors (id. at 46); (5) that the asserted [*5] claims read on the accused wafers (id. at 47); and (6) that the '302 patent met the enablement requirements of 35 U.S.C. § 112 (id.). The court granted plaintiffs' motion for summary judgment of zero damages and then struck all remaining motions for summary judgment. (Id. at 46, 51) On April 22, 2004, the court entered a final judgment of noninfringment. (Id. at 61)

Defendant appealed the decision to the United States Court of Appeals for the Federal Circuit. (D.I. 21, ex. 7)

After the court entered summary judgment, plaintiffs filed a motion for attorneys' fees, claiming that defendant had commenced the Northern District Litigation without conducting an adequate pre-filing investigation and prosecuted the lawsuit without ever asserting an adequate infringement contention. (D.I. 11, ex. 4 at 2, 14, 19, 20) This motion was denied. (Id., ex. 6 at 7-11)

### III. STANDARD OF REVIEW

Under 28 U.S.C. § 1404(a), n5 a district court may transfer any civil action to any other district where the action might have been brought for the convenience of parties and witnesses and in the interests of justice. Congress intended [*6] through § 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 101 L. Ed. 2d 22, 108 S. Ct. 2239 (1988); Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp.2d 192, 208 (D. Del. 1998).

n5 Title 28, Section § 1404(a) provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The burden of establishing the need to transfer rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." Bergman v. Brainin, 512 F. Supp. 972, 973 (D. Del. 1981) (citing Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970). "Unless the balance is strongly in favor of a transfer, the plaintiff's choice [*7] of forum should prevail". ADE Corp. v. KLA-Tencor Corp., 138 F. Supp.2d 565, 567 (D. Del. 2001); Shutte, 431 F.2d at 25.

The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. C.R. Bard, Inc. v. Guidant Corp., 997 F. Supp. 556, 562 (D. Del 1998); Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc., 2001 U.S. Dist. LEXIS 20803, 2001 WL 1617186 (D. Del. Nov. 28, 2001); Cont'l Cas. Co. v. Am. Home Assurance Co., 61 F. Supp.2d 128, 131 (D. Del. 1999). Although transfer of an

2005 U.S. Dist. LEXIS 5174, *

action is usually considered as less inconvenient to a plaintiff if the plaintiff has not chosen its "'home turf' or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer." *In re ML-Lee Acquisition Fund II, L.P.*, 816 F. Supp. 973, 976 (D. Del. 1993).

The Third Circuit Court of Appeals has indicated that the analysis for transfer [*8] is very broad. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). Although emphasizing that "there is no definitive formula or list of factors to consider," id., the Court has identified potential factors it characterizes as either private or public interests. The private interests include: "(1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." Id. (citations omitted).

The public interests include: "(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies [*9] of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." Id. (citations omitted).

## IV. DISCUSSION

The facts of this case balance strongly in favor of transfer to the Northern District of California. The Northern District Litigation was filed before the present action. The court in the Northern District Litigation has considered and ruled on many of the issues presented by plaintiffs' amended complaint. In particular, that court has already considered briefs regarding whether the *'302 patent* was fraudulently obtained, was invalid under the doctrine of inequitable conduct, or was invalid for patent misuse. n6 Furthermore, the court has already considered whether plaintiffs' Samsung wafer infringed the *'302 patent*. (D.I. 22, exs. 16, 17, 18, 19, 20, 21; D.I. 11, ex. 2 at 46, 61) Finally, the court was presented with several briefs addressing whether the *'302 patent* was invalid. (D.I. 22, exs. 19, 20, 21, 22) Thus, all of plaintiffs' contentions

relating the *'302 patent* have already been presented to the court in the Northern District Litigation.

n6 As plaintiffs stated in its originally filed complaint, "[a] complete discussion of [defendant's] inequitable conduct is set forth in [plaintiffs'] expert reports, which were filed in the [Northern District Litigation]." (D.I. 1 at 10)

[*10]

The *'380 patent* is very similar to the *'302 patent*. Both the *'302 patent* and the *'380 patent* issued from U.S. Patent Application Ser. No. 60/041, 845. (D.I. 14, exs. A, B) The *'302 patent* and the *'380 patent* have similar written descriptions and share many of the same figures. (Id.) Consequently, the court's experience with the *'302 patent* in the Northern District Litigation may well be helpful in resolving many of plaintiffs' arguments regarding the *'380 patent*.

The court in the Northern District Litigation has three years of experience with this litigation and has already issued several orders regarding infringement of the *'302 patent*. Its grasp of the facts and issues in connection with the *'302 patent*, together with the similarity between the *'302 patent* and the *'380 patent*, make that court a more appropriate venue for the present matter. In the interests of judicial economy and of avoiding inconsistent rulings, this court transfers the present matter to the Northern District of California.

## V. CONCLUSION

For the reasons stated above, the court denies defendant's motion to dismiss or stay this matter, but grants defendant's motion to transfer the case. An appropriate [*11] order shall issue.

### ORDER

At Wilmington this 30th day of March, 2005, consistent with the memorandum opinion issued this same date;

IT IS ORDERED that:

1. Defendant's motion to dismiss or to stay (D.I. 19) plaintiffs' complaint is denied.

2. Defendant's motion to transfer the present action to the Northern District of California (D.I. 19) is granted.

United States District Judge

SUE L. ROBINSON