## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PFIZER INC<br><br>              Plaintiff,<br><br>       v.<br><br>TEVA PHARMACEUTICALS USA and<br>TEVA PHARMACEUTICAL<br>INDUSTRIES LTD.<br><br>              Defendants. | )<br>)<br>)<br>)<br>)    Civil Action No. 06-89-GMS<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF PFIZER INC'S ANSWER BRIEF
## IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE TO
## THE SOUTHERN DISTRICT OF NEW YORK

CONNOLLY BOVE LODGE & HUTZ LLP


/s/ Rudolf E. Hutz
Rudolf E. Hutz (#484)
Daniel C. Mulveny (#3984)
1007 N. Orange Street
P. O. Box 2207
Wilmington, DE 19899-2207
(302) 658-9141

*Attorneys for Pfizer Inc*


Dated: March 9, 2006

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iii

I.      INTRODUCTION ......................................................................................... 1

II.     NATURE AND STAGE OF THE PROCEEDING............................................ 1

III.    SUMMARY OF ARGUMENT ....................................................................... 3

IV.     FACTUAL BACKGROUND .......................................................................... 4

        A.      The Delaware Action is the First-Filed Action Relating to the
                Infringement and Validity of the '243 Patent ............................................ 4

        B.      The Delaware Action Involves a Patent That is Unrelated to the Patents at
                Issue in the prior New York Action........................................................... 4

        C.      The Prior New York Action is Closed as to the Merits of the Infringement
                and Validity of the Patents In Suit ............................................................ 5

        D.      The New York Action Involved a Different Accused Product.................... 6

        E.      The Prior New York Action Never Formally Addressed the Merits of the
                Infringement and Validity of Either Patent In Suit..................................... 6

        F.      The District of Delaware is Common Ground for all the Parties and is
                Convenient to All the Parties .................................................................... 7

        G.      Delaware is Equally, if not More, Convenient to All the Parties and Their
                Witnesses ................................................................................................. 8

        H.      There is no District Connected To Teva's Israeli Research and
                Development Efforts.................................................................................. 9

V.      ARGUMENT.................................................................................................. 9

        A.      Section 1404(a) Does Not Warrant Transfer ........................................... 10

        B.      The Relevant Factors Do Not Support Transfer To New York................ 11

                1.      *Pfizer's Original Choice of Delaware Should Not Be Lightly
                        Disregarded* .................................................................................. 11
                        (a)     Pfizer's had reasonable ground to bring this case in
                                Delaware ............................................................................ 12
                        (b)     Pfizer's choice of forum outside its "home turf" remains
                                undiminished because it had reasonable ground to bring
                                this case in Delaware .......................................................... 13

2. *Teva Has No Reasonable Basis to Transfer the Case to New York* .......................................................................................... 14

    (a) The prior New York Action is not the "first-filed" case relating to the '243 patent ................................................. 14

    (b) Teva has not shown that the New York Action court has actually considered the merits of that case ........................ 15

    (c) Teva's mirror-image New York DJ Action was second filed and therefore should not be given preference over the Delaware Action ............................................................. 16

    (d) If the New York Action court were in fact "fully briefed" on the underlying technical issues applicable to the Delaware Action, then Teva should have moved in New York to enjoin Pfizer from proceeding here ..................... 16

3. *Delaware is as convenient, if not more, as New York for all the witnesses* .................................................................................... 17

    (a) Teva's Israeli witnesses will not be inconvenienced ........ 18

    (b) Other fact witnesses will not be inconvenienced .............. 19

4. *The location of the evidence favors neither Delaware nor New York* ..................................................................................... 20

5. *Teva's failure to file its compulsory counterclaims in Delaware means the Delaware Action has priority* ...................................... 20

6. *There is no conservation of judicial resources by transferring this case to New York* ..................................................................... 21

C. The Balance of Interests Weight Heavily in Favor of Keeping This Case in Delaware ........................................................................... 22

VI. CONCLUSION ................................................................................ 24

# TABLE OF AUTHORITIES

**Cases**

*Affymetrix, Inc. v. Synteni, Inc.,*
    28 F. Supp.2d 192, 203 (D. Del. 1998) .................................................................... 17

*Allergan, Inc. v. Alcon Labs., Inc.,* No. C.A. 02-1682-GMS,
    2003 WL 473380 *1 (D. Del. Feb. 25, 2003) ........................................................ 22

*Bayer AG v. Elan Pharmaceutical Research Corp.,*
    212 F.3d 1241, 1248 (Fed. Cir. 2000) ...................................................................... 6

*Bayer AG. v. Biovail Corp.,*
    279 F.3d 1340, 1344 (Fed. Cir. 2002) ...................................................................... 6

*Bayer Bioscience N.V. v. Monsanto Co.,* No. C.A. 03-023 GMS,
    2003 WL 1565864 at *1 (D. Del. Mar. 25, 2003) ................................................ 23

*Bell Telephone Laboratories, Inc. v. International BusinessBell Telephone Laboratories,*
    *Inc.,* 630 F. Supp. 373, 379 (D. Del. 1984.) ...................................................... 20, 21

*Bergman v. Brainin,*
    512 F. Supp. 972, 973 (D. Del. 1981) .................................................................... 10

*E.E.O.C. v. University of Pennsylvania,*
    850 F.2d 969, 971 (3d Cir. 1988) ...................................................................... 16, 17

*Great Lakes Rubber Corp. v. Herbert Cooper Co.,*
    286 F.2d 631, 634 (3d Cir. 1961) ........................................................................... 21

*In re ML-Lee Acquisition Fund II, L.P.,*
    816 F. Supp. 973, 976 (D. Del. 1993) .................................................................... 13

*Joint Stock Society v. Heublein, Inc.,*
    936 F. Supp. 177, 187 (D. Del. 1996) .................................................................... 13

*Jumara v. State Farm Ins. Co.,*
    55 F.3d 873, 880 (3d Cir. 1995) ............................................................................. 11

*Praxair, Inc. v. ATMI, Inc.,* No. Civ. 03-1158-SLR,
    2004 WL 883395 at *2, n.1 (D. Del April 20, 2004) ........................................ 8, 17

*Ricoh Co. v. Honeywell Inc.,*
    817 F. Supp. 473, 484 (D. N.J. 1993) .................................................................... 18

*Shutte v. Armco Steel Corporation,*
    431 F.2d 22, 25 (3d Cir. 1970) ........................................................................ 10, 11

*Textron Innovations, Inc. v. The Toro Co.*, No. Civ.A. 05-486 GMS,
    2005 WL 2620196 at *1 (D. Del. Oct. 14, 2005) ............................................. 10, 13

*Truth Hardware Corp. v. Ashland Products, Inc.*, No. C.A. 02-1541 GMS,
    2003 WL 118005 at *1 (D. Del. Jan. 13, 2003).................................................... 15

*Waste Distillation Technology, Inc. v. Pan American Resources, Inc.*,
    775 F. Supp. 759, 762 (D. Del. 1991).................................................................. 10

## **Statutes**

28 U.S.C. § 1404(a) ............................................................................................ 1, 10

## **Other Authorities**

15 Wright, Miller & Cooper § 3854 .......................................................................... 11

3 Moore's Federal Practice § 13.14[2] at 13.87 (2d ed. 1984) ......................................... 21

## I.    INTRODUCTION

Plaintiff Pfizer Inc ("Pfizer") respectfully submits this brief in opposition to defendants', Teva Pharmaceuticals USA and Teva Pharmaceutical Industries Ltd. (respectively "Teva USA" and "Teva Ltd."; collectively "Teva"), motion to transfer this case to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a) (D.I. 8). For all the reasons stated below, Teva has not shown sufficient cause to overcome Pfizer's choice to initiate its claim in the District of Delaware. Therefore, Teva's motion to transfer should be denied.

## II.    NATURE AND STAGE OF THE PROCEEDING

Pfizer filed its complaint against Teva on February 8, 2006 (the "Delaware Action") (D.I. 1). In the Delaware Action, Pfizer alleged, *inter alia*, that Teva's importation and sale of generic azithromycin products in the United States infringe Pfizer's U.S. Patent No. 6,977,243 ("the '243 patent") (D.I. 1, ¶¶ 18-44). The '243 claims are directed to azithromycin sesquihydrate.[1] (D.I. 1, ¶ 16).

Also on February 8, 2006, Pfizer commenced another action in the District of Delaware against Sandoz Inc. ("Sandoz") and its parent, Novartis AG ("Novartis"), alleging that those defendants also infringed claims of the '243 patent. *Pfizer Inc v. Sandoz Inc. et al.*, No. 1:06-cv-00090-JJF (Mulveny Decl. at ¶ 2, Ex. A). On February 16, 2006, after the *Teva* and *Sandoz* cases had been assigned to different judges, Pfizer alerted the Court about the pendency of the *Teva* and *Sandoz* cases and their separate judge assignments (D.I. 5; Mulveny Decl. at ¶ 3, Ex. B).

---

[1] Azithromycin is a highly effective antibiotic in the treatment of a broad range of bacterial infections. The '243 patent is directed to a novel crystalline form of azithromycin.

On February 14, 2006, six days after Pfizer commenced the Delaware Action, Teva filed a declaratory judgment complaint seeking a declaration of non-infringement and invalidity of the '243 patent in the United States District Court for the Southern District of New York (the "Teva DJ Action") (Hardman Decl. [D.I. 13] at ¶ 9, Ex. G). The Teva DJ Action is based on essentially the same set of facts as raised by Pfizer in its first-filed Delaware Action and it raises the same defenses to infringement and validity as asserted by Teva in the Delaware Action (Id.).

Teva USA answered Pfizer's Delaware Action complaint on March 1, 2006. Teva USA denied infringement and raised the affirmative defenses of noninfringement, invalidity, and failure to state a claim for which relief can be granted (D.I. 16). Curiously, Teva USA chose not to present its compulsory counterclaims for declaratory judgment that it had raised in the Teva DJ Action (Id.).

