IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PFIZER INC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-89-GMS |
| | ) | |
| TEVA PHARMACEUTICALS USA and | ) | |
| TEVA PHARMACEUTICAL | ) | |
| INDUSTRIES LTD. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF PFIZER INC'S OPENING BRIEF IN SUPPORT OF ITS
CONTINGENT MOTION TO ENJOIN THE TEVA DEFENDANTS FROM
PROCEEDING WITH THEIR LATER-FILED SUIT IN THE SOUTHERN
DISTRICT OF NEW YORK**

CONNOLLY BOVE LODGE & HUTZ LLP

/s/ Rudolf E. Hutz
Rudolf E. Hutz (#484)
Daniel C. Mulveny (#3984)
1007 N. Orange Street
P. O. Box 2207
Wilmington, DE 19899-2207
(302) 658-9141
*Attorneys for Pfizer Inc*

Dated: March 9, 2006

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | NATURE AND STAGE OF THE PROCEEDING | 1 |
| III. | SUMMARY OF ARGUMENT | 3 |
| IV. | FACTUAL BACKGROUND | 4 |
| V. | ARGUMENT | 5 |
| | A. The Delaware Action Is The First-Filed Action | 6 |
| | B. Pfizer Had A Good Faith Basis To Bring Suit In Delaware | 7 |
| VI. | CONCLUSION | 8 |

# TABLE OF AUTHORITIES

**Cases**

*Corixa Corp. v. IDEC Pharmaceuticals Corp.*, No. Civ.A.01-615-GMS,
  2002 WL 265094 at *1 (D. Del. Feb. 25, 2002) ...................................................... 5

*Crosley Corp. v. Hazeltine Corp.*,
  122 F.2d 925, 929 (3d Cir. 1941) ................................................................... 5, 6

*E.E.O.C. v. University of Pennsylvania*,
  850 F.2d 969, 971 (3d Cir. 1988) ................................................................... 5, 6

*Polaroid Corporation v. Casselman*,
  213 F. Supp. 379, 381 (S.D.N.Y. 1962) ................................................................. 6

**Statutes**

28 U.S.C. § 1404(a) ........................................................................................ 2

**Other Authorities**

Fed. R. Civ. P. 3 ........................................................................................... 6

I.  **INTRODUCTION**

Plaintiff, Pfizer Inc ("Pfizer") respectfully submits this brief in support of its motion to enjoin defendants, Teva Pharmaceuticals USA[1] and Teva Pharmaceutical Industries Ltd. (respectively "Teva USA" and "Teva Ltd."; collectively "Teva") from proceeding with their second-filed declaratory judgment action against Pfizer in the Southern District of New York. This later-filed declaratory judgment action asserts that the same patent at issue here is invalid and not infringed, and basically attacks the patent for the same reasons asserted as defenses to Pfizer's first-filed complaint. Teva has moved to transfer the first-filed Delaware Action to the Southern District of New York but, although requested, it has refused to agree to dismiss the New York suit if that motion is unsuccessful. Thus, Pfizer has filed the instant motion to ensure that, if transfer is denied, Teva will be prevented from proceeding in both the New York and Delaware cases.

II.  **NATURE AND STAGE OF THE PROCEEDING**

Pfizer filed its complaint against Teva on February 8, 2006 (the "Delaware Action") (D.I. 1). In the Delaware Action, Pfizer alleged, *inter alia*, that Teva's importation and sale of generic azithromycin products in the United States infringe Pfizer's U.S. Patent No. 6,977,243 ("the '243 patent") (D.I. 1, ¶¶ 18-44). The '243 claims are directed to azithromycin sesquihydrate.[2] (D.I. 1, ¶ 16).

Also on February 8, 2006, Pfizer commenced another action in the District of Delaware against Sandoz Inc. and its parent, Novartis AG, alleging that those defendants

---

[1] Pfizer has been advised by Teva that the full name of Teva USA is Teva Pharmaceuticals USA, Inc. Accordingly, all references to Teva Pharmaceuticals USA or Teva USA should be read as referring to Teva Pharmaceuticals USA, Inc.

[2] Azithromycin is a highly effective antibiotic in the treatment of a broad range of bacterial infections. The '243 patent is directed to a novel crystalline form of azithromycin.

