**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

PFIZER INC.,

               Plaintiff,

     v.

TEVA PHARMACEUTICALS USA and
TEVA PHARMACEUTICAL INDUSTRIES
LTD.

               Defendants.

Civil Action No. 06-89 (GMS)

**REPLY BRIEF OF DEFENDANTS TEVA PHARMACEUTICALS USA, INC.
AND TEVA PHARMACEUTICAL INDUSTRIES LTD.
IN SUPPORT OF THEIR MOTION TO TRANSFER VENUE
TO THE SOUTHERN DISTRICT OF NEW YORK PURSUANT TO 28 U.S.C. § 1404(a)**

Mary B. Matterer
MORRIS, JAMES, HITCHENS & WILLIAMS LLP
222 Delaware Avenue, 10th Floor
P.O. Box 2306
Wilmington, DE 19899-2306
Tel.: (302) 888-6960
Fax: (302) 571-1750

*Counsel for Defendants Teva Pharmaceuticals
USA, Inc. and Teva Pharmaceutical Industries Ltd.*

*Of Counsel*:
Steven J. Lee
Elizabeth J. Holland
Sheila Mortazavi
Cynthia Lambert Hardman
KENYON & KENYON LLP
One Broadway
New York, NY 10004
Tel.: (212) 425-7200
Fax: (212) 425-5288

Date: March 16, 2006

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................. 1

II.   ARGUMENT ....................................................................................... 4

      A.    The Pending New York Action Weighs Heavily In Favor of
            Transfer to the Southern District of New York ............................ 4

            1.    Judge Preska Has Determined That This Case Is Related
                  to the New York Action.................................................... 4

            2.    Pfizer's Claim That the New York Action Involves An
                  Unrelated Patent and Different Accused Products Is Baseless....... 6

            3.    The New York Action Is Still Pending And
                  Judge Preska Will Be Considering Technical Issues
                  Relevant to This Case ...................................................... 7

      B.    Pfizer Has Failed to Rebut That the Southern District of New York Is A
            More Convenient Forum..................................................................... 9

            1.    Teva USA Does Not Sell the Accused Products In Delaware........ 9

            2.    Incorporation of Two of the Parties In Delaware Is
                  Insufficient to Deny Transfer......................................... 10

            3.    Unrelated Litigations In Delaware Are Insufficient
                  to Deny Transfer ........................................................ 10

            4.    The Southern District of New York Is More Convenient
                  For All Involved.......................................................... 11

      C.    Whether or Not Teva Filed Counterclaims In Its Answer In This Action
            Does Not Affect the Transfer Ananlysis................................... 12

      D.    Pfizer Engaged In Forum Shopping..................................... 14

III.  CONCLUSION.................................................................... 15

## TABLE OF AUTHORITIES

**Cases**                                                          **Pages**

*3COM Corp. v. D-Link Sys.,*
    No. 03-014, 2003 U.S. Dist. LEXIS 7120 (D. Del. Apr. 25, 2003)...................... 10

*Allergan v. Alcon Labs,*
    No. 02-1682, 2003 U.S. Dist. LEXIS 2564 (D. Del. Feb. 25, 2003)................ 9, 10

*At Home Corp. v. Cox Communications, Inc.,*
    No. 02-1486, 2003 U.S. Dist. LEXIS 18320 (D. Del. Oct. 8, 2003) .................... 14

*Bayer Bioscience N.V. v. Monsanto,*
    No. 03-023, 2003 U.S. Dist. LEXIS 4594 (D. Del. Mar. 25, 2003) ................ 9, 10

*Bell Telephone Laboratories, Inc. v. IBM Corp.,*
    630 F. Supp. 373 (D. Del. 1984)......................................................... 11, 12, 13, 14

*Equal Employment Opportunity Comm'n v. University of Pa.,*
    850 F.2d 969 (3d Cir. 1988)............................................................................... 13

*Original Creatine Patent Co. v. Kaizen,*
    No. 02-471, 2003 U.S. Dist. LEXIS 988 (D. Del. Jan. 22, 2003) ........................ 11


**Statutes**

28 U.S.C. §1404(a) ............................................................................................... 1, 4, 13


**Treatises**

Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3844........... 6

## I.    INTRODUCTION

In their Opening Brief (D.I. 9), defendants Teva Pharmaceuticals USA, Inc. ("Teva USA") and Teva Pharmaceutical Industries Ltd. ("Teva Ltd.") (collectively, "Teva") demonstrated that transfer of this action to the Southern District of New York is warranted under 28 U.S.C. §1404(a) because it would serve the interests of justice and would be convenient for the parties and witnesses.  Plaintiff Pfizer, Inc.'s ("Pfizer") Answer Brief (D.I. 18), provides no reason for this Court to conclude otherwise.

The most significant factor weighing in favor of transfer is the related patent infringement action between Teva USA and Pfizer that has been pending before Judge Loretta A. Preska of the Southern District of New York for over two years (the "New York Action").  While Pfizer attempts to portray that case as having little in common with the current action, it does not, and, indeed, cannot, deny the following key facts:

- Both actions concern Teva's generic azithromycin products manufactured pursuant to ANDA Nos. 65-153, 65-193 and 65-150 ("Teva's ANDAs").

- The patent in suit in each action claims a crystalline form of the drug azithromycin.

- The issue of infringement in each action depends upon the identity of the crystalline form of azithromycin contained in Teva's generic azithromycin products.

- Both actions involve the same scientific and technological issues, including polymorphism of molecular crystals and the analytical techniques used to identify and quantify crystalline forms of compounds, and the parties

submitted extensive briefing on these issues to Judge Preska over five months ago.

These undisputed facts establish that transfer of this action to the Southern District of New York would result in a significant conservation of judicial resources, and would therefore further the interests of justice.

Notwithstanding the fact that this action and the New York Action involve the same parties, the same accused products, similar azithromycin crystal form patents, and the same basic technology, Pfizer argues that transfer to the Southern District of New York would not promote the interests of justice because the New York Action is "effectively closed as to the merits" (D.I. 18 at 3), and "it is likely that Judge Preska never familiarized herself with the briefed issues." (*Id.* at 7.) Pfizer's argument is specious.

Pfizer fails to acknowledge in its brief that Judge Preska has already determined that she should preside over the parties' current dispute with respect to U.S. Patent No. 6,977,243 (the "'243 sesquihydrate patent") because it is related to the pending New York Action. On February 24, 2006, after being fully informed about the present action, Judge Preska accepted assignment of the mirror-image declaratory judgment action on the '243 sesquihydrate patent filed by Teva USA and Teva Ltd. in the Southern District of New York ("Teva's DJ Action") as a "related case" to the New York Action. Significantly, Pfizer has not moved to dismiss Teva's DJ Action. On the contrary, it answered the complaint on March 7, 2006, and interposed counterclaims.

Pfizer also does not seriously challenge that the Southern District of New York would be a more convenient forum for all involved, and that Delaware bears little

relation to this case. Pfizer does not dispute that Delaware is not its home turf, and that it has no facilities or employees located in Delaware. It likewise does not deny that no work was done in Delaware on either the patent in suit or the accused products, and that neither party has potential witnesses or documents located in Delaware. Pfizer's argument that it would be possible for Israeli witnesses, through a combination of planes, trains and automobiles, to eventually find their way to Delaware certainly does not demonstrate that Delaware is a convenient forum for these witnesses.

Tellingly, the only reasons that Pfizer could offer for bringing this suit in Delaware are that it is incorporated in Delaware; has relationships with Delaware attorneys; and has previously litigated patent cases in Delaware. (D.I. 18 at 12.) These generic reasons for choosing Delaware as the forum for this litigation, however, would be equally applicable, if not more applicable, to the Southern District of New York. Pfizer's headquarters are in New York; it has litigated over one thousand cases in the Southern District of New York; and it has relationships with New York patent counsel, including counsel that it retained for the New York Action. Moreover, there is no dispute that Pfizer could have filed this action in the Southern District of New York. Pfizer's rationale for its choice of forum therefore fails to address the real question here: Why did Pfizer bring this *particular* patent infringement action in Delaware when it has been litigating substantially similar issues in the New York Action for over two years, and when Delaware admittedly has no connection to the underlying facts in this case?

Teva submits that Pfizer's motive is clear. Pfizer does not want its dispute with Teva USA and Teva Ltd. concerning its '243 sesquihydrate patent to be heard by the same court hearing the New York Action. Pfizer has not denied that it will

be taking positions in this case that are inconsistent with positions it has taken in the New York Action. In particular, Pfizer maintained for over two years in the New York Action that Teva's azithromycin products contain azithromycin dihydrate, but is now arguing in this case that those same tablets contain, instead, azithromycin sesquihydrate. Pfizer well knows that Judge Preska will be in the best position to evaluate those inconsistencies. Moreover, Judge Preska is aware of Pfizer's litigation conduct in the New York Action, and has already granted Teva leave to file a motion for attorneys' fees.

For these reasons, Teva's motion should be granted, and this case should be transferred to the Southern District of New York pursuant to 28 U.S.C. §1404(a).

## II.    ARGUMENT

### A.    The Pending New York Action Weighs Heavily In Favor of Transfer to the Southern District of New York

In its Answer Brief, Pfizer claims that "[t]he interests of justice are not promoted by transferring this case to New York." (D.I. 18 at 3.) As set forth below, Pfizer's argument is without merit.