Pfizer answered the Teva DJ Action complaint on March 7, 2006 and additionally filed counterclaims against Teva for patent infringement mirroring the claims Pfizer made in its first-filed Delaware Action (Mulveny Decl. at ¶ 4, Ex. C). Teva's answer to these counterclaims is due March 27, 2006.

Pursuant to agreement, Teva Ltd. has waived formal service of Pfizer's complaint, and its answer to Pfizer's Delaware Action complaint is due on March 15, 2006. Pfizer expects that Teva Ltd.'s answer will correspond to Teva USA's answer. During discussions between Pfizer and Teva leading to the waiver of service and agreement on the date for answering, Pfizer asked whether Teva would agree to dismiss the Teva DJ Action if its motion to transfer were denied by this Court. Teva refused. Thus, Pfizer was

required to file a contingent motion to enjoin Teva from proceeding with the Teva DJ Action.

Presently before this Court is Teva's motion to transfer venue to the Southern District of New York (D.I. 8). In support of its motion, Teva filed an opening brief ("OpenBr") (D.I. 9). Because Teva failed to provide any reasonable basis to overcome Pfizer's choice to initiate its claims based on the '243 patent in Delaware, Teva's motion to transfer to the Southern District of New York should be denied.

## III.   SUMMARY OF ARGUMENT

1.    In considering a motion to transfer, the paramount consideration for the Court is Pfizer's choice to bring this action in the District of Delaware. Teva has the heavy burden to show why transfer to the Southern District of New York is warranted. Teva has failed to meet this burden.

2.    The interests of justice are not promoted by transferring this case to New York. The prior litigation between Teva and Pfizer in the Southern District of New York (the "New York Action") involved different patents and different questions of infringement. Further, the prior New York Action is effectively closed as to the merits of the infringement and validity issues. Teva's argument that the court in the Southern District of New York is fully aware of the "related" technical issues is simply without merit.

3.    Teva presents no compelling evidence showing that New York is more convenient to the parties and witnesses than Delaware. All of the domestic parties are centrally located around Delaware. Pfizer, Teva USA, and Teva Ltd. have all appeared in the District of Delaware many times before. Transportation into and out of Wilmington is

3

at least as convenient as in New York. The expected relevant documents at this time are located in either Connecticut or Israel, so there is no advantage of being in New York. And Teva has not shown that any important witness would not be available for trial in Delaware but otherwise would be available in New York.

4.    On balance, Teva's weak evidence of judicial economy and inconvenience falls far short of outweighing Pfizer's reasonable choice to litigate this first-filed case in Delaware.

## IV.    FACTUAL BACKGROUND

### A.    The Delaware Action is the First-Filed Action Relating to the Infringement and Validity of the '243 Patent

As stated above, Pfizer filed the Delaware Action on February 8, 2006 charging infringement of the '243 patent. Six days later, Teva filed the mirror-image Teva DJ Action in the Southern District of New York. Thus, the Delaware Action is undeniably the first-filed case relating to the infringement and validity of the '243 patent.

### B.    The Delaware Action Involves a Patent That is Unrelated to the Patents at Issue in the prior New York Action

In contrast to the Delaware Action, the prior New York Action -- which was instituted by Teva seeking declaratory judgment relief and not by Pfizer -- involved different patents (Woodard Decl. at ¶ 2). After its efforts to dismiss Teva's complaints failed, Pfizer filed compulsory counterclaims in the New York Action asserting that the two involved patents, U.S. Patent Nos. 5,605,889 ("the '889 patent"; Mulveny Decl. at ¶ 5, Ex. D) and 6,268,489 ("the '489 patent"; Mulveny Decl. at ¶ 5, Ex. E), were infringed by Teva's ANDA product (Hardman Decl. [D.I. 13] at ¶ 3, Ex. C at pp. 5, Ex. D at pp. 5-6; Woodard Decl. at ¶¶ 2-4). The '489 patent claimed azithromycin dihydrate, a

4

compound that is patentably distinct from azithromycin sesquihydrate that is claimed by the '243 patent at issue in the instant case (*compare* the '489 patent claims [Mulveny Decl. Ex. E] and the '243 patent claims [D.I. 1, Ex. B]). The '889 claims certain oral dosage forms of azithromycin, again patentably distinct from the '243 claims to azithromycin sesquihydrate at issue here (*compare* the '889 patent claims [Mulveny Decl. Ex. D] and the '243 patent claims [D.I. 1, Ex. B]).

The '489, '889, and '243 patents do not arise from a common patent application. Further, the '489, '889, and '243 patents do not share common inventors. In sum, there is no commonality between the '489, '889, and '243 patents other than the basic facts that all of the patents are generally directed to azithromycin and all of the patents are owned by Pfizer. Beyond that, the patents are legally and factually distinct, issuing at different times, based on different applications, claiming different inventions which implicate different prior art and different issues.

### C.    The Prior New York Action is Closed as to the Merits of the Infringement and Validity of the Patents In Suit

While the prior New York Action is technically still pending, the case is in fact closed as to the merits of the infringement and validity issues (Woodard Decl. at ¶ 7). Because Pfizer granted Teva covenants not to sue, all of the parties' claims and counterclaims related to the merits of the infringement and validity of the patents in suit were dismissed/denied as moot (Woodard Decl. at ¶¶ 4, 6, 7; Hardman Decl. [D.I. 13] at ¶ 8, Ex. F). The only remaining issue in the New York Action is Teva's § 285 claim for attorney fees, a highly questionable claim given that Teva, not Pfizer, instituted the litigation and Pfizer repeatedly sought to dismiss it, ultimately providing covenants not to sue to dispose of the litigation (Hardman Decl. [D.I. 13] at ¶¶ 2, 3, 4, 7; Woodard Decl. at

5

¶ 7). Regardless, Teva's § 285 claim does not depend on the same issues that will be addressed in this case.

**D.      The New York Action Involved a Different Accused Product**

The prior New York Action was directed to the question of whether the product defined by Teva's ANDA would, if marketed, infringe the '489 and '889 patents (Woodard Decl. at ¶¶ 2-4). Teva's ANDA product is the hypothetical product that Teva would likely sell if the FDA approved the ANDA. *Bayer AG v. Elan Pharmaceutical Research Corp.*, 212 F.3d 1241, 1248 (Fed. Cir. 2000) ("The focus, under § 271(e)(2)(A), is on "what the ANDA applicant will likely market if its application is approved, an act that has not yet occurred.") (citation omitted). The probable nature of the ANDA product is defined by Teva's ANDA specifications that were submitted to the FDA. *Id.*

In contrast, in the Delaware Action, Pfizer contends that Teva's actual, commercially marketed, generic azithromycin products infringe the '243 patent and, rather than deal with a hypothetical product which might be sold under the ANDA, evidence will be presented in this case as to what are the actual infringing products. *See Bayer AG. v. Biovail Corp.*, 279 F.3d 1340, 1344 (Fed. Cir. 2002). Pfizer contends that the generic azithromycin products that Teva is selling do not correspond to Teva's ANDA specifications.

**E.      The Prior New York Action Never Formally Addressed the Merits of the Infringement and Validity of Either Patent In Suit**

In its Opening Brief, Teva alleges that there was extensive briefing from the parties relating to the infringement and validity of the '489 patent (OpenBr at 5). It is understandably silent regarding the '889 patent, which was dismissed from the action very early in those proceedings (Woodard Decl. at ¶ 4). Teva alleges that some of these

briefings generally related to crystalline azithromycin, Teva's generic azithromycin product, and analytical methods to evaluate crystalline forms (*Id.*). However, Teva does not assert that any of this information is directly related to the '243 patent or matters at issue before this Court.

More importantly, Teva does not allege that Judge Preska, who is assigned to the New York Action, actually considered any of these briefings or spent any time delving into the merits, legal or technical, regarding the infringement or validity of the patents in suit. In fact, Judge Preska simply denied as moot <u>all</u> of the related motions based on Pfizer's covenants and she never held or even scheduled any hearings regarding those motions (Woodard Decl. at ¶¶ 5, 6). Thus, it is likely that Judge Preska never familiarized herself with the briefed issues. And in any event, since these issues do not relate to the '243 patent, even if Judge Preska did review these briefs, there is very little that would be applicable to the issues in this case.

**F.     The District of Delaware is Common Ground for all the Parties and is Convenient to All the Parties**

Both Pfizer and Teva USA are Delaware corporations (D.I. 1, ¶¶ 1,6; D.I. 16 ¶¶ 1, 6). Both Pfizer and Teva USA have appeared in Delaware on multiple occasions in the past (Mulveny Decl. at ¶ 6, Exs. F and G). Teva Ltd., while being an Israeli corporation, has also appeared in Delaware many times before (*Id.*, Ex. G).

All of the domestic parties involved in these cases are centrally located around Delaware. Pfizer's headquarters are based in New York city, but the underlying research related to the '243 patent was conducted in Groton, Connecticut (D.I. 1, ¶ 1). Teva is based in North Wales, Pennsylvania (D.I. 1, ¶ 6; D.I. 16, ¶ 6). Delaware is common

ground to both parties. It logically follows, and Teva has not shown otherwise, that Delaware is easily, and equally, accessible to the parties.

### G.    Delaware is Equally, if not More, Convenient to All the Parties and Their Witnesses

The District of Delaware Courthouse, located in downtown Wilmington Delaware, is easily accessed by planes, trains, and automobiles. Interstate 95 passes right through the city. The train station, located mere blocks from the courthouse, provides ready access to the trains running in the Northeast Corridor. Philadelphia International Airport can be reached within an hour, usually less. *See Praxair, Inc. v. ATMI, Inc.*, No. Civ. 03-1158-SLR, 2004 WL 883395 at *2, n.1 (D. Del April 20, 2004) (finding that "travel time to the airport may be done in under a half hour from downtown Wilmington").