1

also infringed the claims of the '243 patent. *Pfizer Inc v. Sandoz Inc. et al.*, No. 1:06-cv-00090-JJF (Mulveny Decl. ¶ 2, Ex. A). On February 16, 2006, after the *Teva* and *Sandoz* cases had already been assigned to different judges, Pfizer alerted the Court about the pendency of the *Teva* and *Sandoz* cases and their judge assignments (D.I. 5, Mulveny Decl. ¶ 3, Ex. B).

On February 14, 2006, six days after Pfizer commenced the Delaware Action, Teva filed a complaint seeking a declaratory judgment of non-infringement and invalidity of the '243 patent in the United States District Court for the Southern District of New York (the "Teva DJ Action") (Mulveny Decl. ¶ 4, Ex. C). The Teva DJ Action is based on essentially the same set of facts as raised by Pfizer in its Delaware Action and it raises the same defenses to infringement and validity as asserted by Teva in the Delaware Action (*Id.*).

On February 23, 2006, Teva moved this Court to transfer the Delaware Action to the Southern District of New York pursuant to 28 U.S.C. § 1404(a) (D.I. 8). Pfizer opposes that motion and its brief in opposition is being filed concurrently with the instant motion.

Teva USA answered Pfizer's Delaware Action complaint on March 1, 2006. Teva USA denied infringement and raised the affirmative defenses of noninfringement, invalidity, and failure to state a claim for which relief can be granted (D.I. 16). Curiously, Teva USA chose not to present its compulsory counterclaims for declaratory judgment that it raised in the Teva DJ Action (*Id.*).

Pfizer answered the Teva DJ Action complaint on March 7, 2006 and additionally filed counterclaims against Teva for patent infringement mirroring the claims Pfizer

2

made in its first-filed Delaware Action (Mulveny Decl. ¶ 5, Ex. D). Teva's answer to these counterclaims is due March 27, 2006.

Pursuant to agreement, Teva Ltd. has waived formal service of Pfizer's complaint, and its answer to Pfizer's Delaware Action complaint is due on March 15, 2006. Pfizer expects that Teva Ltd.'s answer will correspond to Teva USA's answer. During discussions between Pfizer and Teva leading to the waiver of service and agreement on the date for answering, Pfizer asked whether Teva would agree to dismiss the Teva DJ Action if its motion to transfer were denied by this Court. Teva refused, thereby necessitating this motion.

In summary, there are now two essentially identical cases pending in two district courts involving the same parties and the same basic question: the infringement and validity of the '243 patent. Common sense and judicial economy dictate that only one should go forward, and Pfizer submits it should be the first filed action.

### III. SUMMARY OF ARGUMENT

The grounds for Pfizer's motion are straightforward. When there are two competing actions regarding the same set of basic facts in two district courts of equal rank, the first-filed rule requires that the later-filed action be enjoined from proceeding. Pfizer filed the Delaware Action before Teva filed the parallel Teva DJ Action. Teva's Motion to Transfer the Delaware Action to New York should be denied for the reasons set forth in Pfizer's concurrently filed opposition, and when denied, this Court should enjoin Teva from proceeding further in New York.

3

IV.    **FACTUAL BACKGROUND**

As stated above, Pfizer initiated the Delaware Action on February 8, 2006. Teva USA filed its answer on March 1, 2006 and Teva Ltd. is expected to answer on March 15, 2006. This Court has jurisdiction over all parties.

As also explained above, the Teva DJ Action was filed on February 14, 2006 and Pfizer filed its answer and counterclaims on March 7, 2006. The Southern District of New York also has jurisdiction over all parties.

Teva has referred to another consolidated case in the Southern District of New York (the "New York Action") between Teva and Pfizer. Teva initiated the New York Action against Pfizer by filing two complaints seeking declaratory judgment relief (Woodard Decl. at ¶ 2). After its efforts to dismiss Teva's complaints failed, Pfizer filed compulsory counterclaims asserting that the two involved patents, U.S. Patent Nos. 5,605,889 ("the '889 patent") and 6,268,489 ("the '489 patent") were infringed by Teva's ANDA product (Woodard Decl. at ¶¶ 2, 3). However, Pfizer granted Teva a covenant not to sue under the '889 patent in the early stages of the case (Woodard Decl. at ¶ 4). The remaining patent in the New York Action, the '489 patent, is directed to azithromycin dihydrate, which is different from azithromycin sesquihydrate that is covered by the '243 patent claims (*compare* the '489 patent [Mulveny Decl. ¶ 6, Ex. E] to the '243 patent [D.I. 1, Exs. A and B]).