#### 1.    Judge Preska Has Determined That This Case Is Related to the New York Action

Pfizer does not dispute that the parties submitted extensive briefing to Judge Preska in the New York Action concerning "the same complex technological issues that will be relevant in the present action." (D.I. 18 at 15.) Instead, Pfizer attempts to minimize the significance of this fact by arguing that Judge Preska "most likely never addressed the actual merits of any of the underlying issues." (*Id.*) This is mere speculation on Pfizer's part. Judge Preska has held several conferences with the parties over the more than two years of litigation in which the relevant technological issues were discussed. (*See* Supplemental Declaration of Cynthia Lambert Hardman in Support of

4

Teva's Motion to Transfer, filed herewith ("Hardman Supp. Dec."), ¶ 2.)  Moreover, the parties filed their summary judgment motions almost five months before Pfizer finally conceded that Teva's azithromycin products do not infringe its patent on azithromycin dihydrate.  (D.I. 13, Declaration of Cynthia Lambert Hardman in Support of Teva's Motion to Transfer, filed on February 23, 2006 ("Hardman Dec."), ¶¶ 6-7.)

Significantly, Judge Preska has already determined that the parties' dispute with respect to Pfizer's '243 sesquihydrate patent is related to the New York Action.  On February 14, 2006, when Teva USA and Teva Ltd. filed their DJ Action in the Southern District of New York, they indicated on the Civil Cover Sheet that the newly-filed case was related to the New York Action pending before Judge Preska.  (Hardman Supp. Dec. ¶ 3 and Ex. J.)  As required by Local Rule in the Southern District of New York, Teva USA and Teva Ltd. also submitted a "Statement of Related Case," which explained why Teva's DJ Action was related to the New York Action.  (Hardman Supp. Dec. ¶ 3 and Ex. K.)

Furthermore, on February 17, 2006, Judge Preska held a teleconference with counsel in the New York Action during which the current action and Teva's DJ Action were discussed.  (Hardman Supp. Dec. ¶¶ 5-6.)  On February 24, 2006, after reviewing the complaint and Statement of Related Case in Teva's DJ Action, and after discussing the '243 sesquihydrate litigation with the parties, Judge Preska accepted Teva's DJ Action as a related case to the New York Action.  (*Id.* at ¶ 7 and Exs. M-N.)

Pfizer's argument that Teva "should have filed a motion to enjoin Pfizer in the Teva DJ Action raising the same argument that it raises here" (D.I. 18 at 16-17) is therefore highly disingenuous.  As Pfizer is aware, Teva did inform Judge Preska about

this transfer motion, and Judge Preska had an opportunity to weigh Teva's arguments regarding the relatedness of the cases. (Hardman Supp. Dec. ¶¶ 3-6.) In the end, Judge Preska decided to accept Teva's DJ Action as a related case. (Hardman Supp. Dec. ¶ 7 and Exs. M-N.)[1]

Moreover, it is plainly Pfizer, not Teva, that is trying to avoid having Judge Preska decide whether this action should go forward in New York or Delaware. Pfizer did not move to dismiss Teva's DJ Action, deciding instead to answer the complaint and interpose counterclaims. (Hardman Supp. Dec. ¶ 8.)

Finally, Pfizer's argument that this Court "'is amply qualified to ... familiarize itself' with technological issues" (D.I. 18 at 15) misses the point. This Court should not have to expend its resources familiarizing itself with the complex technology at issue in this case when another federal court has been doing so for over two years, and has already indicated that it is prepared to hear the current dispute.

## 2.    Pfizer's Claim That the New York Action Involves An Unrelated Patent and Different Accused Products Is Baseless

Pfizer also argues that "even if Judge Preska did review [the parties' summary judgment] briefs, there is very little that would be applicable to the issues in this case." (D.I. 18 at 7.) In particular, Pfizer claims that the patent at issue in the New York Action is "unrelated" to the patent at issue in this case (D.I. 18 at 4-5), and that the New York Action involves a "different accused product." (D.I. 18 at 6.) Pfizer is wrong on both counts, as demonstrated by Judge Preska's determination, discussed above, that the cases are related.

---

[1]  Pfizer cannot seriously dispute that, as a matter of civil procedure, Teva proceeded properly by making its motion to transfer in this Court. *See, e.g.,* Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3844.

Moreover, Pfizer uses the term "unrelated" in its Answer Brief in the technical patent prosecution sense of "not aris[ing] from a common parent application." (*Id.* at 5.) The fact that Pfizer's patents are not related in that highly technical way is completely irrelevant to the issue on this motion, which is whether transfer would result in a conservation of judicial resources. Pfizer does not, and cannot, deny that both patents claim crystalline forms of azithromycin; are directed to the same technology; and require the same proof of infringement.[2]

Pfizer's argument that the accused products in the two cases are different is likewise incorrect. According to Pfizer, the accused products in the New York Action are the products "defined by Teva's ANDA specifications" whereas the accused products in the current action are Teva's "actual, commercially marketed, generic azithromycin products." (*Id.* at 6.) This is pure semantics. Teva's commercial products and the products "defined by Teva's ANDA specifications" are one and the same. As Pfizer knows, the FDA approved Teva's commercial products based on the specifications in its ANDAs, and Teva's commercial products must continue to meet those specifications.

### 3.  The New York Action Is Still Pending and Judge Preska Will Be Considering Technical Issues Relevant to This Case

In its Answer Brief, Pfizer does not accurately represent to this Court the status of the New York Action. At page 5 of its brief, Pfizer asserts that "[b]ecause Pfizer granted Teva covenants not to sue, all of the parties' claims and counterclaims related to the merits of the infringement and validity of the patents in suit were dismissed/denied as moot." (D.I. 18 at 5.) Pfizer is mistaken.

---

[2] Pfizer also claims that U.S. Patent No. 5,605,889, which had been at issue in the New York Action, is unrelated to the patent in suit in this case. (D.I. 18 at 5.) Pfizer, however, granted Teva a covenant not to sue on that patent over a year ago, and it was therefore not the subject of any substantive briefing to the court. (D.I. 13, Hardman Dec. ¶ 4.)

7

Pfizer did seek permission to make a motion to dismiss in the New York Action, but Judge Preska did not grant that request. In particular, during the February 17, 2006 teleconference, Judge Preska asked Pfizer's counsel whether Pfizer intended to use an order of dismissal in the New York Action as a basis for opposing transfer of this action to the Southern District of New York. (Hardman Supp. Dec. ¶ 6.) When Pfizer's counsel failed to agree not to do so, Judge Preska did *not* dismiss the New York Action, but instead simply ordered that "the parties' motions for discovery and summary judgment (docket nos. 35 and 37) are denied as moot," and that Teva USA could move for attorneys' fees. (Hardman Supp. Dec. ¶ 6; D.I. 13, Hardman Dec. Ex. F.)

Moreover, Pfizer is incorrect when it argues that "Teva's § 285 [attorneys' fees] claim does not depend on the same issues that will be addressed in this case." (D.I. 18 at 6.) Teva USA's attorneys' fees motion was filed on March 15, 2006, and incorporates by reference papers that were filed in support of the parties' summary judgment motions in the New York Action. (Hardman Supp. Dec. ¶ 9.) Teva USA's attorneys' fees motion depends heavily upon the analytical testing of Teva's azithromycin products that Teva and Pfizer performed in connection with the New York Action, and the conclusions that can reasonably be drawn from each of the analytical techniques that were used. (*Id.*; D.I. 13, Hardman Dec. ¶ 6.) These same issues will undoubtedly be critical in the current action. Transfer of this case to the Southern District of New York will therefore remove the possibility of inconsistent findings.

In sum, contrary to Pfizer's assertions, judicial economy strongly favors transfer of this action to the Southern District of New York, as the pending New York Action involves related patents, the same technology, and the same accused products.

8

Transfer would be consistent with the outcomes of factually similar cases – such as *Allergan* and *Bayer* – which Pfizer has failed to meaningfully distinguish. *Allergan, Inc. v. Alcon Labs., Inc.*, No. 02-1682, 2003 U.S. Dist. LEXIS 2564 (D. Del. Feb. 25, 2003) (copy attached hereto); *Bayer Bioscience N.V. v. Monsanto*, No. 03-023, 2003 U.S. Dist. LEXIS 4594 (D. Del. Mar. 25, 2003) (copy attached hereto).

**B.      Pfizer Has Failed to Rebut that the Southern District of New York Is A More Convenient Forum**

Pfizer has acknowledged that Delaware is not its home turf and that none of the parties have any documents, witnesses, or facilities located in Delaware. (D.I. 18 at 13, 20.) The only connections between this action and Delaware that Pfizer points to in its Answer Brief are: (1) the alleged sale of the accused products in Delaware; (2) the incorporation of two of the parties in Delaware; and (3) the parties' unrelated litigations in Delaware. (*Id.* at 12-14.) Pfizer's arguments do not warrant a denial of transfer in this case.

**1.      Teva USA Does Not Sell the Accused Products in Delaware**

Pfizer is incorrect when it asserts that Teva sells the accused products in Delaware. (*Id.* at 13-14.) It does not. While Teva USA admitted in its Answer that it sells the accused products in the United States, it specifically denied Pfizer's allegations that the products are sold in Delaware. (D.I. 15, ¶¶ 36-37.) Teva Ltd. likewise admitted, on information and belief, that Teva USA sells the accused products in the United States, but denied Pfizer's allegations that the products are sold in Delaware. (D.I. 25, ¶¶ 36-37.)