For travelers coming from Israel, there are a number of options to get to Delaware. Direct flights from Tel Aviv arrive at nearby Newark International Airport (Mulveny Decl. at ¶ 7, Ex. H). In fact, these direct flights to Newark International Airport are the *only* direct flights to the Mid-Atlantic area from Israel. Connections from Newark International Airport to Wilmington can easily be made by train or car (*Id.*, Ex. I at pp. 2, Ex. L). Alternatively, there are a variety of flight options into Philadelphia International Airport if one makes a transfer in Europe (*Id.*, Ex. I). These one-stop flights are no longer than those to either the LaGuardia or JFK airports in New York (*compare* Mulveny Decl. Exs. I, J, and K).

8

### H.    There is no District Connected To Teva's Israeli Research and Development Efforts

Teva alleges that none of its research and development activities occurred in Delaware (OpenBr at 7). But Teva does not say that these activities occurred in New York. Rather, Teva claims that the research and development of its generic azithromycin product occurred in Israel (*Id.*). Thus, there is no forum in the United States that is directly connected to Teva's research and development efforts. New York has no greater connection than Delaware to Teva's underlying research and development efforts, or the location of its relevant documents or knowledgeable people.

## V.    ARGUMENT

In its motion, Teva raises three basic grounds for transfer: (1) the interests of justice allegedly would be better served because the remnants of a prior litigation between Pfizer and Teva -- involving an entirely different patents, and completely different issues on infringement and validity -- remain pending in New York; (2) Delaware is not Pfizer's "home turf," despite being the State where Pfizer is incorporated and has previously appeared many times before; and (3) New York is more convenient to everyone, particularly Teva's Israeli witnesses, even though all domestic parties are centrally-located around Delaware and the only direct flights from Tel Aviv come to nearby Newark International Airport, with travel time and connections to Wilmington being no more difficult than travel to downtown Manhattan, particularly at rush hour.

As explained in detail below, these grounds do not outweigh Pfizer's choice to bring its action regarding the '243 patent in the District of Delaware. Thus Teva has not met its burden under § 1404(a) to warrant transfer to the Southern District of New York.

9

### A.    Section 1404(a) Does Not Warrant Transfer

Section 1404(a) provides: "For the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In considering a motion for transfer pursuant to § 1404(a), the Third Circuit holds that: "It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed." *Shutte v. Armco Steel Corporation*, 431 F.2d 22, 25 (3d Cir. 1970) (internal quotations omitted). This Court has held that "[i]t is the movant's burden to establish the need to transfer, and the plaintiff's choice of venue will not be lightly disturbed." *Textron Innovations, Inc. v. The Toro Co.*, No. Civ.A. 05-486 GMS, 2005 WL 2620196 at *1 (D. Del. Oct. 14, 2005) (citations and internal quotations omitted). "In other words," this Court held, "unless the balance of convenience strongly favors a transfer in favor of defendant, the plaintiff's choice of forum should prevail." *Textron Innovations*, 2005 WL 2620196 at *1 (citing *Shutte*, 431 F.2d at 25. *See also Waste Distillation Technology, Inc. v. Pan American Resources, Inc.*, 775 F. Supp. 759, 762 (D. Del. 1991) (holding that the movant "bears the burden of proving that justice requires a substitute forum and a transfer is not to be liberally granted"). Accordingly, Teva has the heavy burden of establishing that "the balance of convenience of the parties and witnesses strongly favors" transfer. *Bergman v. Brainin*, 512 F. Supp. 972, 973 (D. Del. 1981).

Additionally, this is not a matter of transferring venue from Delaware to another court on the other side of the country or to the defendants' hometown. Rather, Teva demands the case be transferred a couple hours up the road. Courts often deny such

requests outright on the basis that § 1404(a) was not intended for transfers to nearby districts. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir. 1995) (finding that some courts refuse to transfer cases under § 1404(a) where the target forum "is a relatively short distance from the original forum.") (citing 15 Wright, Miller & Cooper § 3854 at 470).

### B.    The Relevant Factors Do Not Support Transfer To New York

In reviewing a motion to transfer, courts have not limited their consideration to the three enumerated factors in § 1404(a). Rather, courts will consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara*, 55 F.3d at 879 (citations and internal quotations omitted). In *Jumara*, the Third Circuit identified a number of public and private factors to assist district courts in determining "whether, on balance, the litigation would more conveniently proceed and the interests of justice [would] be better served by a transfer to a different forum." *Id.*

In this case, the following factors are relevant to Teva's motion: (1) Pfizer's original choice of Delaware; (2) Teva's desire to transfer the case to New York; (3) the convenience of the witnesses, but only to the extent that they may be unavailable for trial; (4) location of the evidence; (5) Teva's failure to make its compulsory counterclaims in its answer to the Delaware Action; and (6) the conservation of judicial resources.

### 1.    *Pfizer's Original Choice of Delaware Should Not Be Lightly Disregarded*

As the Third Circuit found in *Schutte*, Pfizer's original choice to bring this action in Delaware is the paramount consideration for the Court. All the remaining

11

considerations must weigh against the strong presumption that the case is properly quartered in the District of Delaware.

> **(a)    Pfizer's had reasonable ground to bring this case in Delaware**

Pfizer had several reasonable and practical reasons to bring this case to the District of Delaware. Pfizer is incorporated in Delaware. It has existing working relationships with Delaware attorneys, including the undersigned counsel. Pfizer has previously litigated patent cases in the District of Delaware and has found the Court to be both a competent and convenient forum. Since 1983, Pfizer has been a party to 79 District of Delaware litigations (Mulveny Decl. at ¶ 6, Ex. F).

Pfizer's selection of Delaware is entirely reasonable because Delaware is centrally located among everyone's headquarters: Pfizer's headquarters is in New York, New York and Teva is based in North Wales, Pennsylvania. Thus, Delaware is easily, and equally, accessible to all the parties.

Further, Teva USA is also a Delaware corporation. Teva USA's parent, Teva Ltd., is an Israeli corporation that has contacts with Delaware at least because it is the parent of Teva USA. Importantly, both Teva USA and Teva Ltd. have previously appeared, either together or singularly, in the District of Delaware on 28 prior occasions (Mulveny Decl. at ¶ 6, Ex. G). Fourteen of these cases remain pending in this District. *See e.g., Abbott Laboratories v. Teva Pharmaceuticals USA, Inc. et al.*, No. Civ.A. 02-1512-KAJ (active); *Smith Kline & French Laboratories Limited et al v. Teva Pharmaceuticals USA Inc.*, No. 1:05-cv-00197-GMS (active); and *Takeda Pharmaceutical Company LTD. et al v. Teva Pharmaceuticals USA Inc.*, No. 1:06-cv-00033-SLR (active). In sum, it is crystal clear

that Teva, like Pfizer, is no stranger to the District of Delaware and has no difficulty litigating cases here.

> **(b)  Pfizer's choice of forum outside its "home turf" remains undiminished because it had reasonable ground to bring this case in Delaware**

Teva attempts to dismiss Pfizer's original choice of Delaware on the basis that Pfizer's corporate headquarters is located in New York, and thus Pfizer's "home turf" is in New York (OpenBr at 10-11). While Pfizer's headquarters is indeed located in New York and the underlying research was conducted in Connecticut, this in itself does not substantially diminish the strong presumption that this case must stay in Delaware. *See In re ML-Lee Acquisition Fund II, L.P.*, 816 F. Supp. 973, 976 (D. Del. 1993) (stating that "[w]hile transfer of a case will generally be regarded as less inconvenient to a plaintiff if the plaintiff has not chosen its home turf or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer.") (citation omitted). Additionally, because Pfizer has many rational reasons for bringing this case in Delaware, the mere fact that Pfizer has its headquarters in New York does not merit transfer. *Textron Innovations*, 2005 WL 2620196 at *1 ("[I]t is not appropriate to disregard a plaintiff's choice of forum where it has a rational and legitimate reason for choosing the forum.") (citing *Joint Stock Society v. Heublein, Inc.*, 936 F. Supp. 177, 187 (D. Del. 1996)).

Further, in its complaint, Pfizer specifically alleged that Teva's infringing activities occurred or are occurring in Delaware (D.I. 1, ¶¶ 22, 36, 37, 41, 42). Teva has

admitted that it is indeed marketing the accused products in the United States, and thus by inclusion, Teva is marketing the accused products in the State of Delaware (D.I. 16, ¶¶ 22, 36, 37, 41, 42).

In sum, the strong presumption that the case must stay in Delaware -- Pfizer's original choice of forum -- is bolstered by Pfizer's and Teva's extensive contacts with this forum. This presumption is not substantially diminished by the fact that Pfizer's headquarters is in New York. Thus, the heavy burden remains on Teva to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer.

### 2.     *Teva Has No Reasonable Basis to Transfer the Case to New York*

For all of its arguments that Pfizer had no reasonable basis to have brought this suit in Delaware, Teva never provides any credible reason why it requires the case to transferred to New York.

### (a)     The prior New York Action is not the "first-filed" case relating to the '243 patent

Teva's assertion that the prior New York Action was "first-filed" is disingenuous. While the prior New York Action involved Teva's ANDA product, it did not involve the '243 patent and it did not involve Teva's actual commercial products (Woodard Decl. at ¶¶ 2-4). And the jurisdictional basis for this case is patent infringement of the '243 patent, not unrelated patents that Teva placed in issue by suing Pfizer in New York seeking declaratory judgment relief. Further, Teva never argues, because it cannot, that the so-called "first filed" New York Action involved the adjudication of the infringement and validity of the '243 patent, or for that matter, actual adjudication on the merits of the infringement and validity of any patent.

**(b)   Teva has not shown that the New York Action court has actually considered the merits of that case**

Similarly, Teva's argument that the parties have presented the New York Action court with extensive briefing on "the same complex technological issues that will be relevant to the present action" is meritless for two reasons. First, Teva has presented no evidence in connection with its transfer motion that Judge Preska actually considered any of the "extensive briefing." Because the New York Action court denied as moot all pending motions in view of Pfizer's covenants not to sue, it is more likely than not that these briefs and associated materials were not considered in any meaningful way, if at all.[2]. Second, the New York Action court did not hold any evidentiary hearings or other courtroom proceedings regarding the substantive merits of the infringement and validity of the '489 patent (Woodard Decl. at ¶ 5). Thus, there is no judicial economy in transferring a case to a court that most likely never addressed the actual merits of any of the underlying issues, particularly, when this case involves a different patent.