The '489, '889, and '243 patents do not arise from a common patent application (*compare* the '489 patent [Mulveny Decl. ¶ 6, Ex. E], the '889 patent [Mulveny Decl. ¶ 7, Ex. F], and the '243 patent [D.I. 1, Exs. A and B]). Further, the '489, '889, and '243 patents do not share common inventors (*Id.*). In sum, there is no commonality between

4

the '489, '889, and '243 patents other than the basic facts that all of the patents are generally directed to azithromycin and all of the patents are owned by Pfizer. Beyond that, the patents are legally and factually distinct, issuing at different times, based on different applications, claiming different inventions which implicate different prior art and different issues.

The New York Action, however, is effectively over. On February 17, 2006 the court dismissed all pending motions as moot because Pfizer granted Teva a covenant not to sue regarding the only remaining patent in the litigation, the '489 patent (Woodard Decl. at ¶¶ 6, 7). No issues of infringement or validity remain pending (*Id.*). The sole issue now pending in the New York Action is Teva's § 285 claim for attorney fees that will be briefed and decided by that Court in due course (*Id.*).

## V.    ARGUMENT

The first-filed rule requires that, where cases involving the same basic set of facts are pending in federal courts of equal rank, "the court which first had possession of the subject must decide it," while the second filed action should be stayed or transferred to the court where the first filed action is pending. *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941) (citations omitted); *see also Corixa Corp. v. IDEC Pharmaceuticals Corp.*, No. Civ.A.01-615-GMS, 2002 WL 265094 at *1 (D. Del. Feb. 25, 2002). The Third Circuit has found that the "first-filed rule" encourages sound judicial administration and promotes comity among federal courts of equal rank. *E.E.O.C. v. University of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988). The rule gives the Court the power to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court. *Id.* at 971.

5

The Third Circuit has articulated several underlying and compelling policy reasons behind the first-filed rule. The rule benefits litigants by permitting the party who first brought the action into a court of competent jurisdiction to be "free from the vexation of subsequent litigation over the same subject matter." *Crosley*, 122 F.2d at 930. The Third Circuit noted that the "economic waste involved in duplicating litigation is obvious." *Id.* Further, the Third Circuit has found that the first-filed rule benefits both the courts and the public they serve: "Courts already heavily burdened with litigation with which they must of necessity deal should therefore not be called upon to duplicate each other's work in cases involving the same issues and the same parties." *Id.*

While the first-filed rule, based in the Court's inherent equity powers, "is not a rigid or inflexible rule to be mechanically applied," the rule should be followed unless there are "rare or extraordinary circumstances." *E.E.O.C.*, 850 F.2d at 972, 976. Such circumstances include "inequitable conduct, bad faith, or forum shopping." *Id.* at 972.

### A.    The Delaware Action Is The First-Filed Action

Under the Federal Rules of Civil Procedure, an action is commenced when the complaint is filed. Fed. R. Civ. P. 3; *Polaroid Corporation v. Casselman*, 213 F. Supp. 379, 381 (S.D.N.Y. 1962). Therefore, Pfizer's Delaware Action regarding the '243 patent commenced on February 8, 2006, six days before the Teva DJ Action was filed. The Delaware Action, therefore, is unquestionably the first-filed case.[3] Accordingly, pursuant to the first-filed rule, Teva must be enjoined from proceeding in the Teva DJ Action.

---

[3] Pfizer notes that Teva wrongfully argues in its opening brief in support of its motion to transfer that the New York Action is the first-filed case (D.I. 9 at pp. 9). The New York Action, however, did not address the '243 patent. Thus, the New York Action cannot be the first-filed action regarding the infringement and validity of the '243 patent.