9

2.    **Incorporation of Two of the Parties In Delaware Is Insufficient to Deny Transfer**

Pfizer never adequately addresses the cases cited in Teva USA and Teva

Ltd.'s Opening Brief that have found that incorporation of one or more of the parties in

Delaware is of no great significance in the transfer analysis where, as here, there are no

other meaningful connections to Delaware. *See, e.g., Bayer*, 2003 U.S. Dist. LEXIS

4594, at *6 (granting motion to transfer and noting that "while the defendant is a

Delaware entity, and should reasonably expect to litigate in this forum, there is little

connection between Delaware and this action or the parties"); *Allergan*, 2003 U.S. Dist.

LEXIS 2564, at *5 (same). *See also 3COM Corp. v. D-Link Sys., Inc.*, No. 03-014, 2003

U.S. Dist. LEXIS 7120, at *4 (D. Del. Apr. 25, 2003) (copy attached hereto) (transfer

granted even though plaintiff was a Delaware corporation, as it neither maintained nor

owned any facility, property, or personnel in Delaware). Pfizer provides no rationale for

why the outcome should be any different in this case.

3.    **Unrelated Litigations In Delaware Are Insufficient to Deny Transfer**

The fact that Pfizer, Teva USA and Teva Ltd. have each been previously

involved in litigation in Delaware should be given little weight in the transfer analysis. If

that were the criterion to be used, then the Southern District of New York would be the

overwhelmingly more convenient jurisdiction. While Pfizer asserts that, since 1983, it

"has been a party to 79 District of Delaware litigations" (D.I. 18 at 12), it neglects to

inform the Court that, during that same period of time, it was a party to over *1000*

litigations in the Southern District of New York. (Hardman Supp. Dec. ¶ 10 and O.) The

important fact here is that none of the 79 Delaware cases to which Pfizer has been a party

10

involved Teva's azithromycin products and Pfizer's crystal form patents, as the New York Action does.

Pfizer's argument that "Teva demands the case be transferred a couple of hours up the road" and that "[c]ourts often deny such requests outright" is likewise beside the point.[3] The fact that New York is only a couple of hours away from Delaware is irrelevant to the analysis in this case, because, although New York is a particularly convenient forum for all parties, Teva's motion is not based primarily on geographic convenience. The most significant factor weighing in favor of transfer is the fact that another district court is already considering substantially similar issues to those raised by Pfizer in this case. In terms of conservation of judicial resources, it makes no difference how close that other court is to Delaware.

4. **The Southern District of New York is More Convenient For All Involved**

As stated in Teva's opening brief, this is not a case where transfer would merely shift the inconvenience from one side to another. Rather, New York is the more convenient forum for all parties. *See, e.g., Original Creatine Patent Co. v. Kaizen*, No. 02-471, 2003 U.S. Dist. LEXIS 988, at *10 (D. Del. Jan. 22, 2003) (copy attached hereto) (transferring case to California and noting that "Delaware is inconvenient for everyone.").

Pfizer's Answer Brief does not prove otherwise. The Southern District of New York is plainly the more convenient forum for Pfizer, as its corporate headquarters are located there, and it does not dispute that its relevant witnesses are likely located in

---

[3]     As demonstrated by one of the cases that Pfizer relies on its Answer Brief, the distance between the transferor and transferee courts is not an impediment to transfer. *See Bell Telephone Laboratories, Inc. v. IBM Corp.*, 630 F. Supp. 373, 377 (D. Del. 1984) (balance of convenience favors transfer from Delaware to New Jersey "despite the relatively short distance involved." (cited by Pfizer in D.I. 18 at 10-11).

New York and Connecticut.  Curiously, Pfizer fails to address or even acknowledge the

fact that some of the attorneys involved in the prosecution of the '243 sesquihydrate

patent before the U.S. Patent & Trademark Office worked in Pfizer's New York Patent

Department located in midtown Manhattan (D.I. 13, Hardman Dec. Ex. H), and that New

York would obviously be a more convenient forum for these witnesses.  Pfizer does,

however, acknowledge that the named inventors of the '243 sesquihydrate patent are

located in Connecticut.  (D.I. 18 at 20.)  These Connecticut witnesses would have to

travel twice as far to get to Delaware.  (D.I. 13, Hardman Dec. ¶ 12.)

   Moreover, although Pfizer spends a considerable portion of its brief

attempting to show that it is no more difficult for Israeli witnesses to get to Delaware than

to the Southern District of New York, that is clearly not the case.  Pfizer concedes that

the only direct flights from Israel to the United States arrive at Newark International

airport, which is only 12.5 miles from the Southern District of New York, but 114 miles

away from the District of Delaware.  (Hardman Supp. Dec. ¶ 11 and Ex. P.)  If the Israeli

witnesses were to change planes in Europe in order to fly into an airport closer to

Delaware, as Pfizer suggests, they would also have to spend anywhere between 3 hours to

33 hours in airports waiting for connecting flights.  (*Id.* at ¶ 12.)  It therefore cannot

reasonably be disputed that Delaware is a much less convenient forum than New York for

these witnesses.

  **C.**  **Whether or Not Teva Filed Counterclaims In Its Answer In This**
    **Action Does Not Affect the Transfer Analysis**

   Pfizer cites *Bell Telephone Laboratories, Inc. v. IBM Corp.*, 630 F. Supp.

373 (D. Del. 1984), for the proposition that Teva's filing of a mirror image declaratory

judgment action in New York, in lieu of asserting counterclaims in this action, "means

the Delaware action has priority" and "takes precedent" [sic] over Teva's declaratory judgment action in New York. (D.I. 18 at 20.) The *Bell* court, however, merely followed the general "first-filed" rule. *Id.* at 379 ("[N]ormally, the first suit should have priority, absent a showing of a balance of convenience in favor of the second action.").

In this case, Teva is not claiming that this case should be transferred because Teva's DJ Action was the first-filed case. Rather, Teva seeks transfer to the Southern District of New York under §1404(a) based on the existence of the related New York Action. Unlike Bell, who had "brought a new action in a forum that has little, if any, connection with the subject matter of [its] litigation," *id.* at 377, Teva seeks transfer in this case in order to *return* this case to a forum familiar with the subject matter of the litigation.

Moreover, there are well-recognized exceptions to the first-filed rule that are clearly applicable here, such as bad faith and forum shopping. *See, e.g., Equal Employment Opportunity Comm'n v. University of Pa.*, 850 F.2d 969, 972 (3d Cir. 1988) (bad faith and forum shopping are two of the exceptions justifying departure from the "first filed" rule).

As mentioned in section II.B.3. of this brief, the *Bell* court's analysis actually supports arguments made by Teva in its Opening Brief. The *Bell* court's decision to transfer the action initiated by Bell in Delaware was due, in part, to the fact that Bell had not sued on its "home turf." 630 F. Supp. at 375-76. The *Bell* court also took into account the fact that, despite the incorporation of some of the parties in Delaware, Delaware had no real connection with the subject matter of the litigation. *Id.* at 377. In addition, the court found that Delaware inconvenienced one party, and

13

provided no additional convenience for anyone. *Id.* Accordingly, the court held that the balance of conveniences favored transfer to New Jersey "despite the relative short distance involved." *Id.* at 376. The instant action should be similarly transferred for those same reasons, as well as the others discussed herein.

### D.     Pfizer Engaged In Forum Shopping

Despite Pfizer's protestations to the contrary, it is clear that Pfizer brought this suit in Delaware to avoid having Judge Preska preside over the case, and not for any legitimate reason. Pfizer does not, and cannot, dispute that its arguments in this case are inconsistent with those that it made before Judge Preska in the related New York Action, or that Judge Preska is aware of those inconsistencies.

Moreover, the very reasons that Pfizer proffers for bringing this case in Delaware suggest that the action should have been brought in New York. Pfizer is located in New York, has litigated there on numerous occasions, and undoubtedly has relationships with New York counsel, including the attorneys that litigated on its behalf in the New York Action. (Hardman Supp. Dec. ¶ 10 and Ex. O.)

Pfizer's blatant forum shopping in this case warrants transfer. *At Home Corp. v. Cox Communications, Inc.*, No. 02-1486, 2003 U.S. Dist. LEXIS 18320, at *6 (D. Del. Oct. 8, 2003) (copy attached hereto) (transfer warranted "when a court finds or it appears based on the circumstances that a party is making an effort at forum shopping").

14

## III.     CONCLUSION

For the reasons set for the above and in their Opening Brief, defendants Teva USA and Teva Ltd. respectfully urge the Court to grant their motion and transfer this case to the Southern District of New York where it belongs.