As a practical matter for Teva, its primary counsel in the Delaware Action is exactly the same as that in the prior New York Action. Therefore, Teva should have no difficulty in using the relevant portions, if any, of the briefs it filed in the New York Action. Further, this Court has previously found that it is "amply qualified to ... familiarize itself" with technological issues. *Truth Hardware Corp. v. Ashland Products, Inc.*, No. C.A. 02-1541 GMS, 2003 WL 118005 at *1 (D. Del. Jan. 13, 2003) (refusing to transfer venue to another court that had previous experience with the technological

---

[2] Significantly, Teva moves in this Court to Transfer to New York rather than moving in New York to enjoin Pfizer from proceeding in Delaware. This strategy avoids providing Judge Preska, the court with the most personal knowledge, the opportunity to comment and take into account exactly how familiar she might be regarding the "common" technical issues, in deciding whether Pfizer's choice of forum should prevail. *See* discussion *infra* Section V.B.2.(d) of this paper.

issues). Teva has not shown why this Court would not likewise be capable of familiarizing itself with the technological issues in this case.

      (c)     **Teva's mirror-image New York DJ Action was second filed and therefore should not be given preference over the Delaware Action**

The above leaves the second-filed mirror-image Teva DJ Action as the only reason for Teva to want this case to be transferred to New York. Unfortunately for Teva, the first-filed rule requires that the New York DJ Action should be enjoined. *E.E.O.C. v. University of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988). Based on its first-filed status regarding this action on the merits of the '243 patent, Pfizer has moved concurrently to enjoin Teva from proceeding in the New York Teva DJ Action. Thus, the Teva DJ Action is not a safe harbor for Teva and there is no rational basis to transfer this case to New York.

      (d)     **If the New York Action court were in fact "fully briefed" on the underlying technical issues applicable to the Delaware Action, then Teva should have moved in New York to enjoin Pfizer from proceeding here**

Teva presumptuously filed its motion to transfer in this Court on the grounds that the New York Action court has been fully briefed on allegedly similar technical issues to this case (OpenBr at 1, 4-6, 8-10). Pfizer challenges whether Judge Preska actually considered any of the underlying merits because the record shows that all of the briefed motions were simply denied as moot. By filing its transfer motion here, Teva places this Court in the position of having to resolve the parties' arguments regarding what in fact the New York Action court actually knows about these technical issues.

If conservation of judicial resources were Teva's actual desire, than it should have filed a motion to enjoin Pfizer in the Teva DJ Action raising the same arguments that it

raises here.[3] A motion in New York would have permitted Judge Preska to actually weigh the merits of Teva's argument that she was already "fully briefed" on the technical issues. Instead, Teva has burdened this Court to hypothesize as to whether Judge Preska has indeed been "fully briefed." This is hardly a good use of this Court's limited time and resources.

The fact that Teva did not ask Judge Preska to consider whether she has been "fully briefed" on the technical issues in this case obliterates Teva's arguments that transfer would serve the interests of justice. Pfizer submits that Teva chose not raise this argument before Judge Preska because the argument is totally meritless.

**3.      *Delaware is as convenient, if not more, as New York for all the witnesses***

This Court has held that the convenience of party witnesses or witnesses who are employed by a party carry no weight in the "balance of convenience" analysis because each party is able, indeed obligated, to procure the attendance of its own employees for trial. *See Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp.2d 192, 203 (D. Del. 1998). In contrast to party witnesses, fact witnesses who possess first-hand knowledge of the events giving rise to the lawsuit weighs quite heavily in the "balance of convenience" analysis. *See id.* Further, the convenience of the witnesses is only relevant to the extent that they might be unavailable for trial, something which Teva has not shown to be the case here. *Praxair*, 2004 WL 883395 at *2.

---

[3] Because Teva argues to this Court that the New York Action was the "first-filed" action (OpenBr at 9), then Teva has at least a colorable, albeit very weak, basis to seek a motion to enjoin based on the first filed rule. *See E.E.O.C.*, 850 F.2d at 971.

### (a)    Teva's Israeli witnesses will not be inconvenienced

In its motion, Teva argues that coming to Delaware would unreasonably burden its employees based in Israel.[4] This argument is meritless for two reasons. First, Teva does not allege that its Israeli employees would be unavailable for trial. Rather, it generally argues that, when traveling from Israel, it is more difficult to get to Delaware than it is to get to New York. The fact that the *only* direct flights from Tel Aviv to this area come to Newark International Airport totally destroys this argument. While Newark International Airport is geographically closer to New York than Delaware, (Mulveny Decl. at ¶ 8, Exs. M and N), rush hour traffic into Manhattan is notoriously difficult. Thus it can be just as convenient to get from Newark International Airport to Delaware as it is to get to Manhattan. Teva has not shown that travel from Newark International Airport to Delaware is substantially more burdensome than getting to New York.[5] In fact, there are connecting trains available from Newark International Airport that travel to Wilmington (Mulveny Decl. at ¶ 7, Ex. L). And, the Federal courthouse in Wilmington is mere blocks from the train station (Mulveny Decl. at ¶ 9, Ex. O). Further, if one changes planes in Europe, there are a multitude of flights that come directly into Philadelphia International Airport (Mulveny Decl. at ¶ 7, Ex. I).

Second, Teva only argues that its Israeli employees are likely to be deposed. Teva does not consider that depositions, unlike trial, can be held outside of Delaware. Thus, if there is truly a hardship in getting a foreign deposition witness to Delaware (and it is

---

[4] Teva tacitly admits that its witnesses likely to be involved in this case are in fact Teva employees (*see* Liveneh Decl. at ¶¶ 3-6). Further, Teva admits that its employees were deposed in the prior New York Action and are used to international travel (*Id.* at ¶ 6).

[5] One court commented that foreign witnesses are already inconvenienced by having to travel internationally, so it is not that much more of an inconvenience to have these witnesses travel a bit further to get to a particular forum. *See Ricoh Co. v. Honeywell Inc.*, 817 F. Supp. 473, 484 (D. N.J. 1993) (noting that if witnesses are already inconvenienced by having to travel thousands of miles internationally, Minnesota is no more inconvenient than New Jersey).

18

somehow more convenient to get that deposition witness to New York), Pfizer is not adverse to deposing that witness in New York. The location of depositions, however, is an issue that is best addressed at a later date when the underlying facts are known. There is no need for the parties to burden this Court trying to speculate whether New York or Delaware may be more convenient for depositions.

Curiously, in another case against Teva in the District of Delaware, Teva sought transfer to the Northern District of Illinois. *See Abbott Laboratories v. Teva Pharmaceuticals USA Inc.*, No 02-1512, (Nov. 8, 2002) (Mulveny Decl. ¶ 10, Ex. P). It is hard to believe Teva's argument that its witnesses will be unreasonably burdened by being forced to travel to Delaware (in lieu of New York) when Teva previously argued that its witnesses should travel all the way to Illinois. Further undermining Teva's credibility is that fact that it never argued in its *Abbott* motion that Delaware was actually inconvenient to its witnesses (*Id.*). Teva ultimately withdrew its motion to transfer in *Abbott* (*Id.*, Ex. Q).

### (b)    Other fact witnesses will not be inconvenienced

Teva argues that the '243 patent inventors are not located in Delaware (OpenBr at 7). Teva further claims that these witnesses are outside the subpoena power this Court (Hardman Decl., [D.I. 13] at ¶ 12). However, these witnesses would also be outside of the subpoena power of the Southern District of New York (*Id.*) Thus, there is no benefit to moving this case to New York in terms of obtaining subpoena power over these witnesses. Additionally, Teva has presented no evidence that any of these witnesses are essential for trial or would in fact be unavailable for trial in the District of Delaware but are otherwise available in the Southern District of New York.

It cannot be said, as Teva implies, that Delaware is geographically inconvenient to everyone.

### 4.    *The location of the evidence favors neither Delaware nor New York*

The location of the evidence in this case is of little value in tipping the scales between Delaware and New York.[6] The '243 inventors are presumed to be located in Connecticut (OpenBr at 7). Teva's likely witnesses are located in Israel (*Id.*). Presumably, the documents related to these individuals' activities would then be located in Connecticut and Israel. Therefore, New York provides no more convenience than Delaware in terms of the location of the relevant documents. Nor does New York have any more connection to these documents than Delaware.

### 5.    *Teva's failure to file its compulsory counterclaims in Delaware means the Delaware Action has priority*

In its answer in the Delaware Action, Teva failed to file any compulsory counterclaims for declaratory judgment (D.I. 16). Instead, Teva elected to file these claims in the Teva DJ Action (Hardman Decl. [D.I. 13] at ¶ 9, Ex. G). This Court holds that "[w]hen a party violates Rule 13(a) by bringing a second action rather than filing a compulsory counterclaim in the first action, '[n]ormally, the first suit should have priority, absent a showing of a balance of convenience in favor of the second action.'" *Bell Telephone Laboratories, Inc. v. International BusinessBell Telephone Laboratories, Inc.*, 630 F. Supp. 373, 379 (D. Del. 1984.) (quoting 3 Moore's Federal Practice § 13.14[2] at 13.87 (2d ed. 1984)). Thus, Teva's failure to make these compulsory counterclaims in the Delaware Action undermines its argument that the Teva DJ Action should be given priority and that this case should be transferred to New York.

---

[6] Pfizer notes that formal discovery has not yet begun, so at this stage, both parties are guessing as to the likely location of the relevant documents.