6

### B. Pfizer Had A Good Faith Basis To Bring Suit In Delaware

Pfizer brought this case to the District of Delaware in good faith. Pfizer is incorporated in Delaware and has existing working relationships with Delaware attorneys, including the undersigned counsel. Pfizer has previously litigated patent cases in the District of Delaware and has found the Court to be both a competent and convenient forum.

Further, Teva USA is also a Delaware corporation. Teva USA's parent, Teva Ltd., is an Israeli corporation that has contacts with Delaware at least because it is the parent of Teva USA. Importantly, both Teva USA and Teva Ltd. have previously appeared, either together or singularly, in the District of Delaware on 28 prior occasions (Mulveny Decl. ¶ 8, Ex. G). Fourteen of these cases remain pending in this District. (*Id.*). *See, e.g., Abbott Laboratories v. Teva Pharmaceuticals USA, Inc. et al.*, No. Civ.A. 02-1512-KAJ (active); *Smith Kline & French Laboratories Limited et al v. Teva Pharmaceuticals USA Inc.*, No. 1:05-cv-00197-GMS (active); and *Takeda Pharmaceutical Company LTD. et al v. Teva Pharmaceuticals USA Inc.*, No. 1:06-cv-00033-SLR (active). Teva is no stranger to the District of Delaware.

Teva argues in its opening brief in support of its Motion to Transfer that Pfizer initiated the Delaware Action in bad faith (D.I. 9 at 14). Particularly, Teva accuses Pfizer of forum shopping and trying to start over in Delaware "with a clean slate before a new judge." (*Id.*). Teva's allegations are meritless.

The Delaware Action involves the infringement and validity of the '243 patent. The prior New York Action involved different and unrelated patents (*i.e.*, the '889 and '489 patents). Therefore, the issues to be considered in the Delaware Action were never

7

considered or addressed in the prior New York Action and could not have been. Pfizer did not act inequitably by selecting the District of Delaware instead of the Southern District of New York to litigate the merits of its new and different claims regarding the '243 patent, a patent that issued only a few months ago with the wrong claims (a mistake made by the United States Patent and Trademark Office). In fact, the United States Patent and Trademark Office did not issue a Certificate of Correction making the necessary corrections to the claims of the '243 patent until the day before Pfizer filed its Delaware complaint.

Accordingly, it cannot be credibly argued that Pfizer selected the District of Delaware in bad faith.

## VI. CONCLUSION

For all the reasons above, Pfizer first-filed its Delaware Action in good faith before the parallel Teva DJ Action was filed. Accordingly, if as Pfizer argues in its concurrently filed opposition, Teva's Motion to Transfer is denied, then to avoid the needless waste of judicial resources, Teva must be enjoined from proceeding in the Teva DJ Action.

CONNOLLY BOVE LODGE & HUTZ LLP

/s/ Rudolf E. Hutz
Rudolf E. Hutz (#484)
Daniel C. Mulveny (#3984)
1007 N. Orange Street
P. O. Box 2207
Wilmington, DE 19899-2207
(302) 658-9141
*Attorneys for Pfizer Inc*

Dated: March 9, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2006, I electronically filed **PLAINTIFF PFIZER INC'S OPENING BRIEF IN SUPPORT OF ITS CONTINGENT MOTION TO ENJOIN THE TEVA DEFENDANTS FROM PROCEEDING WITH THEIR LATER-FILED SUIT IN THE SOUTHERN DISTRICT OF NEW YORK** with the Clerk of Court using CM/ECF which will send notification of such filing to the following:

> Mary B. Matterer
> Morris James Hitchens & Williams LLP
> 222 Delaware Avenue, 10th Floor
> P.O. Box 2306
> Wilmington, DE 19899-2306

I hereby certify that on March 9, 2006, I have mailed by First Class Mail, the document(s) to the following non-registered participants:

> Steven Lee
> Elizabeth J. Holland
> Sheila Mortazavi
> Cynthia Lambert Hardman
> Kenyon & Kenyon LLP
> One Broadway
> New York, NY 10004

/s/ Rudolf E. Hutz
Rudolf E. Hutz (#484)
Daniel C. Mulveny (#3984)
1007 N. Orange Street
P. O. Box 2207
Wilmington, DE 19899-2207
(302) 658-9141
*Attorneys for Pfizer Inc*

448105_1.DOC

**EXHIBIT 1**

Not Reported in F.Supp.2d                                                                                                    Page 1
Not Reported in F.Supp.2d, 2002 WL 265094 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

C
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
CORIXA CORPORATION, a Delaware corporation, et al.,
Plaintiffs,
v.
IDEC PHARMACEUTICALS CORPORATION, a
Delaware corporation, Defendant.
No. CIV.A.01-615-GMS.