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

Dated: March 16, 2006          By: _____

Mary B. Matterer
222 Delaware Avenue, 10th Floor
P.O. Box 2306
Wilmington, DE  19899-2306

*Counsel for Defendants Teva Pharmaceuticals USA, Inc. and Teva Pharmaceutical Industries Ltd.*

*Of Counsel:*
Steven J. Lee
Elizabeth J. Holland
Sheila Mortazavi
Cynthia Lambert Hardman
KENYON & KENYON LLP
One Broadway
New York, NY 10004
Tel.: (212) 425-7200
Fax:  (212) 425-5288

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of March, 2006, I electronically filed the foregoing document, **REPLY BRIEF OF DEFENDANTS TEVA PHARMACEUTICALS USA, INC. AND TEVA PHARMACEUTICAL INDUSTRIES LTD. IN SUPPORT OF THEIR MOTION TO TRANSFER VENUE TO THE SOUTHERN DISTRICT OF NEW YORK PURSUANT TO 28 U.S.C. § 1404(a),** with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Rudolf E. Hutz
Connolly Bove Lodge & Hutz LLP
1007 N. Orange Street
Wilmington, DE 19801


Additionally, I hereby certify that on the 16th day of March, 2006, the foregoing document was served as indicated:

**VIA HAND DELIVERY**
Rudolf E. Hutz, Esq.
Daniel C. Mulveny, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
Wilmington, DE  19801


Dated: March 16, 2006          By:_____ */s/ Mary B. Matterer*_____
                                      Mary B. Matterer (#2696)
                                      MORRIS JAMES HITCHENS & WILLIAMS LLP
                                      222 Delaware Avenue, 10th Floor
                                      Wilmington, DE  19899-2306
                                      (302) 888-6800
                                      mmatterer@morrisjames.com

                                      *Counsel for Defendant*
                                      *Teva Pharmaceutical Industries Ltd.*

LEXSEE

**3COM CORPORATION, Plaintiff v. D-LINK SYSTEMS, INC., Defendant.**

**C.A. No. 03-014 GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**2003 U.S. Dist. LEXIS 7120**

**April 25, 2003, Decided**

**DISPOSITION:** [*1] Defendant's motion to transfer case to United States District Court for Northern District of California granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff patent holder filed an action alleging infringement of three patents relating to network interface adapters. Defendant alleged infringer moved to transfer the case to the United States District Court for the Northern District of California pursuant to 28 U.S.C.S. § 1404(a).

**OVERVIEW:** Any federal district court possessed subject matter jurisdiction over federal patent law claims such as those at issue. Therefore, the instant court found that the case could have been brought in the other district. Further, venue was proper in the other district because the alleged infringer was a California corporation with its sole place of business in that state. The alleged infringer met its burden of demonstrating that transfer was appropriate. Neither of the parties maintained or owned any facility, property, or personnel in Delaware. The headquarters of both parties were located in California. Apparently, none of the acts related to the development of the accused products occurred in Delaware, while many, if not all, of these acts occurred in California. Litigating the case in the other district would have caused less disruption to the parties' business operations, while eliminating the cost and time of cross-country transportation. In addition, none of the anticipated third-party witnesses was subject to compulsory process in Delaware, but they could have been compelled to testify in the other district. The interests of justice and convenience supported a transfer.

**OUTCOME:** The alleged infringer's motion to transfer the case was granted.

**CORE TERMS:** convenience, northern, conveniently, fora, compulsory process, place of business, choice of forum, present action, better served, civil action, enforceability, movant, venue, compelled to testify, expediency, litigating

**LexisNexis(R) Headnotes**

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN1] 28 U.S.C.S. § 1404(a) provides that for convenience of the parties and witnesses, in the interest of justice, the court may transfer a civil action to any other district where it might have been brought. It is a movant's burden to establish the need for transfer, and the plaintiff's choice of venue will not be lightly disturbed.

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN2] When considering a motion to transfer pursuant to 28 U.S.C.S. § 1404(a), the court must determine whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum. This inquiry requires "a multi-factor balancing test" embracing not only the statutory criteria of convenience of the parties and witnesses and the interest of justice, but all relevant factors, including certain private and public interests. These private interests include a plaintiff's choice of forum; the defendant's preference; whether the claim arose elsewhere; and the location of books and record, to the extent that they could not be produced in the alternative forum. Among the relevant public interests are: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; and the public policies of the fora.

*Copyright Law > Civil Infringement Actions > Jurisdiction & Venue > Federal Court Jurisdiction*
*Civil Procedure > Venue > Special Venue*
*Patent Law > Infringement Actions > General Overview*
[HN3] See 28 U.S.C.S. § 1400(b).

**COUNSEL:** For 3COM Corporation, PLAINTIFF: John W Shaw, Young, Conaway, Stargatt & Taylor, Wilmington, DE USA.

For D-Link Systems Inc, DEFENDANT: John G Day, Steven J Balick, Ashby & Geddes, Wilmington, DE USA.

For D-Link Systems Inc, COUNTER-CLAIMANT: John G Day, Steven J Balick, Ashby & Geddes, Wilmington, DE USA.

For 3COM Corporation, COUNTER-DEFENDANT: John W Shaw, Young, Conaway, Stargatt & Taylor, Wilmington, DE USA.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory M. Sleet

**OPINION:**

### MEMORANDUM AND ORDER

## I. INTRODUCTION

On January 7, 2003, the plaintiff, 3Com Corporation ("3Com") filed the instant action alleging infringement of three patents relating to network interface adapters. The defendant, D-Link Systems, Inc. ("D-Link"), moves to transfer this case to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a) (D.I. 11). For the following reasons, the court will grant the defendant's motion.

## II. DISCUSSION

D-Link moves to [*2] transfer this action to the District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a). Section 1404(a) [HN1] provides that "for convenience of [the] parties and witnesses, in the interest of justice," the court may transfer a civil action "to any other district ... where it might have been brought." 28 U.S.C. § 1404(a). It is the movant's burden to establish the need for transfer, and 'the plaintiff's choice of venue [will] not be lightly disturbed.'

*Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir. 1995) (citations omitted).

[HN2] When considering a motion to transfer, the court must determine 'whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum.' *Id.* This inquiry requires "a multi-factor balancing test" embracing not only the statutory criteria of convenience of the parties and the witnesses and the interest of justice, but all relevant factors, including certain private and public interests. *Id.* at 875, 879. These private interests include the plaintiff's choice of forum; the [*3] defendant's preference; whether the claim arose elsewhere; and the location of books and record, to the extent that they could not be produced in the alternative forum. n1 *Id.* at 879. Among the relevant public interests are: "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; [and] the public policies of the fora." *Id.* at 879-80 (citations omitted).

> N1 The first three of these private interest collapse into other portions of the *Jumara* analysis. The court, therefore, will consider them in the context of the entire inquiry only. *See Affymetrix, Inc. v. Synteni, Inc. and Incite Pharmaceuticals, Inc.,* 28 F. Supp. 2d 192 (D. Del. 1998).

Upon consideration of these factors, the court finds that D-Link has met its burden of demonstrating that transfer [*4] is appropriate. First, it is clear that this case could have been brought in the Northern District of California. Any federal district court possesses subject matter jurisdiction over federal patent law claims such as those at issue in the present action. 28 U.S.C. §§ 1331 and 1338. Further, venue is proper in the Northern District of California because the defendant is a California corporation with its sole place of business in that state. 28 U.S.C. § 1400(b) ( [HN3] "Any civil action for patent infringement may be brought in the judicial district where the defendant resides ....").

Having determined that the case could be properly heard in the Northern District of California, the court now considers whether it would more conveniently proceed in that forum and whether the interest of justice supports a transfer to that district. Again, the court finds that these criteria are met. First, the court notes that although 3Com is a Delaware corporation, its principal place of business is in Santa Clara, California. D-Link is a California corporation with its sole place of business in Irvine, California. Although some of D-Link's products,

including [*5] the accused products, are sold in Delaware, the connection to this forum ends there. Neither 3Com nor D-link maintains or owns any facility, property, or personnel in Delaware. Instead, the headquarters of both parties are located in California. Neither party has any books, records, or other documents in this district. Apparently, none of the acts related to the development of the accused products occurred in this district, while many, if not all, of these acts occurred in California. Clearly, litigating this case there would cause less disruption to business operations of each corporation, while eliminating the cost and time of cross-country transportation of persons and documents. In addition, D-Link was forced to retain local counsel for purposes of litigating in this district. Were the case transferred to California, this additional expense would not be required.

In addition, none of the anticipated third-party witnesses is subject to compulsory process in Delaware, but they may be compelled to testify in the Northern District of California. These witnesses include individuals involved in the development of the accused products, such as employees of the manufacturers of the products, [*6] Realtek Semiconductor Corp. ("Realtek") and Via Technologies, Inc. ("Via"). Realtek and Via are Taiwanese companies with offices and/or agents in northern California. Futhermore, at least one of the inventors of the accused products and one of the prosecuting attorneys could not be compelled to testify in this court. By contrast, each appears to live in northern California, and would be subject to compulsory process there. Finally, at least two witnesses with knowledge of allegedly invalidating prior art are subject to compulsory process in northern California, but not Delaware. Even if these witnesses were willing to travel to Delaware to testify in this court, it is certainly very inconvenient for them to do so, especially compared to traveling to a court in the state of their residence and employment. Convenience, cost, and expediency, then, favor a transfer.

The remaining factors of court congestion, the enforceability of the judgment, and the public polices of the fora neither favor nor counsel against transfer. These factors remain neutral in the court's analysis.

## III. CONCLUSION

In short, Delaware seems to have little interest in the present dispute between these [*7] parties, while justice, convenience, cost, and expediency favor a forum in California. The court recognizes that the Northern District of California is not the plaintiff's choice of forum for the present action; however, it is an exceedingly more convenient and appropriate forum than Delaware. In other words, the movant has shown that 'the litigation would more conveniently proceed and the interest of justice be better served by transfer' to California. *Jumara,* 55 F.3d at 879 (citations omitted). As such, transfer is appropriate.