Teva's declaratory judgment claims are compulsory counterclaims. Rule 13(a) requires a party to raise as a compulsory counterclaim "any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." The Third Circuit set forth the standard for determining whether a claim is a compulsory counterclaim in *Great Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d 631, 634 (3d Cir. 1961). In *Great Lakes*, the court determined that the operative question in determining if a claim is a compulsory counterclaim is whether it bears a logical relationship to an opposing party's claim. *Great Lakes*, 286 F.2d at 634. Thus, a detailed analysis must be made to determine whether the claims involve: (1) many of the same factual issues; (2) the same factual and legal issues; or (3) offshoots of the same basic controversy between the parties. *Bell Telephone Laboratories*, 630 F. Supp. at 379.

The Teva DJ Action declaratory judgment claims are essentially the mirror-image of Pfizer's claims against Teva in the Delaware Action. Therefore, there is no question that Teva's declaratory judgment claims were compulsory counterclaims. These claims should have been raised in answering the Delaware Action because they involve the same factual and legal issues, and stem from the same basic controversy between the parties. Accordingly, pursuant to *Bell Telephone Laboratories*, the Delaware Action takes precedent.

### 6.   *There is no conservation of judicial resources by transferring this case to New York*

Finally, as fully-explained above, Teva has not shown that there will be in fact any conservation of judicial resources by transferring this case to the Southern District of

21

New York. Further, Teva has not shown why this Court would be unreasonably burdened or incapable of familiarizing itself with the technological issues in this case.

**C.    The Balance of Interests Weight Heavily in Favor of Keeping This Case in Delaware**

In view of the six factors discussed above, it is clear that Teva has not overcome the strong presumption that Pfizer properly brought this case in Delaware. Pfizer had ample reasons to bring this case in Delaware. All of the parties have appeared in the District of Delaware previously. And all the domestic parties are centrally located around Delaware.

There is no judicial economy in transferring this case to New York. The so-called "first-filed" New York Action is, for all intents and purposes, closed. Further, the New York Action involved totally different patents. Thus, to the extent that Judge Preska has considered any of the infringement and validity issues, which Teva has not shown to be the case, those issues would be related to the '489 or '889 patents, not the '243 patent. Further, if there is any real merit to Teva's argument that Judge Preska is already "fully briefed" on the related technical issues, than Teva should have brought that argument before the New York Action court rather then burden this Court with trying to guess what another court already knows. If anyone is forum shopping, it is Teva by bringing this motion to this Court.

Teva devotes a substantial portion of its opening brief trying to compare this case to other cases that were transferred out of Delaware (OpenBr 12-13). Those cases are easily distinguished. In *Allergan, Inc. v. Alcon Labs., Inc.*, No. C.A. 02-1682-GMS, 2003 WL 473380 *1 (D. Del. Feb. 25, 2003), the California court had previously granted summary judgment of noninfringement on a related claim. This means the California

court had actually considered the merits of the related claim. Further, all of the parties in *Allergan* were located in California. Here, all of the domestic parties are centrally located around Delaware.

In *Bayer Bioscience N.V. v. Monsanto Co.*, No. C.A. 03-023 GMS, 2003 WL 1565864 at *1 (D. Del. Mar. 25, 2003), the two cases were filed nearly simultaneously, thus there was no true "first-filed" party. Also, like *Allergan*, the Missouri court previously granted summary judgment on the merits on a related claim. This contrasts to the present situation where Teva has not shown that Judge Preska ever formally addressed, much less considered, the technical issues in the New York Action.

Teva has not shown any compelling reasons why New York would be more convenient than Delaware for the witnesses. Both Delaware and New York are easily accessible for the likely Israeli witnesses as the only direct flights from Tel Aviv go to Newark International Airport. For the other witnesses, even giving Teva the benefit of the doubt, the District of Delaware is equally convenient as the Southern District of New York. However, upon consideration of the objective facts -- the relatively smaller size of Wilmington compared to New York and the closer proximity of the District of Delaware Courthouse to the train station, airport, and highways -- the evidence shows that the case is best left in Delaware for the convenience of the parties and witnesses.

Teva admits that none of the likely witnesses are within the subpoena power of either court. Thus, there is no benefit to transfer to the extent that the Southern District of New York would have power to compel the appearance of witnesses at trial. Further, Teva has not alleged that any witnesses would be in fact be unavailable for trial in Delaware, but would otherwise be available in New York.

23

In sum, the interests of justice and the convenience of the parties and the witnesses, do not outweigh Pfizer's original choice of bringing its action related to the infringement of the '243 patent in Delaware.

## VI.   CONCLUSION

Accordingly, for all the above reasons, Teva's motion to transfer should be denied.

CONNOLLY BOVE LODGE & HUTZ LLP


/s/ Rudolf E. Hutz
Rudolf E. Hutz (#484)
Daniel C. Mulveny (#3984)
1007 N. Orange Street
P. O. Box 2207
Wilmington, DE 19899-2207
(302) 658-9141

*Attorneys for Pfizer Inc*


Dated: March 9, 2006

449786_1.DOC

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2006, I electronically filed **PLAINTIFF**

**PFIZER INC'S ANSWER BRIEF IN OPPOSITION TO DEFENDANTS'**

**MOTION TO TRANSFER VENUE TO THE SOUTHERN DISTRICT OF NEW**

**YORK** with the Clerk of Court using CM/ECF which will send notification of such filing

to the following:

>Mary B. Matterer
>Morris James Hitchens & Williams LLP
>222 Delaware Avenue, 10th Floor
>P.O. Box 2306
>Wilmington, DE 19899-2306

I hereby certify that on March 9, 2006, I have mailed by First Class Mail, the

document(s) to the following non-registered participants:

>Steven Lee
>Elizabeth J. Holland
>Sheila Mortazavi
>Cynthia Lambert Hardman
>Kenyon & Kenyon LLP
>One Broadway
>New York, NY 10004

>/s/ Rudolf E. Hutz
>Rudolf E. Hutz (#484)
>Daniel C. Mulveny (#3984)
>1007 N. Orange Street
>P. O. Box 2207
>Wilmington, DE 19899-2207
>(302) 658-9141
>*Attorneys for Pfizer Inc*

**EXHIBIT 1**

Westlaw.

Not Reported in F.Supp.2d                                                                                       Page 1
Not Reported in F.Supp.2d, 2003 WL 473380 (D.Del.)
**(Cite as: 2003 WL 473380 (D.Del.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
ALLERGAN, INC. AND ALLERGAN SALES, LLC,
Plaintiffs,
v.
ALCON LABORATORIES, INC., Alcon Research Ltd.,
Alcon Inc., and Bausch & Lomb,
Inc., Defendants.
**No. C.A. 02-1682-GMS.**

Feb. 25, 2003.

*MEMORANDUM AND ORDER*

SLEET, J.

I. INTRODUCTION

*1 On December 16, 2002, the plaintiffs, Allergan, Inc. and Allergan Sales, LLC (collectively "Allergan"), filed the above-captioned action seeking a declaratory judgment against the defendants, Alcon Laboratories, Inc., Alcon Research, Ltd., Alcon, Inc., and Bausch & Lomb, Inc. (collectively "Alcon and B & L"). Specifically, Allergan asserts infringement of its U.S. Patent No. 6,465,464 B2 ("the '464 Patent"). The '464 Patent is based on a continuation application of two Allergan patents asserted in a prior California action.

Presently before the court is Alcon and B & L's motion to transfer this action to the Central District of California, Southern Division. For the reasons that follow, the court will grant this motion.

II. BACKGROUND

Both of the plaintiffs are Delaware entities with their principle place of business in Irvine, California. The defendant Alcon Laboratories, Inc. is a Delaware corporation with its principal place of business in Forth Worth, Texas. Alcon Research, Ltd. is a limited partnership

organized under the laws of Texas, with Alcon Laboratories, Inc. as a general partner. Alcon, Inc. is the parent of Alcon Laboratories, and is a Swiss corporation headquartered in Hunenberg, Switzerland. Finally, Bausch and Lomb is a New York corporation, with its principle place of business in Rochester, New York.

On January 9, 2002, Allergan filed suit against Alcon and B & L in the Central District of California asserting infringement of United States Patent Nos. 6,199,415 B1 ("the '415 Patent") and 6,248,741 B1 ("the '741 Patent"). Alcon moved for summary judgment of non-infringement, which the court granted on May 8, 2002. *See Allergan, Inc. v. Alcon Laboratories, Inc.,* 200 F.Supp.2d 1219 (C.D.Cal.2002). B & L subsequently filed a similar motion, which was also granted.

On October 15, 2002, Allergan obtained the '464 patent, which issued as a continuation of the application that led to the '741 patent, which, in turn, is a continuation of the application that led to the '415 patent. The '464 patent is the subject of the current action.

The defendants in the present case filed a "mirror image" declaratory judgment action against Allergan concerning the '464 patent in the Central District of California on December 23, 2002.

III. DISCUSSION

Alcon and B & L move to transfer this action to the District Court for the Central District of California, Southern Division pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides that "[f]or convenience of [the] parties and witnesses, in the interest of justice," the court may transfer a civil action "to any other district ... where it might have been brought." 28 U.S.C. § 1404(a). The parties do not dispute that this action could have been filed in the Central District of California, Southern Division. The court will, therefore, move on with the inquiry as directed by the Third Circuit. *See Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995).

*2 When considering a motion to transfer, the court must determine 'whether on balance the litigation would more

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 2
Not Reported in F.Supp.2d, 2003 WL 473380 (D.Del.)
**(Cite as: 2003 WL 473380 (D.Del.))**

conveniently proceed and the interest of justice be better served by transfer to a different forum.' *Id.* This inquiry requires "a multi-factor balancing test" embracing not only the statutory criteria of convenience of the parties and the witnesses and the interests of justice, but all relevant factors, including certain private and public interests. *Id.* at 875, 879. These private interests include the plaintiff's choice of forum; the defendants' preference; whether the claim arose elsewhere; and the location of books and record, to the extent that they could not be produced in the alternative forum. [FN1] *Id.* at 879. Among the relevant public interests are: "[t]he enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; [and] the public policies of the fora." *Id.* at 879-80 (citations omitted).