Feb. 25, 2002.

MEMORANDUM AND ORDER

SLEET, District J.

I. INTRODUCTION

*1 On September 10, 2001, IDEC Pharmaceutical Corporation ("IDEC") filed a complaint in the Southern District of California against Coulter Pharmaceutical Inc. ("Coulter"), Corixa Corporation ("Corixa"), and the Regents of the University of Michigan ("Michigan"). In its complaint, IDEC seeks a declaratory judgment of non-infringement and/or invalidity of five patents. On September 11, 2001, the Oncologic Drugs Advisory Committee ("ODAC") indicated that it would recommend a limited FDA approval of IDEC's drug Zevalin. On September 12, 2001, at approximately 8:33 A.M. PST, IDEC filed a first amended complaint which included a sixth patent.

On September 12, 2001, at 12:07 P.M. EST, Corixa, Coulter, and GlaxoSmithKline (GSK) (collectively "Corixa") filed the above-captioned action against IDEC. FN1 Corixa alleges that IDEC is infringing U.S. Patent Nos. 6,015,542, ("the '542 patent"), 6,090,365 ("the '365 patent"), and 5,595,721 ("the '721 patent"). These patents are three of the patents involved in the California declaratory judgment action.

　　　FN1. On September 28, 2001, Michigan was added as a plaintiff in this action.

Presently before the court is IDEC's motion to stay the proceedings, or alternatively, to dismiss or transfer this action to the Southern District of California. FN2 For the reasons that follow, the court will grant IDEC's motion to transfer.

　　　FN2. IDEC sought to stay the proceedings pending a ruling from the California court on a motion to dismiss. On January 30, 2002, the California court denied the motion to dismiss. IDEC's current motion to stay is therefore moot.

II. BACKGROUND

IDEC is a Delaware corporation with its sole place of business in the San Diego area. Coulter is a Delaware corporation with its principle place of business in the San Francisco Bay area. Corixa is a Delaware corporation based in Seattle, Washington. GSK is a Pennsylvania corporation with its principle place of business in Philadelphia, Pennsylvania. The University of Michigan is a constitutional corporation of the State of Michigan, located in Ann Arbor, Michigan.

The patents at issue involve technology for the treatment of lymphoma using targeted radioimmunotherapy. Coulter and Michigan are co-owners of the '542, '365, and '721 patents. Corixa and GSK are the licensees of these patents. Both IDEC and Corixa are currently seeking FDA approval for a commercial embodiment of their respective inventions for the treatment of lymphoma using radioimmunotherapy.

With these facts in mind, the court will now turn to the motion presently before it.

III. DISCUSSION

A. The "First-Filed" Rule

Where two patent lawsuits involving the same claims are filed in different jurisdictions, the Federal Circuit requires that the first-filed action be given preference absent special circumstances. See *Genentech v. Eli Lilly & Co.,* 998 F.2d 931, 937 (Fed.Cir.1993). The first-filed doctrine also serves to prevent a multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising from common matters. See *id.* at 937. This doctrine applies equally well

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 265094 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 2

where the first-filed action is one for a declaratory judgment. *See id. at 938* (noting that, where the declaratory action can resolve the various issues, a first-filed declaratory action is entitled to precedence as against a later-filed patent infringement action.)

*2 Applying the first-filed rule, IDEC argues that the present case should be transferred to the Southern District of California. Notwithstanding that the cases at issue are "mirror image" cases where the court is asked to construe the same patents, Corixa argues that the first-filed rule is inapplicable to the present situation.