For the aforementioned reasons, IT IS HEREBY ORDERED that:

    1. The defendant's Motion to Transfer the case to the United States District Court for the Northern District of California (D.I. 11) is GRANTED.

Dated: April 25, 2003

    Gregory M. Sleet

    UNITED STATES DISTRICT JUDGE

LEXSEE 2003 U.S. DIST. LEXIS 2564

**ALLERGAN, INC. and ALLERGAN SALES, LLC, Plaintiffs, v. ALCON LABORATORIES, INC., ALCON RESEARCH LTD., ALCON INC., and BAUSCH & LOMB, INC., Defendants.**

**C.A. No. 02-1682-GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2003 U.S. Dist. LEXIS 2564*

**February 25, 2003, Decided**

**DISPOSITION:** [*1] Defendants' motion to transfer this case granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff patent holders sued defendant competitors, seeking a declaratory judgment regarding the alleged infringement of a patent based on a continuation application of two patents asserted in a prior action. The competitors moved to transfer the action to the Central District of California, Southern Division.

**OVERVIEW:** The patent holders prosecuted the prior suit in the Central District of California. In that suit, two defendants obtained summary judgment against the patent holder. Shortly after the patent holders filed the instant suit, the competitors filed a "mirror image" suit in the Central District of California. They then sought transfer of the instant suit to that district. Based, in part, on the following, the competitors met their burden of demonstrating that transfer was appropriate: (1) while the patent holders and several of the competitors were Delaware entities, and should reasonably expect to litigate in the forum, there was little connection between Delaware and the instant action or the parties; (2) each party either maintained its principle place of business in California, or had facilities there, whereas no party maintained operations in Delaware; (3) the parties were large and international organizations with apparently substantial assets; and (4) because the parties were already litigating essentially the same issues in California, travel time and convenience in the aggregate would be substantially increased with a transfer of forum.

**OUTCOME:** The court granted the motion.

**LexisNexis(R) Headnotes**

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN1] See *28 U.S.C.S. § 1404*(a).

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN2] In the Third Circuit, when considering a motion to transfer, the court must determine whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum. This inquiry requires "a multi-factor balancing test" embracing not only the statutory criteria of convenience of the parties and the witnesses and the interests of justice, but all relevant factors, including certain private and public interests. These private interests include the plaintiff's choice of forum; the defendants' preference; whether the claim arose elsewhere; and the location of books and record, to the extent that they could not be produced in the alternative forum. Among the relevant public interests are: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; and the public policies of the fora.

**COUNSEL:** For ALLERGAN INC., ALLERGAN SALES LLC, plaintiffs: William J. Marsden, Jr., Fish & Richardson, P.C., Wilmington, DE.

For ALCON LABORATORIES, INCORPORATED, ALCON RESEARCH LTD., ALCON INC., defendants: Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE.

For BAUSCH & LOMB INC., defendant: Jack B. Blumenfeld, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory M. Sleet

**OPINION:**

### MEMORANDUM AND ORDER

### I. INTRODUCTION

On December 16, 2002, the plaintiffs, Allergan, Inc. and Allergan Sales, LLC (collectively "Allergan"), filed the above-captioned action seeking a declaratory judgment against the defendants, Alcon Laboratories, Inc., Alcon Research, Ltd., Alcon, Inc., and Bausch & Lomb, Inc. (collectively "Alcon and B&L"). Specifically, Allergan asserts infringement of its U.S. Patent No. 6,465,464 B2 ("the '464 Patent"). The '464 Patent is based on a continuation application of two Allergan patents asserted in a prior California action.

Presently before the court is Alcon and B&L's motion to transfer this action to the Central District [*2] of California, Southern Division. For the reasons that follow, the court will grant this motion.

### II. BACKGROUND

Both of the plaintiffs are Delaware entities with their principle place of business in Irvine, California. The defendant Alcon Laboratories, Inc. is a Delaware corporation with its principal place of business in Forth Worth, Texas. Alcon Research, Ltd. is a limited partnership organized under the laws of Texas, with Alcon Laboratories, Inc. as a general partner. Alcon, Inc. is the parent of Alcon Laboratories, and is a Swiss corporation headquartered in Hunenberg, Switzerland. Finally, Bausch and Lomb is a New York corporation, with its principle place of business in Rochester, New York.

On January 9, 2002, Allergan filed suit against Alcon and B&L in the Central District of California asserting infringement of United States Patent Nos. 6,199,415 B1 ("the '415 Patent") and 6,248,741 B1 ("the '741 Patent"). Alcon moved for summary judgment of non-infringement, which the court granted on May 8, 2002. *See Allergan, Inc. v. Alcon Laboratories, Inc., 200 F. Supp. 2d 1219 (C.D. Cal. 2002).* B&L subsequently filed a similar motion, which was also granted. [*3]

On October 15, 2002, Allergan obtained the '464 patent, which issued as a continuation of the application that led to the '741 patent, which, in turn, is a continua-tion of the application that led to the '415 patent. The '464 patent is the subject of the current action.

The defendants in the present case filed a "mirror image" declaratory judgment action against Allergan concerning the '464 patent in the Central District of California on December 23, 2002.

### III. DISCUSSION

Alcon and B&L move to transfer this action to the District Court for the Central District of California, Southern Division pursuant to *28 U.S.C. § 1404*(a). Section 1404(a) [HN1] provides that "for convenience of [the] parties and witnesses, in the interest of justice," the court may transfer a civil action "to any other district ... where it might have been brought." *28 U.S.C. § 1404*(a). The parties do not dispute that this action could have been filed in the Central District of California, Southern Division. The court will, therefore, move on with the inquiry as directed by the Third Circuit. *See Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).* [*4]

[HN2] When considering a motion to transfer, the court must determine 'whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum.' *Id.* This inquiry requires "a multi-factor balancing test" embracing not only the statutory criteria of convenience of the parties and the witnesses and the interests of justice, but all relevant factors, including certain private and public interests. *Id. at 875, 879.* These private interests include the plaintiff's choice of forum; the defendants' preference; whether the claim arose elsewhere; and the location of books and record, to the extent that they could not be produced in the alternative forum. n1 *Id. at 879.* Among the relevant public interests are: "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; [and] the public policies of the fora." *Id. at 879-80* (citations omitted).

---

n1 The first three of these private interest collapse into other portions of the *Jumara* analysis. The court, therefore, will consider them in the context of the entire inquiry only. *See Affymetrix, Inc. v. Synteni, Inc. and Incite Pharmaceuticals, Inc., 28 F. Supp. 2d 192 (D. Del. 1998).*

---

[*5]

Upon consideration of these factors, the court finds that the defendants have met their burden of demonstrat-

ing that transfer is appropriate. In reaching this conclusion, the court relied on the following considerations, among others: (1) while the plaintiffs and several of the defendants are Delaware entities, and should reasonably expect to litigate in the forum, there is little connection between Delaware and this action or the parties; (2) each party either maintains its principle place of business in California, or has facilities there, whereas no party maintains operations in Delaware; (3) the parties are large and international organizations with apparently substantial assets; (4) because the parties are already litigating essentially the same issues in California, travel time and convenience in the aggregate would be substantially increased with a transfer of forum; and (5) any disparity in court congestion is not so great as to weigh against transfer due to the defendants' "mirror image" action currently pending in the Central District of California, Southern Division. Thus, given the on-going relationship the Central District of California has with the same parties, and [*6] the same, or related, patents, the court concludes that the public and private interests are sufficient to tip the balance of convenience strongly in favor of the defendants.

## III. CONCLUSION

For the aforementioned reasons, IT IS HEREBY ORDERED that:

    1. The defendants' motion to transfer this case (D.I. 6) is GRANTED.

    2. The above-captioned action is hereby TRANSFERRED to the United States District Court for the Central District of California, Southern Division.

Dated: February 25, 2003

    Gregory M. Sleet

    UNITED STATES DISTRICT JUDGE

LEXSEE

**AT HOME CORPORATION, Plaintiff, v. COX COMMUNICATIONS, INC., COX@HOME INC., COMCAST CORPORATION, COMCAST ONLINE COMMUNICATIONS, INC., COMCAST PC INVESTMENTS INC., BRIAN L. ROBERTS and DAVID M. WOODROW, Defendants.**

Civil Action No. 02-1486-JJF

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

2003 U.S. Dist. LEXIS 18320

**October 8, 2003, Decided**

**DISPOSITION:** [*1] Comcast Defendants' Motion for Improper and Inconvenient Venue and Cox Defendants' Motion To Transfer Pursuant To 28 U.S.C. § 1404 were granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff corporation contended that defendants, group one defendants and group two defendants, committed securities violations and breaches of fiduciary duty. The group one defendants moved to dismiss or transfer the action for improper and inconvenient venue. The group two defendants moved to dismiss or transfer for improper venue, or in the alternative, to transfer pursuant to 28 U.S.C.S. § 1404.