> FN1. The first three of these private interest collapse into other portions of the *Jumara* analysis. The court, therefore, will consider them in the context of the entire inquiry only. *See Affymetrix, Inc. v. Synteni, Inc. and Incite Pharmaceuticals, Inc., 28 F.Supp.2d 192 (D.Del.1998).*

Upon consideration of these factors, the court finds that the defendants have met their burden of demonstrating that transfer is appropriate. In reaching this conclusion, the court relied on the following considerations, among others: (1) while the plaintiffs and several of the defendants are Delaware entities, and should reasonably expect to litigate in the forum, there is little connection between Delaware and this action or the parties; (2) each party either maintains its principle place of business in California, or has facilities there, whereas no party maintains operations in Delaware; (3) the parties are large and international organizations with apparently substantial assets; (4) because the parties are already litigating essentially the same issues in California, travel time and convenience in the aggregate would be substantially increased with a transfer of forum; and (5) any disparity in court congestion is not so great as to weigh against transfer due to the defendants' "mirror image" action currently pending in the Central District of California, Southern Division. Thus, given the on-going relationship

the Central District of California has with the same parties, and the same, or related, patents, the court concludes that the public and private interests are sufficient to tip the balance of convenience strongly in favor of the defendants.

III. CONCLUSION

For the aforementioned reasons, IT IS HEREBY ORDERED that:
   1. The defendants' motion to transfer this case (D.I.6) is GRANTED.
   2. The above-captioned action is hereby TRANSFERRED to the United States District Court for the Central District of California, Southern Division.

Not Reported in F.Supp.2d, 2003 WL 473380 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:02cv01682 (Docket) (Dec. 16, 2002)

END OF DOCUMENT

Not Reported in F.Supp.2d                                                                 Page 1
Not Reported in F.Supp.2d, 2003 WL 1565864 (D.Del.)
**(Cite as: 2003 WL 1565864 (D.Del.))**

**C**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
BAYER BIOSCIENCE N.V., Plaintiff,
v.
MONSANTO COMPANY, Defendant.
**No. C.A. 03-023 GMS.**

March 25, 2003.

*MEMORANDUM AND ORDER*

SLEET, J.

I. INTRODUCTION

*1 On January 10, 2003, the plaintiff, Bayer Bioscience, N.V. ("Bayer"), filed the above-captioned action alleging that Monsanto Company ("Monsanto") is engaging in activity that infringes Bayer's U.S. Patent No. 5,659,123 ("the '123 patent").

Presently before the court is Monsanto's motion to transfer the case to the United States District Court for the Eastern District of Missouri pursuant to 28 U.S.C. § 1404(a). For the following reasons, the court will grant this motion.

II. BACKGROUND

Bayer is a foreign corporation headquartered in Ghent, Belgium. Monsanto is a Delaware corporation, with its headquarters in St. Louis, Missouri.

The patent at issue involves a corn product that has been genetically modified to express a particular "Bt" gene that makes the corn resistant to a type of Coleopteran insect known as the corn rootworm. For the past two years, Monsanto and Bayer have been engaged in litigation in the Eastern District of Missouri regarding four other patents assigned to Bayer. Those four patents all generally relate to crops genetically engineered with a "Bt gene," purportedly rendering the crops toxic to a class of insects known as Lepidopteran insects.

On December 27, 2002, the Missouri District Court issued a summary judgment order finding that all four of the patents-in-suit in that case were unenforceable due to inequitable conduct. On January 10, 2003, Bayer filed the present action. Also on January 10, 2003, Monsanto filed a declaratory judgment action for noninfringement in the Missouri District Court.

III. DISCUSSION

A. The "First-Filed" Rule

Where two patent lawsuits involving the same claims are filed in different jurisdictions, the Federal Circuit requires that the first-filed action be given preference absent special circumstances. *See Genentech v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed.Cir.1993). The first-filed doctrine also serves to prevent a multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising from common matters. *See id.* at 937.

Applying the first-filed rule, Bayer now argues that it would be improper for the court to transfer this first-filed action to the Eastern District of Missouri. While the court does not dispute that this action is first-filed, albeit only by several hours, for the following reasons, the court concludes that the 1404(a) factors nevertheless weigh in favor of litigating this dispute in Missouri. *See id.* at 937-38 (noting that "the trial court's discretion tempers the preference for the first-filed suit, when such preference should yield to the forum in which all interests are best served.").

B. Section 1404(a)

Section 1404(a) provides that "[f]or the convenience of [the] parties and [the] witnesses, in the interest of justice," the court may transfer this action to "any other district where it might have been brought." 28 U.S.C. § 1404(a). Bayer suggests that the Eastern District of Missouri may not have personal jurisdiction over it. [FN1] Importantly, however, Bayer fails to suggest that it could not have originally brought this action in Missouri, rather than in Delaware. Thus, because Bayer could have brought this action in the proposed transferee district, the court will move on with the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 2
Not Reported in F.Supp.2d, 2003 WL 1565864 (D.Del.)
**(Cite as: 2003 WL 1565864 (D.Del.))**

inquiry as directed by the Third Circuit. *See Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995).

> FN1. As it is not the court's province to determine the question of another court's personal jurisdiction, the court expresses no opinion on this issue.

**\*2** When considering a motion to transfer, the court must determine 'whether on balance the litigation would more conveniently proceed and the interests of justice better served by transfer to a different forum.' *Id.* This inquiry requires "a multi-factor balancing test" embracing not only the statutory criteria of convenience of the parties and the witnesses and the interests of justice, but all relevant factors, including certain private and public interests. *Id.* at 875, 879. These private interests include the plaintiff's choice of forum; the defendants' preference; whether the claim arose elsewhere; and the location of books and records, to the extent that they could not be produced in the alternative forum. [FN2] *Id.* at 879. Among the relevant public interests are: "[t]he enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; [and] the public policies of the fora." *Id.* at 879-80 (citations omitted).

> FN2. The first three of these private interest collapse into other portions of the *Jumara* analysis. The court, therefore, will consider them in the context of the entire inquiry only. *See Affymetrix, Inc. v. Synteni, Inc. and Incite Pharmaceuticals, Inc.,* 28 F.Supp.2d 192 (D.Del.1998).

Upon consideration of these factors, the court finds that Monsanto has met its burden of demonstrating that transfer is appropriate. In reaching this conclusion, the court relied on the following considerations, among others: (1) while the defendant is a Delaware entity, and should reasonably expect to litigate in this forum, there is little connection between Delaware and this action or the parties; (2) no party maintains operations in Delaware; (3) the parties are large and international organizations with substantial assets; (4) because the parties are litigating apparently related issues in

Missouri, travel time and convenience in the aggregate would be substantially increased with a transfer of forum; and (5) any disparity in court congestion is not so great as to weigh against transfer due to the "mirror image" action currently pending in the Eastern District of Missouri. Thus, given the on-going relationship that the Eastern District of Missouri has with the same parties, and the same, or related, patent or patents, the court concludes that the public and private interests are sufficient to tip the balance of convenience strongly in favor of transfer.

IV. CONCLUSION

For the aforementioned reasons, IT IS HEREBY ORDERED that:
1. Bayer's Motion for Leave to File a Sur-Reply (D.I.10) is GRANTED as unopposed.
2. Monsanto's Motion to Transfer this case (D.I.5) is GRANTED.
3. The above-captioned action is hereby TRANSFERRED to the United States District Court for the Eastern District of Missouri.

Not Reported in F.Supp.2d, 2003 WL 1565864 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 2003 WL 24197925 (Trial Pleading) Complaint for Patent Infringement (Jan. 10, 2003)

• 2003 WL 24207834 (Trial Pleading) Complaint for Patent Infringement (Jan. 10, 2003)

• 1:03CV00023 (Docket) (Jan. 10, 2003)

END OF DOCUMENT

Not Reported in F.Supp.2d                                                                                     Page 1
Not Reported in F.Supp.2d, 2004 WL 883395 (D.Del.)
**(Cite as: 2004 WL 883395 (D.Del.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
PRAXAIR, INC. and Praxair Technology, Inc., Plaintiffs,
v.
ATMI, INC. and Advanced Technology Materials, Inc.,
Defendants.
**No. Civ. 03-1158-SLR.**

April 20, 2004.
Jack B. Blumenfeld, Morris, Nichols, Arsht & Tunnell,
Wilmington, DE, for Plaintiffs.

Robert H. Richards, III, Richards, Layton & Finger,
Wilmington, DE, for Defendants.

MEMORANDUM ORDER
ROBINSON, J.

*1 At Wilmington, this 20th day of April, 2004, having reviewed the motion of defendants to transfer (D.I.12), and the memoranda submitted therewith;

IT IS ORDERED that the motion to transfer (D.I.12) is denied for the reasons that follow:

1. On January 9, 2004, plaintiffs filed the present action asserting that defendants infringe U.S. Patent Nos. 5,937,895, 6,007,609, and 6,045,115 (collectively the "Praxair patents"). (D.I.1) On March 8, 2004, defendants filed their answer, denying plaintiffs' claims of infringement and counterclaiming for declaratory judgment of invalidity and noninfringement of the Praxair patents. (D.I.10) A scheduling conference was held on April 8, 2004.

2. Plaintiffs and defendants are Delaware corporations and all parties are headquartered in Danbury, Connecticut. (D.I.1) The Praxair patents relate to a fluid storage and gas dispensing system for fabricating semiconductor devices. Prior to plaintiffs filing the present action, defendants brought suit in the Southern District of New York on

defendants' patents, U.S. Patent Nos. 6,101,816 and 6,3543,476 BI (collectively the "ATMI patents"). That suit, filed on July 11, 2003, has subsequently been amended to include state law claims relating to false advertising and unfair competition. Discovery began in the New York litigation in February 2004.