Corixa first argues that GSK has not been joined in the California litigation. The record before the court indicates that GSK is Coulter's licensee. It is unclear whether GSK is an exclusive licensee. However, even were the court to accept Corixa's argument that GSK is an exclusive licensee, that alone does not indicate that GSK is a necessary party to this litigation. Corixa concedes that GSK is a licensee with fewer than all substantial rights. As such, GSK, while likely a proper party to the California lawsuit, is not a necessary party. *See Intellectual Property Development, Inc. v. TCI Cablevision of California, Inc., 248 F.3d 1333, 1348 (Fed.Cir.2001)* (holding that an exclusive licensee possessing fewer than all substantial rights may not sue in its own name without joinder of the patent owner.) Finally, to the extent that the parties believe that GSK is a necessary party, GSK may request permission to join the California litigation.[FN3]

> FN3. Corixa expresses concern over whether the California court has subject-matter jurisdiction over an action between IDEC and GSK. As it is not the court's province to determine another court's subject matter jurisdiction, the court expresses no opinion on this.

Corixa next argues that the first-filed rule is inapplicable to the present situation because IDEC improperly "raced to the courthouse" in order to file its motion in California. In support of this contention, Corixa points out that its right to file an infringement suit against IDEC did not ripen until after ODAC recommended that the FDA approve Zevalin. However, before ODAC publicly recommended approval, but after IDEC had reason to believe they would do so, IDEC "raced" to file its declaratory judgment action.

The court acknowledges that IDEC's filing seems providential since ODAC's recommendation became public the day after IDEC filed its suit. In its November 6, 2001 Order, however, the California court specifically found that IDEC possessed a reasonable apprehension of suit when it filed its declaratory judgment action. The California court continued by stating that, "an actual controversy existed when IDEC filed the complaint under consideration. Consequently the [c]ourt finds that IDEC's filing suit was not motivated by "forum shopping alone," but rather was a legitimate exercise of its opportunity under the Declaratory Judgment Act ...." This court sees no reason to disagree with the California court's findings.

Given the information presently before it, the court concludes that having two separate trials in mirror image cases would defeat the purposes of the first-filed rule, namely, sound judicial administration and comity among federal courts of equal rank. *See EEOC v. University of Pennsylvania, 850 F.2d 969, 971 (3d Cir.1988)*. Accordingly, the court finds that the application of the rule weighs heavily in favor of transferring this case to the Southern District of California.

B. Section 1404(a)

*3 Transfer to the Southern District of California is also mandated under a section 1404(a) analysis. Section 1404(a) provides that "[f]or the convenience of [the] parties and [the] witnesses, in the interest of justice," the court may transfer this action to "any other district where it might have been brought." 28 U.S.C. § 1404(a). There is no dispute that this action could have been filed in the Southern District of California. The court will, therefore, move on with inquiry as directed by the Third Circuit. *See Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir.1995)*.

In *Jumara,* the Third Circuit provided a list of factors to assist the district courts in determining "whether, on balance, the litigation would more conveniently proceed and the interests of justice [would] be better served by a transfer to a different forum." *Id.* These factors include six private

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 3
Not Reported in F.Supp.2d, 2002 WL 265094 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

and five public interests which the court may consider. *See id.*

### 1. The Private Interests

The private interests most relevant to this case include: (1) the convenience of the parties as indicated by their relative physical and financial position; (2) the convenience of the witnesses, but only to the extent that they may be unavailable for trial in one of the fora; and (3) the location of records and other documents, again, only to the extent that these files cannot be produced in the alternate forum. FN4

> FN4. For the reasons the court discussed in a previous opinion, it will not afford any weight to the first three *Jumara* factors, specifically, the plaintiff's initial choice of forum, the defendant's preferred venue, and whether the claim arose elsewhere. *See Affymetrix, Inc. v. Synteni, Inc., 28 F.Supp.2d 192, 197-201 (D.Del.1998).* In not affording weight to these factors, the court avoids the risk of double-counting these interests and thereby throwing off the transfer analysis. *See id.* Instead, the court will consider whether the Southern District of California is a more convenient forum for the parties and the witnesses, while also serving the interests of justice. *See 28 U.S.C. § 1404(a).*

#### a. The Convenience of the Parties

Geographically, California is not more inconvenient for the parties than Delaware. Michigan must travel whether the suit is in California or Delaware. GSK is one of the world's largest pharmaceutical companies, and cannot complain about location. The remainder of the parties are based on the West Coast. Furthermore, transfer to California would reduce the overall inconvenience to all parties involved. The parties must already be prepared to litigate the related case currently pending in the Southern District of California. Bringing witnesses and relevant documents to only one location, here California, minimizes the level of disruption caused to all parties by the litigation. This is certainly a more economical and efficient result than having each party moving witnesses and documents between two states, depending on which of these related actions is being litigated at that time. Thus, this factor weighs in favor of transfer.