**OVERVIEW:** As to the motion filed by the group one defendants, a corporation one, two, and three and an individual, the corporation one and the corporation two were not residents of Delaware. The individual was not a resident of Delaware and did not transact business in Delaware. While the corporation three was organized under Delaware law, it was not qualified to do business in Delaware, and its slight connection to Delaware was overwhelmed by the lack of connection of the other three group one defendants. The court found that plaintiff had not shown that any acts or transactions involved in the case occurred in Delaware. Further, none of plaintiff's factual allegations demonstrated a connection to Delaware. With regard to the public interest factors, plaintiff was engaging in forum shopping and attempting to force the case into the district. Additionally, the local interest of New York, where the transactions that formed the basis of the claims asserted, was stronger than the local interest of Delaware in resolving the dispute. The court found that the convenience of the parties and witnesses

was best be served by transferring the action to the district where proper venue existed.

**OUTCOME:** The group one defendants' motion for improper and inconvenient venue and the group two defendants' motion to transfer were granted. The case was transferred.

**CORE TERMS:** venue, motion to transfer, convenient, motion to dismiss, reasons discussed, collectively, convenience, weigh, securities law, local interest, transferring, transferred, resident, shopping

**LexisNexis(R) Headnotes**

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN1] See 28 U.S.C.S. § 1404(a).

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN2] In the Third Circuit, decisions on motions to transfer are guided by the private and public factors announced in Jumara v. State Farm. When determining whether or not transfer is warranted in the circumstances presented, district courts must balance all of the relevant factors and respect that a plaintiff's choice of forum is entitled to substantial deference and should not be lightly disturbed when it is due to legitimate, rational concerns. The burden is upon the movant to establish that the balance of the interests strongly weighs in favor of transfer, and a transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer.

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN3] When a court finds or it appears based on the circumstances that a party is making an effort at forum shopping, transfer is warranted.

**COUNSEL:** Edmond D. Johnson, Esquire and Michael L. Vild, Esquire of THE BAYARD FIRM, Wilmington, Delaware.

Of Counsel: Joseph S. Allerhand, Esquire, Richard W. Slack, Esquire, and Daniel S. Cahill, Esquire of WEIL, GOTSHAL & MANGES LLP, New York, New York.

Counsel for Plaintiff At Home Corporation.

Donald E. Reid, Esquire of MORRIS, NICHOLS, ARSHT & TUNNELL, Wilmington, Delaware.

Of Counsel: Michael D. Hays, Esquire, Michael D. Rothberg, Esquire, and Daniel D. Prichard, Esquire of DOW, LOHNES & ALBERTSON, PLLC, Washington, District of Columbia.

Counsel for Defendants Cox Communications, Inc., Cox@Home, Inc., and David M. Woodrow.

Barry M. Klayman, Esquire of WOLF, BLOCK, SCHORR AND SOLIS-COHEN, LLP, Wilmington, Delaware.

Of Counsel: Michael S. Shuster, Esquire and Sheron Korpus, Esquire of WHITE & CASE LLP, New York, New York.

Counsel for Defendants Comcast Corporation, Comcast Online Communications, Inc., Comcast PC Investments Inc., and Brian L. Roberts.

**JUDGES:** Farnan, District Judge.

**OPINIONBY:** Farnan

**OPINION:** [*2]

**MEMORANDUM OPINION**

Wilmington, Delaware

**Farnan, District Judge.**

Presently before the Court is the Motion To Dismiss (D.I. 21-1) Or Transfer This Action For Improper And Inconvenient Venue (D.I. 21-2) filed by Comcast Corporation, Comcast Online Communications, Inc., Comcast PC Investments Inc., and Brian L. Roberts (collectively

"Comcast Defendants") and the Motion to Dismiss (D.I. 15-1) or Transfer For Improper Venue (D.I. 15-2), or In The Alternative, To Transfer Pursuant To 28 U.S.C. § 1404 (D.I. 15-3) filed by Cox Communications, Inc., Cox@Home, Inc., And David M. Woodrow (collectively "Cox Defendants"). For the reasons discussed, the Court will grant the Comcast Defendants' Motion for Improper and Inconvenient Venue (21-2) and the Cox Defendants' Motion To Transfer Pursuant To 28 U.S.C. § 1404 (D.I. 15-3).

**BACKGROUND AND ALLEGATIONS OF THE PARTIES**

In this action, At Home Corporation ("At Home") contends defendants Comcast Corporation ("Comcast"), Comcast Online Communications, Inc. ("Comcast Online"), Comcast PC Investments Inc. ("Comcast PC"), and Brian L. Roberts and Defendants Cox Communications, [*3] Inc. ("Cox"), Cox@Home, and David M. Woodrow ("Woodrow") have committed securities violations and breaches of fiduciary duty.

The Comcast Defendants assert that the lack of any connection with Delaware makes a transfer of the action to the Southern District of New York appropriate. The Comcast Defendants contend that the Southern District of New York is an easier and more convenient venue. The Comcast Defendants allege essentially the same arguments in support of their motion to dismiss the case for lack of jurisdiction and improper venue.

By their motion to transfer or dismiss, the Comcast Defendants contend that neither they nor this action have sufficient connections to Delaware to make venue proper here. They assert that Comcast, Comcast Online, and Mr. Roberts have no presence in Delaware. The Comcast Defendants assert that the transactions at issue in At Home's securities law claim did not occur in Delaware and that the Court's subject matter jurisdiction over the claim of breach of fiduciary duty is dependent on jurisdiction over the securities law claim. Consequently, the Comcast Defendants assert, both claims must be dismissed or transferred.

The Cox Defendants also support [*4] transferring this case. The Cox Defendants assert because Comcast is an indispensable party to the instant case and venue is improper as to Comcast, venue is improper as to Cox. Cox claims that the transactions creating the claims At Home asserts are not related to Delaware, and that New York is a more convenient venue for the instant case.

At Home responds that venue is proper in Delaware, and that Delaware is a more convenient venue than New York because the action has significant connections to Delaware.

**DISCUSSION**

The Court will first consider the Motions to Transfer filed by the Comcast and Cox Defendants. 28 U.S.C. § 1404(a) states that [HN1] "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

[HN2] In the Third Circuit, decisions on motions to transfer are guided by the private and public factors announced in Jumara v. State Farm Ins. Co. 55 F.3d 873, 879 (3rd Cir. 1995). When determining whether or not transfer is warranted in the circumstances presented, district courts must balance all of the relevant [*5] factors and respect that a plaintiff's choice of forum is entitled to substantial deference and should not be lightly disturbed when it is due to legitimate, rational concerns. Id. at 883. The burden is upon the movant to establish that the balance of the interests strongly weighs in favor of transfer, and a transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer. See Continental Cas. Co. v. American Home Assurance Co., 61 F. Supp.2d 128, 131 (D.Del. 1999).

## PRIVATE CONSIDERATIONS

The Court finds that the Comcast Defendants do not have a significant relation to Delaware. Comcast and Comcast Online are not residents of Delaware. Comcast is incorporated, and has its principal place of business, in Pennsylvania. Comcast Online has merged with Comcast and is not a distinct entity. Mr. Roberts is not a resident of Delaware and does not transact business in Delaware. While Comcast PC is organized under Delaware law, it is not qualified to do business in Delaware, and its slight connection to Delaware is overwhelmed by the lack of connection of the other three Comcast Defendants.

The Court also finds [*6] that At Home has not shown that any acts or transactions involved in this case occurred in Delaware. Further, the Court finds that none of At Home's factual allegations demonstrate a connection to Delaware.

## PUBLIC CONSIDERATIONS

With regard to the public interest factors, the Court finds that At Home is engaging in forum shopping and attempting to force this case into the District of Delaware. Obviously, [HN3] when a Court finds or it appears based on the circumstances that a party is making an effort at forum shopping, transfer is warranted. Additionally, the Court finds that the local interest of New York, where the transactions that form the basis of the claims asserted is stronger than the local interest of Delaware in resolving this dispute.

After considering the relevant factors for transfer of this case, the Court finds, balancing the relevant private and public factors, that the convenience of the parties and witnesses will best be served by transferring this action to the Southern District of New York where proper venue exists. Accordingly, the Motion to Transfer under 1404(a) will be granted and the case will be transferred to the Southern District of New York.

## CONCLUSION [*7]

For the reasons discussed, the Court will grant the Comcast Defendants' Motion for Improper and Inconvenient Venue and the Cox Defendants' Motion To Transfer Pursuant To 28 U.S.C. § 1404. An Order consistent with this Memorandum Opinion has been entered.

LEXSEE

**BAYER BIOSCIENCE N.V., Plaintiff, v. MONSANTO COMPANY, Defendant.**

**C.A. No. 03-023 GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**2003 U.S. Dist. LEXIS 4594**

**March 25, 2003, Decided**

**DISPOSITION:** [*1] Motion to transfer case granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant company moved pursuant to 28 U.S.C.S. § 1404(a) to transfer plaintiff patentee's action alleging that the company was engaging in activity that infringed its patents.

**OVERVIEW:** For the two years, the patentee and the company engaged in litigation in another district court regarding four other patents assigned to the patentee. The other district court issued a summary judgment order finding that all four of the patents ere unenforceable. The patentee filed the present action involving a related patent, and on the same day the company filed a declaratory judgment action for noninfringement in the other district court. The court held that although the patentee's action was first-filed, the § 1404(a) factors nevertheless weighed in favor of transferring the dispute in the other district court. Given the on-going relationship that the other district court had with the same parties, and the same, or related, patent or patents, the court concluded that the public and private interests were sufficient to tip the balance of convenience strongly in favor of transfer.