3. Defendants move the court to transfer this matter pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Southern District of New York. Section 1404(a) provides: "For the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2003). A plaintiff's choice of forum is to be accorded substantial weight and courts should only transfer venue if the defendant is truly regional in character. See Bergman v. Brainin, 512 F.Supp. 972, 973 (D.Del.1981) (citing Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir.1970)). A defendant has the burden of establishing that "the balance of convenience of the parties and witnesses strongly favors" transfer. Id. Accordingly, "[d]efendants brought into suit in Delaware must prove that litigating in Delaware would pose a 'unique or unusual burden' on their operations" for a Delaware court to transfer venue. See Wesley-Jessen Corp. V. Pilkington Visioncare, Inc., 997 F.Supp. 556, 562 (D.Del.1993). A motion to transfer venue may also be granted if there is a related case which has been first filed or otherwise is the more appropriate vehicle to litigate the issues between the parties. See American Bio Medica Corp. v. Peninsula Drug Analysis Co., Inc., 1999 U.S. Dist. LEXIS 12455, *18 (D.Del.1999).

4. In reviewing a motion to transfer venue, courts have not limited their consideration to the three enumerated factors in § 1404(a). Rather, courts will consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir.1995) (internal quotations and citations omitted). In Jumara, the Third Circuit provided a list of factors to assist district courts in determining "whether, on balance, the litigation would more conveniently proceed and the interests of justice [would] be

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                  Page 2
Not Reported in F.Supp.2d, 2004 WL 883395 (D.Del.)
**(Cite as: 2004 WL 883395 (D.Del.))**

better served by a transfer to a different forum." *Id.* These factors entail six private and five public interests. Private interests include: (1) the plaintiff's forum preference as manifested by the plaintiff's original forum choice; (2) the defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses--but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of the books and records. *Id.* Public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; and (5) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.*

**\*2** 5. In considering the private interest factors under *Jumara,* the court, consistent with Third Circuit precedent, adheres to the notion that transfer is not to be liberally granted and plaintiffs' choice of forum is a paramount consideration. Venue is proper in Delaware as this is the situs of incorporation for all the parties. By availing themselves of the advantages of Delaware's corporate laws, defendants have voluntarily exposed themselves to the risk of suit in Delaware. Consequently, as a matter of law and contrary to defendants' assertions, Delaware is both parties' "home turf." (D.I. 13 at 2, 22)

6. The court is wholly unimpressed by defendants' contentions that Delaware is an inconvenient forum for the parties. First, defendants' contention that proximity to defendants' headquarters should be a factor for this court to consider is disingenuous at best. While the Southern District of New York is certainly closer to the parties' respective headquarters in Danbury, Connecticut, the court takes notice of the fact that there are four district courthouses in Connecticut, all of which are geographically closer to Danbury than the courthouse in Manhattan. If commuting time to court for the parties's employees were an issue, defendants' own choice of forum is not reflective of that concern. Second, the court is unpersuaded by defendants' myopic assertions that Wilmington would be a difficult

place for defendants to litigate their case. The fact that New York City has three airports and a subway system are not compelling factors in the consideration of a motion to transfer venue. (D.I. 13 at 7-8, 22; D.I. 24 at 14-15,) Third, defendants' contentions regarding convenience of the witnesses is similarly unpersuasive. [FN1] The convenience of the witnesses is only relevant to the extent that they might be unavailable for trial, something which defendants have not shown to be the case here.

> FN1. Defendants' assert that for certain witnesses located in Florida and Texas, "travel to Wilmington would be less convenient than to New York City, as they would first have to fly into Philadelphia." (D.I. 13 at 22) Apparently, defendants' New York counsel is unfamiliar with the Philadelphia International Airport. Besides offering full international jet travel and operating as a hub for several large airlines, it is located a mere 23 miles from Wilmington. Unlike in Manhattan, travel time to the airport may be done in under a half hour from downtown Wilmington. The court also notes that the courthouse is located a few blocks from the Amtrak station. While not as glamorous as Manhattan, Wilmington also offers a variety of reasonably priced hotels within short walking distance of the court.

7. In considering the public interest factors under *Jumara,* the court is similarly unpersuaded by defendants' arguments. First, defendants suggest that transfer would reduce duplicative litigation; this assertion does not bear scrutiny. While the patents may relate to the same technological field, they nonetheless involve different patents, claims, inventors, prosecution histories and a different set of alleged infringing activities. As a consequence, a finding of validity or infringement in the New York litigation is not relevant to the case before this court. Moreover, the fact that defendants filed their complaint related to the ATMI patents first has no bearing on the propriety of plaintiffs' decision to bring suit for infringement of the Praxair patents in this court.

8. Finally, the court does not find that New York state has a special interest in the outcome of the litigation. Patent cases are explicitly federal issues and the rights determined

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                          Page 3
Not Reported in F.Supp.2d, 2004 WL 883395 (D.Del.)
**(Cite as: 2004 WL 883395 (D.Del.))**

thereunder are national in scope. While the location of infringing activity provides a basis for venue under § 1400, the residency of defendants is no less compelling. 28 U.S.C. § 1400. Consequently, defendants have failed to demonstrate that any of the public interest factors under *Jumara* weigh strongly toward transfer.

**\*3** 9. Therefore, the court concludes that defendants have failed to demonstrate that litigating the present case in Delaware presents a unique or undue burden and their motion is denied. (D.I 12)

Not Reported in F.Supp.2d, 2004 WL 883395 (D.Del.)

### Motions, Pleadings and Filings (Back to top)

• 2005 WL 2867905 (Trial Motion, Memorandum and Affidavit) Praxair's Reply Brief in Support of its Motion to Strike the Declarations of Philip Chen and Christopher Jones (Sep. 19, 2005)

• 1:03CV01158 (Docket) (Dec. 22, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy
Slip Copy, 2005 WL 2620196 (D.Del.)
**(Cite as: 2005 WL 2620196 (D.Del.))**

Page 1

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
TEXTRON INNOVATIONS INC., Plaintiff,
v.
THE TORO COMPANY, Defendants.
**No. Civ.A. 05-486 GMS.**

Oct. 14, 2005.

Edmond D. Johnson, The Bayard Firm, Richard L.
Horwitz, Potter Anderson & Corroon, LLP,
Wilmington, DE, for Plaintiff.

Richard L. Horwitz, David Ellis Moore, Potter
Anderson & Corroon, LLP, Wilmington, DE, for
Defendants.

*MEMORANDUM*

SLEET, J.

I. INTRODUCTION

*1 On July 12, 2005, the plaintiff, Textron
Innovations Incorporated ("TII") filed the above-
captioned action against The Toro Company
("Toro"), alleging infringement of United States
Patent Nos. 6,047,530,6,336,311, and 6,336,312,
which are directed to a gang type rotary mower.
Presently before the court is Toro's motion to transfer
this action to the District of Minnesota, pursuant to
28 U.S.C. § 1404(a). For the following reasons the
court will deny the motion.

II. BACKGROUND

On July 12, 2005, TII filed the present patent
infringement action involving technology related to
the rotary mower used to cut golf course roughs. TII
is the subsidiary of Textron Inc., and the assignee of
the three patents in suit. (*See* D.I. 6, at 1 n. 1; D.I. 19,
at 2.) TII is incorporated in Delaware and maintains
its headquarters in Providence, Rhode Island. (D.I. 1
¶ 3.) Toro is a Delaware corporation that maintains
its headquarters in Bloomington, Minnesota. (*Id.* ¶
4.) Toro's allegedly infringing products are

manufactured in Tomah, Wisconsin. (D.I. 6, at 3.)

On August 15, 2005, Toro filed a separate action in
Minnesota against Textron, Inc. and Jacobsen, a
division of Textron, Inc., alleging that their products
infringe two Toro patents relating to hydraulic drive
system technology for riding mowers. The following
day, Toro filed this motion to transfer venue to the
District of Minnesota.

III. DISCUSSION

Pursuant to Section 1404(a), the court may transfer a
civil action "for the convenience of parties and
witnesses, in the interest of justice, ... to any other
district ... where it might have been brought." 28
U.S.C. § 1404(a). It is the movant's burden to
establish the need to transfer, and "the plaintiff's
choice of venue [will] not be lightly disturbed." *Truth
Hardware corp. v. Ashland Prods., Inc.,* No. C.A. 02-
1541 GMS, 2003 WL 118005, at *1 (quoting *Jumara
v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d
Cir.1995)). In other words, "unless the balance of
convenience strongly favors a transfer in favor of
defendant, the plaintiff's choice of forum should
prevail." *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25
(3d Cir.1970).

When considering a motion to transfer, the court
must determine "whether on balance the litigation
would more conveniently proceed and the interest of
justice be better served by transfer to a different
forum." *Jumara,* 55 F.3d at 879. This inquiry requires
"a multi-factor balancing test," embracing not only
the statutory criteria of convenience of the parties and
the witnesses and the interest of justice, but all
relevant factors, including certain private and public
interests. *Id.* at 875. These private interests include
the plaintiff's choice of forum; the defendant's
preference; whether the claim arose elsewhere; the
convenience of the parties; the convenience of the
expected witnesses; and the location of books and
records, to the extent that they could not be produced
in the alternative forum. [FN1] *Id* at 879. Among the
relevant public interests are: "the enforceability of the
judgment; practical considerations that could make
the trial easy, expeditious, or inexpensive; the relative
administrative difficulty in the two fora resulting
from court congestion; the local interest in deciding
local controversies at home; [and] the public policies
of the fora." *Id.* at 879-80.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 2
Slip Copy, 2005 WL 2620196 (D.Del.)
**(Cite as: 2005 WL 2620196 (D.Del.))**

FN1. The first three of these private interest factors collapse into other portions of the *Jumara* analysis. Thus, the court will consider them in the context of the entire inquiry only. *See Affymetrix, Inc. v. Synteni, Inc.,* 28 F.Supp.2d 192 (D.Del.1998).