#### b. The Convenience of Witnesses

Party witnesses or witnesses who are employed by a party carry no weight in the "balance of convenience" analysis since each party is able, indeed obligated, to procure the attendance of its own employees for trial. *See Affymeytrix, 28 F.Supp.2d at 203.* Expert witnesses or witnesses who are retained by a party to testify carry little weight in determining where the "balance of convenience" lies because they are "usually selected [on the basis] of their reputation and special knowledge without regard to their residences and are presumably well compensated for their attendance, labor and inconvenience, if any." *See id.* (internal citations omitted). Fact witnesses who possess first-hand knowledge of the events giving rise to the lawsuit, however, have traditionally weighed quite heavily in the "balance of convenience" analysis. *See id.*

*4 There is no evidence on the record that would indicate that Delaware would be an inconvenient forum for potential non-party witnesses. However, the court notes that all the material witnesses in this dispute, party or otherwise, will be in California already to litigate the related matter now pending in the Southern District of California. Requiring that they come to Delaware to litigate this action separately cannot be considered convenient and in the interest of justice. However, as there is no clear evidence that a non-party witness will be unable to attend trial in Delaware, this factor must weigh against transfer.

#### c. The Location of Records and Other Documents

The technological advances of recent years have significantly reduced the weight of this factor in the "balance of convenience" analysis. *See id.* at 205. There is no indication that either party would be unable to produce the relevant records and documents in Delaware. Thus, because this factor is relevant only insofar as the documents would be unavailable in one forum, the court finds that this factor must weigh against transfer.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 265094 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 4

From a practical standpoint, however, the court notes that any relevant documents will already be in California for the litigation of that case. The court sees no need to require that the parties move the same documents across the country. Rather, it would be much more efficient to litigate these related actions in one location. However, these considerations are more relevant to the first factor discussed *supra.*

### 2. The Public Factors

As other courts have noted, depending on the circumstances of the case, some of the "public interest" factors listed in *Jumara* may play no role in the "balance of convenience." *See id.* at 205. The court thus elects to discuss only the factors most relevant to the pending case.

#### a. Practical Considerations Making Trial Easy, Expeditious or Inexpensive

This factor appears to substantially repeat the "first-filed" analysis advanced by IDEC, and accepted by the court, in Section III .A, *supra.* As such, the court declines to further address this issue here, since it has already taken this argument into consideration.

#### b. Delaware's Interest in this Controversy

Three of the parties in this action are Delaware corporations. However, while the court is mindful of Delaware's interest, that alone will not tip the "balance of convenience" in its favor. This is so because the court can hardly describe the patents as a local controversy unique to Delaware. *See Affymetrix,* 28 F.Supp.2d at 207. Instead, the patents deal with the treatment of lymphoma. This clearly has far-reaching implications. Accordingly, this factor does not weigh against transferring this case to California.

#### c. Collective Travel Time and Cost

A mirror image action is currently pending in California. Thus, to require the parties to simultaneously litigate virtually the same case on different coasts would certainly increase the collective travel time and cost. Thus, this factor weighs in favor of transfer.

### IV. CONCLUSION

*5 The court concludes that the "balance of convenience" tips strongly in favor of transferring this action to the Southern District of California.

For these reasons, IT IS HEREBY ORDERED that:
1. IDEC's alternative motion to transfer this action to the Southern District of California (D.I.8) is GRANTED.
2. The above-captioned matter is hereby TRANSFERRED to the United States District Court for the Southern District of California.

D.Del.,2002.
Corixa Corp. v. IDEC Pharmaceuticals Corp.
Not Reported in F.Supp.2d, 2002 WL 265094 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:01CV00615 (Docket) (Sep. 12, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.