**OUTCOME:** The court granted the company's motion to transfer.

**CORE TERMS:** patent, first-filed, convenience, insect, corn, personal jurisdiction, motion to transfer, litigating, lawsuit, weigh, fora, above-captioned, genetically, gene, crops

**LexisNexis(R) Headnotes**

*Patent Law > Jurisdiction & Review > Personal Jurisdiction & Venue > General Overview*

[HN1] Where two patent lawsuits involving the same claims are filed in different jurisdictions, the Federal Circuit requires that the first-filed action be given preference absent special circumstances.

*Civil Procedure > Venue > Change of Venue in Federal Courts*

[HN2] 28 U.S.C.S. § 1404(a) provides that for the convenience of the parties and the witnesses, in the interest of justice, the court may transfer an action to any other district where it might have been brought.

*Civil Procedure > Venue > Change of Venue in Federal Courts*

[HN3] When considering a motion to transfer, the court must determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum. This inquiry requires a multi-factor balancing test embracing not only the statutory criteria of convenience of the parties and the witnesses and the interests of justice, but all relevant factors, including certain private and public interests. These private interests include the plaintiff's choice of forum; the defendants' preference; whether the claim arose elsewhere; and the location of books and records, to the extent that they could not be produced in the alternative forum. Among the relevant public interests are: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; and the public policies of the fora.

**COUNSEL:** For BAYER BIOSCIENCE N V, plaintiff: George Pazuniak, Connolly, Bove, Lodge & Hutz, Wilmington, DE.

For MONSANTO COMPANY, defendant: Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE.

For MONSANTO COMPANY, counter-claimant: Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE.

For BAYER BIOSCIENCE N V, counter-defendant: George Pazuniak, Connolly, Bove, Lodge & Hutz, Wilmington, DE.

JUDGES: Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

OPINIONBY: Gregory M. Sleet

OPINION:

## MEMORANDUM AND ORDER

### I. INTRODUCTION

On January 10, 2003, the plaintiff, Bayer Bioscience, N.V. ("Bayer"), filed the above-captioned action alleging that Monsanto Company ("Monsanto") is engaging in activity that infringes Bayer's U.S. Patent No. 5,659,123 ("the '123 patent").

Presently before the court is Monsanto's motion to transfer the case to the United States District Court for the Eastern District of Missouri pursuant to 28 U.S.C. § 1404(a). For the following reasons, the court will grant this motion. [*2]

### II. BACKGROUND

Bayer is a foreign corporation headquartered in Ghent, Belgium. Monsanto is a Delaware corporation, with its headquarters in St. Louis, Missouri.

The patent at issue involves a corn product that has been genetically modified to express a particular "Bt" gene that makes the corn resistant to a type of Coleopteran insect known as the corn rootworm. For the past two years, Monsanto and Bayer have been engaged in litigation in the Eastern District of Missouri regarding four other patents assigned to Bayer. Those four patents all generally relate to crops genetically engineered with a "Bt gene," purportedly rendering the crops toxic to a class of insects known as Lepidopteran insects.

On December 27, 2002, the Missouri District Court issued a summary judgment order finding that all four of the patents-in-suit in that case were unenforceable due to inequitable conduct. On January 10, 2003, Bayer filed the present action. Also on January 10, 2003, Monsanto

filed a declaratory judgment action for noninfringement in the Missouri District Court.

### III. DISCUSSION

#### A. The "First-Filed" Rule

[HN1] Where two patent lawsuits involving the same claims are filed in [*3] different jurisdictions, the Federal Circuit requires that the first-filed action be given preference absent special circumstances. *See Genentech v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993). The first-filed doctrine also serves to prevent a multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising from common matters. *See id.* at 937.

Applying the first-filed rule, Bayer now argues that it would be improper for the court to transfer this first-filed action to the Eastern District of Missouri. While the court does not dispute that this action is first-filed, albeit only by several hours, for the following reasons, the court concludes that the 1404(a) factors nevertheless weigh in favor of litigating this dispute in Missouri. *See id.* at 937-38 (noting that "the trial court's discretion tempers the preference for the first-filed suit, when such preference should yield to the forum in which all interests are best served.").

#### B. Section 1404(a)

Section 1404(a) [HN2] provides that "for the convenience of [the] parties and [the] witnesses, in the interest of justice," the court may transfer [*4] this action to "any other district where it might have been brought." 28 U.S.C. § 1404(a). Bayer suggests that the Eastern District of Missouri may not have personal jurisdiction over it. n1 Importantly, however, Bayer fails to suggest that it could not have originally brought this action in Missouri, rather than in Delaware. Thus, because Bayer could have brought this action in the proposed transferee district, the court will move on with the inquiry as directed by the Third Circuit. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

---

n1 As it is not the court's province to determine the question of another court's personal jurisdiction, the court expresses no opinion on this issue.

---

[HN3] When considering a motion to transfer, the court must determine 'whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.' *Id.* This inquiry requires "a multi-factor balancing test" [*5] embracing not only the statutory criteria of conven-

ience of the parties and the witnesses and the interests of justice, but all relevant factors, including certain private and public interests. *Id.* at 875, 879. These private interests include the plaintiff's choice of forum; the defendants' preference; whether the claim arose elsewhere; and the location of books and records, to the extent that they could not be produced in the alternative forum. n2 *Id.* at 879. Among the relevant public interests are: "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; [and] the public policies of the fora." *Id.* at 879-80 (citations omitted).

> n2 The first three of these private interest collapse into other portions of the *Jumara* analysis. The court, therefore, will consider them in the context of the entire inquiry only. *See Affymetrix, Inc. v. Synteni, Inc. and Incite Pharmaceuticals, Inc.,* 28 F. Supp. 2d 192 (D. Del. 1998).

[*6]

Upon consideration of these factors, the court finds that Monsanto has met its burden of demonstrating that transfer is appropriate. In reaching this conclusion, the court relied on the following considerations, among others: (1) while the defendant is a Delaware entity, and should reasonably expect to litigate in this forum, there is little connection between Delaware and this action or the parties; (2) no party maintains operations in Delaware; (3) the parties are large and international organizations with substantial assets; (4) because the parties are litigat-

ing apparently related issues in Missouri, travel time and convenience in the aggregate would be substantially increased with a transfer of forum; and (5) any disparity in court congestion is not so great as to weigh against transfer due to the "mirror image" action currently pending in the Eastern District of Missouri. Thus, given the ongoing relationship that the Eastern District of Missouri has with the same parties, and the same, or related, patent or patents, the court concludes that the public and private interests are sufficient to tip the balance of convenience strongly in favor of transfer.

## IV. CONCLUSION [*7]

For the aforementioned reasons, IT IS HEREBY ORDERED that:

> 1. Bayer's Motion for Leave to File a Sur-Reply (D.I. 10) is GRANTED as unopposed.

> 2. Monsanto's Motion to Transfer this case (D.I. 5) is GRANTED.

> 3. The above-captioned action is hereby TRANSFERRED to the United States District Court for the Eastern District of Missouri.

Dated: March 25, 2003

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

LEXSEE

**THE ORIGINAL CREATINE PATENT COMPANY, LTD, Plaintiff, v. KAIZEN, INC., Defendant.**

**Civil Action No. 02-471-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**2003 U.S. Dist. LEXIS 988**

**January 22, 2003, Decided**

**DISPOSITION:** [*1] Defendant's motion to dismiss or, in the alternative, to transfer was granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff patentee filed an amended complaint for patent infringement against defendant corporation. The corporation filed an answer and asserted affirmative defenses, including inequitable conduct and bad faith and then moved to dismiss or to transfer. The patentee responded with a motion to strike and/or dismiss 15 of the corporation's affirmative defenses.

**OVERVIEW:** The court found the balance of private factors weighed in favor of transfer. The record reflected that neither litigant had ties to Delaware. Geographically, Delaware was inconvenient to everyone. All witnesses, documents and employees were located outside of the instant forum. Although the corporation described itself as a world-wide operation, there was nothing presented to corroborate this apparent embellishment. Turning to the public interests, the court found the practical considerations related to trial weighed in favor a transfer. The expense of trial in Delaware weighed more heavily on the corporation. Regardless of the forum, the patentee would incur travel expenses. A transfer to California would have eliminated rather than merely shifting the travel expense of one party. The court was likewise confident that the district court in California was well-equipped to decide the issues implicated, regardless of the pendency of the patentee's other infringement actions before the instant court. Further, considering the corporation was a California corporation conducting business therein, that forum had a more particular interest in the litigation than Delaware.

**OUTCOME:** The corporation's motion to dismiss or, in the alternative, to transfer was granted and the action was transferred.

**CORE TERMS:** patent, convenience, weigh, choice of forum, patents-in-suit, website, fora, motion to dismiss, creatine-containing, world-wide, reside, balance of convenience, deference, patent infringement, motion to strike, third party, store owner, declaration, implicated, embodying, nutrition, invention, internet, inventors, travel

**LexisNexis(R) Headnotes**

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN1] Under 28 U.S.C.S. § 1404(a), a district court may transfer any civil action to any other district where the action might have been brought for the convenience of parties and witnesses and in the interest of justice. Congress intended through § 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice.

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN2] The burden of establishing the need to transfer rests with the movant to establish that the balance of convenience of the parties and witnesses strongly favors the defendants. Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail. The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason.

*Civil Procedure > Venue > Change of Venue in Federal Courts*

[HN3] Although transfer of an action is usually considered as less convenient to a plaintiff if the plaintiff has not chosen its home turf or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer.