**\*2** Upon consideration of the relevant factors, the court finds that Toro has not met its burden of demonstrating that transfer is appropriate. First, the court concludes that convenience of parties factor weighs in favor of maintaining the action in Delaware. The court will afford less deference to TII's choice of Delaware as a forum because it is not its "home turf," or principal place of business. *See Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.,* 775 F.Supp. 759, 764 (D.Del.1991). However, it is not appropriate to disregard a plaintiff's choice of forum where it has a rational and legitimate reason for choosing the forum. *See Joint Stock Soc'y v. Heublein, Inc.,* 936 F.Supp. 177, 187 (D.Del.1996). In the present case, the fact that Toro is incorporated in Delaware is a rational and legitimate reason for TII choosing to sue it in Delaware. *See Stratos Lightwave, Inc. v. E20 Communications, Inc.,* No. Civ. A. 01-309-JJF, 2002 WL 500920, at \*2 (D.Del. Mar.26, 2002). Further, having received the benefits of Delaware incorporation, Toro cannot now complain that another corporation has chosen to sue it here. *See id.* Indeed, it is difficult for the court to find any inconvenience to Toro when it has previously chosen this forum in order to litigate its own patent infringement claims against Textron. *See Toro Company v. Textron, Inc.,* 499 F.Supp. 241 (D.Del.1980). Thus, the convenience of the parties weighs in favor of maintaining this action in Delaware.

The court also finds that the location of books and records weighs against granting Toro's motion to transfer. Toro contends that its books and records necessary for litigation are in Minnesota. A court should consider the location of books and records in its analysis. However, it must only do so to the extent that the files could not be produced in the alternative forum. *Jumara,* 55 F.3d at 879. Here, Toro does not suggest that its documents could not be produced in Delaware. Accordingly, this factor does not weigh in favor of the transfer.

Toro also contends that non-party witness convenience weighs in favor of a transfer. According to the briefs, Toro plans to rely on testimony from two original inventors of the patents in-suit, three

retired employees, and an employee of a local golf course. The two inventors do not reside within the subpoena power of Delaware or Minnesota. However, they have both stated, in sworn declarations, that they are willing to appear in Delaware for depositions and trial. (D.I. 19, at 3.) Thus, any inconvenience to the inventors weighs in favor of maintaining the action in Delaware.

As for the other witnesses, Toro has elected to rely upon retired and, therefore, "third-party" employees that do not reside within the subpoena power of Delaware. In support of its motion, Toro insists that due to personal circumstances, travel to Delaware is extremely inconvenient for its third-party witnesses. (D.I. 6, at 4-6.) The court is not persuaded by this argument, and finds Toro's reliance on former employees, rather than its current employees, questionable. Further, as this court has previously held, a flight to Delaware is not an onerous task warranting transfer. *Truth Hardware Corp. v. Ashland Prods., Inc.,* No C.A. 02-1541 GMS, 2003 WL 118005, at \*2 (D. Del. Jan 13, 2003). Moreover, Toro has not asserted that the identified witnesses are the only individuals capable of testifying as to the technology of the accused products. Nevertheless, if necessary, TII has agreed to take witness depositions in Minnesota. (*See* D.I. 19, at 23.) For these reasons, the court concludes the convenience of the witnesses does not favor transfer in this case.

**\*3** Finally, the court finds that the public interest factors do not weigh strongly in favor of transfer to Minnesota. First, Toro's pending litigation in Minnesota was filed after TII initiated this lawsuit, and involves different patents. Thus, the court believes that this is not a relevant consideration in favor of transfer. *See Mentor Graphics Corp. v. Quickturn Design Sys.,* 77 F.Supp.2d 505, 513 (D.Del.1999) (refusing to give "any weight whatsoever" to a mirror image action filed by the defendant). Additionally, the court is not persuaded that any disparity in court congestion, to the extent there is any, will be so great as to weigh strongly in favor of a transfer. Finally, it is well settled that patent rights are not considered state or local matters and do not implicate local interests. *Jones Pharma, Inc. v. KV Pharm. Co.,* No. Civ. A. 03-786 JJF, 2004 WL 323109, at \* 3 (D.Del. Feb.17, 2004). The court, therefore, finds no strong local interest in litigating in the transferee forum. Accordingly, the court concludes that public interest factors do not favor transfer in the instant case.

*ORDER*

Slip Copy                                                                                          Page 3
Slip Copy, 2005 WL 2620196 (D.Del.)
**(Cite as: 2005 WL 2620196 (D.Del.))**

 For the reasons stated in the court's Memorandum of
this same date, IT IS HEREBY ORDERED that:
   1. The defendant's Motion to Transfer the Case to
   the United States District Court for the District of
   Minnesota (D.I.5) is DENIED.

Slip Copy, 2005 WL 2620196 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 2005 WL 3242158 (Trial Pleading) Defendant's
Amended Answer and Counterclaims (Nov. 09,
2005)

• 2005 WL 2603883 (Trial Motion, Memorandum
and Affidavit) Plaintiff Textron Innovations Inc.'s
Brief in Opposition to Motion to Transfer Venue
(Aug. 30, 2005)

• 2005 WL 2603569 (Trial Pleading) Answer (Aug.
29, 2005)

• 2005 WL 2603700 (Trial Motion, Memorandum
and Affidavit) Toro's Reply to Textron's Brief in
Opposition to Motion to Transfer Venue (Aug. 19,
2005)

• 2005 WL 2603699 (Trial Motion, Memorandum
and Affidavit) Opening Brief Supporting Defendant
Toro's 28 U.S.C. § 1404 (a) Motion to Transfer
Venue to Minnesota (Aug. 16, 2005)

• 2005 WL 2385695 (Trial Pleading) Complaint (Jul.
12, 2005)

• 2005 WL 2912858 (Trial Pleading) Complaint (Jul.
12, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 2003 WL 118005 (D.Del.)
**(Cite as: 2003 WL 118005 (D.Del.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
TRUTH HARDWARE CORPORATION, Plaintiff,
v.
ASHLAND PRODUCTS, INC., Defendant.
**No. C.A. 02-1541 GMS.**

Jan. 13, 2003.

*MEMORANDUM AND ORDER*
SLEET, J.

I. INTRODUCTION

**\*1** On October 15, 2002, the plaintiff, Truth Hardware
Corporation ("Truth") filed the instant action alleging patent
infringement of its "Advent" window operator. The
defendant, Ashland Products, Inc. ("Ashland") now moves
to transfer this case to the United States District Court for
the Northern District of Illinois, Eastern Division, because
litigation concerning a related patent is currently pending
between the parties in that venue. For the following reasons,
the court will deny Ashland's motion.

II. DISCUSSION

Section 1404(a) provides that "[f]or convenience of [the]
parties and witnesses, in the interest of justice," the court
may transfer a civil action "to any other district ... where it
might have been brought." [FN1] 28 U.S.C. § 1404(a). It is
the movant's burden to establish the need to transfer, and
"the plaintiff's choice of venue [will] not be lightly
disturbed." *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879
(3d Cir.1995).

> FN1. The parties do not dispute that this action
> could have been filed in the Northern District of
> Illinois.

When considering a motion to transfer, the court must
determine "whether on balance the litigation would more
conveniently proceed and the interest of justice be better
served by transfer to a different forum." *Id.* This inquiry
requires "a multi-factor balancing test" embracing certain
private and public interests. *Id.* at 875, 879. These private
interests include the plaintiff's choice of forum; the
defendant's preference; whether the claim arose elsewhere;
and the location of books and records, to the extent that they
could not be produced in the alternative forum. [FN2] *Id.* at
879. Among the relevant public interests are: "[t]he
enforceability of the judgment; practical considerations that
could make the trial easy, expeditious, or inexpensive; the
relative administrative difficulty in the two fora resulting
from court congestion; the local interest in deciding local
controversies at home; [and] the public policies of the fora."
*Id.* at 879-80 (citations omitted).

> FN2. The first three of these private interest
> collapse into other portions of the *Jumara* analysis.
> The court, therefore, will consider them in the
> context of the entire inquiry only. *See Affymetrix,
> Inc. v. Synteni, Inc. and Incite Pharmaceuticals,
> Inc.,* 28 F.Supp.2d 192 (D.Del.1998).

Upon consideration of these factors, the court finds that
Ashland has not met its burden of demonstrating that
transfer is appropriate. In reaching this conclusion, the court
relied on the following considerations, among others. First,
Truth and Ashland are Delaware corporations and should
reasonably expect to litigate in the forum. Additionally, the
patent dispute and technology at issue is not "local" in
nature or otherwise unique to the Northern District of
Illinois.

Moreover, while it is true that litigation concerning a related
patent is currently pending in the Northern District of
Illinois, the court concludes that this is not as significant as
Ashland suggests. Of critical importance in this regard is the
fact that the Illinois action is several years old, has already
proceeded through the dispositive motion phase, and is now
set to begin trial on March 3, 2003. Thus, the advanced
procedural posture of the Illinois action militates against a
transfer.

Ashland further argues that, because the presiding judge in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                          Page 2
Not Reported in F.Supp.2d, 2003 WL 118005 (D.Del.)
**(Cite as: 2003 WL 118005 (D.Del.))**

Illinois is familiar with the parties and the technology, judicial economy would be served by a transfer. While the court does not doubt that the Illinois court may be more familiar with the technology at this juncture, the present court is amply qualified to likewise familiarize itself. To the extent collateral estoppel issues may arise from the Illinois litigation, such issues will ultimately have to be decided by a court, regardless of whether that court sits in Illinois or Delaware. Thus, Ashton's arguments on this point are of little avail.

**\*2** Finally, Ashton contends that non-party witness convenience weighs in favor of a transfer. The court must again disagree. In support of its contention, Ashton has identified three "critical" non-party witnesses that it claims would be inconvenienced by a trial in Delaware. Truth points out in its answer brief, hoever, that none of these witnesses resides in Illinois either, although it is unclear where they do reside. Nevertheless, it appears that these witnesses will have to travel regardless of where this action proceeds. Furthermore, the court does not find the possibility of a three-hour flight to be an onerous task warranting transfer.

III. CONCLUSION

For these reasons, IT IS HEREBY ORDERED that:
   1. Ashton's motion to transfer the case to the United States District Court for the Northern District of Illinois, Eastern Division, (D.I.9) is DENIED.

Not Reported in F.Supp.2d, 2003 WL 118005 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:02CV01541 (Docket) (Oct. 15, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.