*Civil Procedure > Venue > Change of Venue in Federal Courts*

[HN4] The United States Court of Appeals for the Third Circuit indicates the analysis for transfer is very broad. Although emphasizing that there is no definitive formula or list of factors to consider, it has identified potential factors it characterized as either private or public interests. The private interests include: (1) a plaintiff's forum preference as manifested in the original choice; (2) a defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum). The public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.

**COUNSEL:** For ORIGINAL CREATINE PATENT COMPANY, LTD, plaintiff: Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE.

For KAIZEN INC., defendant: David L. Finger, David L. Finger, Esq., Wilmington, DE.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINIONBY:** Sue L. Robinson

**OPINION:**

**MEMORANDUM ORDER**

At Wilmington this 22nd day of January, 2003, having reviewed defendant's motion to dismiss or, in the alternative, to transfer and the papers submitted in connection therewith;

IT IS ORDERED that said motion to transfer (D.I. 14) is granted, for the reasons that follow: n1

> n1 Because the court is transferring the action to California, Kaizen's motion to dismiss for lack of personal jurisdiction is denied as moot. Kaizen's motions for protective orders (D.I. 25, 31) and OCPC's motion to strike (D.I. 10) are denied without prejudice to renew.

1. **Introduction.** On July 11, 2002, plaintiff, The Original Creatine Patent [*2] Co., Ltd. ("OCPC"), filed an amended complaint for patent infringement against defendant Kaizen, Inc. ("Kaizen"). n2 (D.I. 7) The patents-in-suit are United States Patent Number 5,757,159 ("the '159 patent") and United States Patent Number 5,968,544 ("the '544 patent"). OCPC alleges that Kaizen has made, used, offered for sale, and continues to do the same, creatine-containing products embodying the invention patented in the '544 patent. OCPC further contends that Kaizen has marketed and sold creatine-containing products embodying the invention in the '159 patent. Kaizen filed an answer and asserted affirmative defenses, including inequitable conduct and bad faith. (D.I. 9) Kaizen then filed this motion to dismiss or transfer to the Central District of California. (D.I. 10) OCPC responded with a motion to strike and/ or dismiss fifteen of Kaizen's affirmative defenses. (D.I. 10)

> n2 CPC filed the original complaint incorrectly against Kaizen, Inc., a Delaware corporation unrelated to this action. (D.I. 1, 15)

[*3]

2. **Background.** OCPC is an English corporation with its principal place of business in Leeds, United Kingdom. (D.I. 7, P2) OCPC is the assignee of the two patents-in-suit, the '159 patent, issued to inventors Eric Hultman and Roger C. Harris, and the '544 patent, issued to inventors Alan N. Howard and Roger C. Harris. (Id. at PP5-6) While Hultman resides in Sweden, Howard and Harris reside in the United Kingdom. (D.I. 19, Ex. 1) The attorneys who prosecuted the patents are located in Washington, D.C. and Chicago, Illinois. OCPC has filed four other actions to enforce the patents-in-suit against different defendants, all of which are pending before this court.

3. Kaizen is a California corporation with only one office located in Los Angeles, California. (D.I. 15, Ex. A) Kaizen is a corporation involved in the advertising, distribution and sales of health food products. (Id. at P2) In 1998, Kaizen entered a licensing agreement to market,

distribute and sell creatine-containing products from a German company under the trade-name Creapure <TM>. (Id. at P4) Kaizen claims that all its documents, and employees are located in California. With the exception of two potential [*4] witnesses, n3 Kaizen indicates the remaining reside in California.

> n3 There are two witnesses located in Georgia and Canada. ( D.I. 15 P 9)

**4. Standard of Review.** [HN1] Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district where the action might have been brought for the convenience of parties and witnesses and in the interest of justice. Congress intended through § 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 101 L. Ed. 2d 22, 108 S. Ct. 2239 (1988); Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp.2d 192, 208 (D. Del. 1998).

[HN2] The burden of establishing the need to transfer rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." Bergman v. Brainin, 512 F. Supp. 972, 973 (D. Del. 1981) [*5] (citing Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970). "Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail". ADE Corp. v. KLA-Tencor Corp., 138 F. Supp.2d 565, 567 (D. Del. 2001); Shutte, 431 F.2d at 25.

The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. C.R. Bard, Inc. v. Guidant Corp., 997 F. Supp. 556, 562 (D. Del 1998); Siemens Medical Systems, Inc. v. Fonar Corporation, C.A. No. 95-261-SLR, 1995 U.S. Dist. LEXIS 22334, slip. op. at 8 (D. Del. Nov. 1, 1995); Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc., 2001 U.S. Dist. LEXIS 20803, 2001 WL 1617186 (D. Del. Nov. 28, 2001). [HN3] Although transfer of an action is usually considered as less convenient to a plaintiff if the plaintiff has not chosen its "'home turf' or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer. [*6] " In re M.L.-Lee Acquisition Fund II, L.P., 816 F. Supp. 973, 976 (D. Del. 1993).

[HN4] The Third Circuit Court of Appeals has indicated the analysis for transfer is very broad. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). Although emphasizing that "there is no definitive formula or list of factors to consider," id., the Court has identified potential factors it characterized as either private or public interests. The private interests include: "(1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." Id. (citations omitted).

The public interests include: "(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; [*7] (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." Id. (citations omitted).

**5. Discussion.** Kaizen argues the public and private interests weigh in favor of a transfer to the Central District of California. Specifically, Kaizen argues that OCPC has no parties, witnesses or evidence related to this action in Delaware. Kaizen avers that OCPC instituted this action in Delaware for the sole reason of accommodating the convenience of its lawyers, who practice in this state. Kaizen contends that the action actually emanates from Los Angeles, California, the location of its sales center. California is also the location of all events and evidence related to the litigation. (D.I. 15, Ex. A)

**6.** OCPC contends its choice of forum should be afforded deference. (D.I. 19) The Delaware forum was selected because Kaizen has committed patent infringement in this state, argues OCPC. Moreover, the evidence and witnesses necessary to defend against Kaizen's affirmative [*8] defenses are located in Sweden, the United Kingdom, Washington, D.C. and Illinois. Although all of these witnesses will have to travel for trial purposes, OCPC asserts that Delaware is a closer forum than California. Further, because there are three other cases involving the same patents pending before this court, judicial economy will be promoted by maintaining this action. (D.I. 19, Ex. 1) The risk of inconsistent results will be reduced by allowing one judge to become proficient in the patent technology and the relevant facts.

OCPC also raises another issue related to Kaizen's business, or lack thereof, in Delaware. On Kaizen's internet website, the company describes itself as maintaining offices "world-wide," in addition to the California office. (D.I. 19, Ex. 2) The Kaizen website does not accept orders for its products. However, the website does provide a link to an internet nutrition store which sells Kaizen products. According to the declaration of an OCPC attorney, she was able to place post-complaint orders for Kaizen products, including those alleged to infringe the patents-in-suit, from the linked nutrition store. (D.I. 19, Ex. 3) The orders were made from a Delaware computer [*9] and she received the products in Delaware. The attorney states that she was able to buy a nationally distributed magazine at a Delaware bookstore that contained advertisements for Kaizen products. She was also able to purchase, in person, noninfringing Kaizen products from a Delaware store. She states that the owner of the store told her that he has received solicitations to sell the entire line of Kaizen products. OCPC plans to call the Delaware store owner as a third party witness.

In response, Kaizen urges the court to strike the declaration as it contains impermissible double hearsay. (D.I. 20) However, even if it were considered, Kaizen contends it does not establish that Kaizen conducts business in Delaware or sells the accused products here. Moreover, the fact that Kaizen's website describes its operations as "world-wide" still does not establish any business relationship with anyone in Delaware. Kaizen also argues that any problems with having third party witness testifying in California, can be solved by taking the depositions elsewhere.

Since the parties do not dispute that this action could have been initiated in the Central District of California, an examination of the [*10] private issues implicated by a transfer is warranted. The court finds the balance of private factors weighs in favor of transfer. The record reflects that neither litigant has ties to Delaware. Geographically, Delaware is inconvenient to everyone. All witnesses, documents and employees are located outside of this forum. Although Kaizen may describe itself as a world-wide operation, there has been nothing presented to corroborate this apparent embellishment.

With regard to compulsory process problems, OCPC indicates that a Delaware store owner will be called as a trial witness. However, it has not established that this individual will be unwilling to testify outside of Delaware. Absent a demonstrable obstacle to obtaining personal jurisdiction over a third-party witness, the court declines to consider this as a problem.

Turning to the public interests, the court finds the practical considerations related to trial weigh in favor a transfer. As noted, the expense of trial in Delaware will weigh more heavily on Kaizen. Regardless of the forum, OCPC will incur travel expenses. A transfer to California would eliminate rather than merely shifting the travel expense of one party. See [*11] Van Dusen v. Barrack, 376 U.S. 612, 646, 11 L. Ed. 2d 945, 84 S. Ct. 805 (1964).

The court is likewise confident that the Central District of California is well-equipped to decide the issues implicated by this case, regardless of the pendency of OCPC's other infringement actions. Further, considering Kaizen is a California corporation conducting business therein, that forum has a more particular interest in the litigation than Delaware. Accordingly, for the reasons stated, this action is transferred to the Central District of California.

Sue L. Robinson

United States District Judge