**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PFIZER INC., | |
| Plaintiff, | |
| v. | Civil Action No. 06-89 (GMS) |
| TEVA PHARMACEUTICALS USA and TEVA PHARMACEUTICAL INDUSTRIES LTD. | |
| Defendants. | |

**ANSWERING BRIEF OF DEFENDANTS TEVA PHARMACEUTICALS USA, INC. AND TEVA PHARMACEUTICAL INDUSTRIES LTD. IN OPPOSITION TO PFIZER INC.'S CONTINGENT MOTION TO ENJOIN DEFENDANTS FROM PROCEEDING WITH THEIR SUIT FILED IN THE SOUTHERN DISTRICT OF NEW YORK**

Mary B. Matterer #2696
MORRIS, JAMES, HITCHENS & WILLIAMS LLP
222 Delaware Avenue, 10th Floor
P.O. Box 2306
Wilmington, DE 19899-2306
Tel.: (302) 888-6960
Fax: (302) 571-1750
mmatterer@morrisjames.com

*Counsel for Defendants Teva Pharmaceuticals
USA, Inc. and Teva Pharmaceutical Industries Ltd.*

*Of Counsel*:
Steven J. Lee
Elizabeth J. Holland
Sheila Mortazavi
Cynthia Lambert Hardman
KENYON & KENYON LLP
One Broadway
New York, NY 10004
Tel.: (212) 425-7200
Fax: (212) 425-5288

Date: March 23, 2006

# TABLE OF CONTENTS

I.  INTRODUCTION ..........................................................................................................1

II.  NATURE AND STAGE OF THE PROCEEDINGS ..........................................................2

III.  SUMMARY OF ARGUMENT ........................................................................................3

IV.  STATEMENT OF FACTS ..............................................................................................4

    A.  The Related New York Action Concerns the Same Parties,
       Same Accused Products, and Similar Crystal Form Patents.................................. 4

    B.  The Southern District of New York Is Already Familiar with the
       Relevant Technology .......................................................................................... 5

    C.  The Southern District of New York Has Already Deemed Teva's
       DJ Action to be Related to the New York Action ................................................ 5

    D.  The New York Action Is Still Pending ................................................................ 6

    E.  Pfizer Failed to Move for Dismissal of Teva's DJ Action
       In the Southern District of New York .................................................................. 6

V.  ARGUMENT .................................................................................................................7

    A.  Pfizer Is Not Entitled to an Injunction Under the First-Filed Rule
       Because the Delaware Action Is Not "First-Filed" With Respect to the
       New York Action ............................................................................................... 7

    B.  Even if This Action Were Deemed to be "First-Filed," the
       "First-Filed Rule" Would Not Apply ................................................................... 9

        1.  The First-Filed Rule Is An Equitable Doctrine
           That is Not Rigidly Applied....................................................................... 9

        2.  Pfizer Engaged in Forum Shopping ........................................................ 10

VI.  CONCLUSION .............................................................................................................12

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Pages**

*AmberWave Sys. Corp. v. Intel Corp.*, No. 05-321,
    2005 U.S. Dist. LEXIS 30010 (E.D. Tex. Nov 1, 2005) ............................................ 7, 8, 9

*Equal Employment Opportunity Comm'n v. University of Pennsylvania*,
    850 F.2d 969 (3d Cir. 1988)............................................................................... 9, 10

*Filler v. Lernout*, Nos. 01-191, 01-298, 01-379 and 01-380,
    2002 U.S. Dist. LEXIS 2373 (D. Del. Feb. 8, 2002) .......................................... 8

*Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931 (Fed. Cir. 1993)................................ 9

*Hunt Mfg. Co. v. Fiskars Oy Ab*, No. 97-2460,
    1997 U.S. Dist. LEXIS 15457 (E.D. Pa. Sep. 30, 1997) ................................. 9

*Intel Corp. v. AmberWave Sys. Corp.*, No. 05-301,
    2005 U.S. Dist. LEXIS 29830 (D. Del. Nov. 29, 2005) .............................. 7, 8, 9

*Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403 (5th Cir. 1971).................................. 7, 8

*Polaroid Corp. v. Casselman*, 213 F. Supp. 379 (S.D.N.Y. 1962).................................. 9, 10, 12

*Rickey Land & Cattle Co v. Miller & Lux*, 218 U.S. 258 (1910) .................................. 7


**Statutes**

28 U.S.C. § 1404(a) .......................................................................................... 3

35 U.S.C. § 271(a) ............................................................................................ 3

35 U.S.C. § 271(e)(2)(A) .................................................................................. 2

Defendants Teva Pharmaceuticals USA, Inc. ("Teva USA") and Teva Pharmaceutical Industries Ltd. ("Teva Ltd.") (collectively, "Teva") respectfully submit this brief in opposition to the contingent motion of plaintiff Pfizer Inc. ("Pfizer") to enjoin Teva from proceeding with its mirror-image declaratory judgment action in the United States District Court for the Southern District of New York ("Teva's DJ Action").

## I.    INTRODUCTION

In its briefs in support of its motion to transfer (D.I. 9 and 26), Teva demonstrated that transfer of this case to the Southern District of New York, where a related action between Teva USA and Pfizer (the "New York Action") has been pending for over two years, would serve the interests of justice and would be convenient for the parties and witnesses.  Teva also demonstrated that Pfizer's choice of Delaware as the forum for this suit does not reflect any rational and legitimate concerns.  In the current motion, Pfizer seeks to benefit from its forum shopping by asking the Court to enjoin Teva from prosecuting its DJ Action because it was not "first-filed."

Pfizer is not entitled to the injunction it seeks under the first-filed rule for two reasons.  First, this action is not "first-filed" with respect to the New York Action, which involves the same parties, the same accused products and closely related patents. The principles of comity underlying the first-filed rule require that this case be transferred to the Southern District of New York, where the first-filed New York Action is pending.

Second, even if this action were deemed to be "first-filed," the first-filed rule, which is an equitable doctrine, would not apply here because Pfizer's filing was motivated by forum shopping and/or bad faith.

That Pfizer has engaged in forum shopping cannot reasonably be disputed. Pfizer maintained for over two years in the New York Action that Teva's accused azithromycin tablets contain a particular crystalline form of azithromycin, azithromycin dihydrate. In the current case (and Teva's mirror-image DJ Action), Pfizer inconsistently alleges that the same Teva tablets contain, instead, a different crystalline form of azithromycin, azithromycin sesquihydrate.

The New York Action and Teva's DJ Action are both assigned to Judge Loretta A. Preska. By filing suit in Delaware, Pfizer hoped to avoid litigating the current dispute before Judge Preska, who is in the best position to evaluate Pfizer's inconsistent arguments. Pfizer's true motive is evident from the fact that it has come to this Court seeking an injunction against further proceedings in Teva's Southern District of New York DJ Action, rather than making a motion before Judge Preska to dismiss Teva's DJ Action on the basis of the first-filed rule.

Moreover, Pfizer's stated reasons for filing suit in Delaware simply highlight the fact that Delaware has no real connection to the subject matter of this litigation.

Accordingly, Pfizer's attempts to benefit from its forum shopping should be rejected, and its motion should be denied. This case should be transferred to the Southern District of New York, as requested by Teva.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

Pfizer filed its complaint in this action on February 8, 2006. (D.I. 1, Complaint.) In the complaint, Pfizer alleges that Teva USA infringed U.S. Patent No. 6,977,243 ("the '243 patent") under 35 U.S.C. § 271(e)(2)(A) by filing Abbreviated New Drug Application ("ANDA") Nos. 65-153, 65-193 and 65-150, seeking to market 250

mg, 500 mg and 600 mg generic azithromycin tablets, respectively, and under 35 U.S.C. § 271(a) by importing and selling its azithromycin products. (*Id.* ¶¶ 25-28.) In addition, Pfizer alleges that Teva Ltd. has actively induced Teva USA to directly infringe the '243 patent. (*Id.* ¶ 33.)

On February 23, 2006, prior to answering the complaint, Teva filed a motion to transfer venue to the Southern District of New York pursuant to 28 U.S.C. § 1404(a), in the interests of justice and for the convenience of the parties and witnesses. Pfizer filed its opposition (D.I. 18) on March 9, 2006, and simultaneously filed the current motion to enjoin Teva from proceeding with Teva's DJ Action. (D.I. 21.) Briefing on Teva's motion to transfer venue was completed on March 17, 2006.

Teva USA and Teva Ltd. answered the complaint on March 1, 2006 and March 15, 2006, respectively. (D.I. 16, 25.) A Rule 16 conference has not been scheduled, discovery has not yet begun, and no trial date has been set.

On February 8, 2006, *after* filing its complaint against Teva, Pfizer also filed a Complaint against Sandoz on the '243 patent. Pfizer did not indicate at the time of filing that the Sandoz case was related to the current action, and the later-filed Sandoz action was assigned to Judge Farnan.

## III.    SUMMARY OF ARGUMENT

1.    Pfizer's current action is not "first-filed" with respect to the New York Action, in which Teva USA and Pfizer have been litigating substantially similar issues for over two years. In particular, the infringement issues in both this action and the New York Action turn on the crystalline form of azithromycin in Teva's accused products.

2.    Pfizer misstates the first-filed rule when it suggests that this Court is "required" to enjoin Teva's DJ Action. The first-filed rule is based on equitable

considerations.  To the extent this action is deemed to be first-filed, there are at least two well-recognized exceptions to the first-filed rule – bad faith and forum shopping – that justify a departure from the rule in this case.

## IV.    STATEMENT OF FACTS

### A.    The Related New York Action Concerns the Same Parties, Same Accused Products, and Similar Crystal Form Patents

The New York Action between Teva USA and Pfizer has been pending in the Southern District of New York for over two years.  (D.I. 13, Declaration of Cynthia Lambert Hardman in Support of Teva's Motion to Transfer ("Hardman Transfer Dec.") Exs. A and B.)  The accused products in the New York Action are the same azithromycin products that are now the subject of this suit and Teva's DJ Action.  (D.I. 1, ¶¶ 19-21, 23; D.I. 13, Hardman Transfer Dec. Ex. C, Counterclaims of Pfizer Inc., ¶¶ 11-12, 20; Ex. D, Counterclaims of Pfizer Inc., ¶¶ 11-12, 19; Ex. G, ¶¶ 10-11.)  The patent in suit in this case and Teva's DJ Action, the '243 patent, claims azithromycin sesquihydrate, a particular crystalline form of the drug azithromycin.  (D.I. 1 ¶ 16 and Exs. A and B.)  The patent in suit in the New York Action, U.S. Patent No. 6,268,489 ("the '489 patent"),[1] also claims a crystalline form of azithromycin, azithromycin dihydrate.  (D.I. 13, Hardman Transfer Dec. Exs. A and B, at Exhibit B.)  In each of these actions, the issue of infringement turns on the identity of the crystalline form of azithromycin contained in Teva's azithromycin products.

---

[1]  Pfizer asserts that U.S. Patent No. 5,605,889, which had been at issue in the New York Action, is unrelated to the patent in suit in this case.  (D.I. 22 at 4-5.)  Pfizer granted Teva a covenant not to sue on that patent over a year ago, and it was not the subject of any substantive briefing to the New York court. (D.I. 13, Hardman Dec. ¶ 4.)

**B.    The Southern District of New York Is Already Familiar with the Relevant Technology**

In the New York Action, the parties submitted extensive briefing to Judge Preska in September 2005 concerning the same complex technological issues that will be relevant in the present action, including, among other things, the analytical techniques that can sometimes be used to identify the particular crystalline form of a compound contained in a sample, such as x-ray crystallography, infrared spectroscopy, solid-state nuclear magnetic resonance spectroscopy and Raman spectroscopy. (D.I. 13, Hardman Transfer Dec. ¶ 6.) Judge Preska also held several conferences with the parties over the more than two years of litigation in which the relevant technological issues were discussed. (D.I. 27, Supplemental Declaration of Cynthia Lambert Hardman in Support of Teva's Motion to Transfer ("Hardman Supp. Transfer Dec."), ¶ 2.) Moreover, Judge Preska will be dealing with these issues in connection with Teva's motion for attorney's fees in the New York Action. (*Id.* at ¶ 9.)

**C.    The Southern District of New York Has Already Deemed Teva's DJ Action to be Related to the New York Action**

On February 14, 2006, when Teva's DJ Action was filed in the Southern District of New York, Teva indicated on the Civil Cover Sheet that the newly-filed case was related to the New York Action pending before Judge Preska. (*Id.* at ¶ 3 and Ex. J.) As required by Local Rule in the Southern District of New York, Teva also submitted a "Statement of Related Case," which explained why Teva's DJ Action was related to the New York Action. (*Id.* at ¶ 3 and Ex. K.)

On February 17, 2006, Judge Preska held a teleconference with counsel in the New York Action during which the current action, Teva's DJ Action, and Teva's transfer motion were discussed. (*Id.* at ¶¶ 5-6.) On February 24, 2006, after reviewing

5

the complaint and Statement of Related Case in Teva's DJ Action, and after discussing the '243 sesquihydrate litigation with the parties, Judge Preska accepted Teva's DJ Action as a related case to the New York Action. (*Id.* at ¶ 7 and Exs. M-N.)

**D.    The New York Action Is Still Pending**

At the February 17, 2006 teleconference, Judge Preska did not grant Pfizer permission to make a motion to dismiss in the New York Action. Instead, Judge Preska simply ordered that "the parties' motions for discovery and summary judgment (docket nos. 35 and 37) are denied as moot," and that Teva USA could move for attorneys' fees. (D.I. 27, Hardman Supp. Dec. ¶ 6; D.I. 13, Hardman Dec. Ex. F.)

On March 15, 2006, Teva USA filed its attorneys' fees motion in the New York Action, incorporating by reference papers that were filed in support of the parties' summary judgment motions. (D.I. 27, Hardman Supp. Dec. ¶ 9.) Teva USA's attorneys' fees motion depends heavily upon the analytical testing of Teva's azithromycin products that Teva and Pfizer performed in connection with the New York Action, and the conclusions that can reasonably be drawn from each of the analytical techniques that were used. (*Id.*; D.I. 13, Hardman Dec. ¶ 6.) Those same issues will undoubtedly have to be considered in this action.

**E.    Pfizer Failed to Move for Dismissal of Teva's DJ Action In the Southern District of New York**

Pfizer has not made a motion to dismiss Teva's DJ Action. Instead, Pfizer answered the complaint on March 7, 2006, and interposed counterclaims. (*Id.* at ¶ 8.)

## V.     ARGUMENT

### A.     Pfizer is Not Entitled to an Injunction Under the First-Filed Rule Because the Delaware Action Is Not "First-Filed" With Respect to the New York Action

Pfizer's motion is predicated upon the application of the "first-filed rule." According to Pfizer, the current action is the "first-filed case" because it was filed six days before Teva's DJ Action.  (D.I. 22 at 3, 6.)  While this action may be first-filed vis-à-vis Teva's DJ Action, it cannot be considered first-filed with respect to the related New York Action, which has been pending before Judge Preska for over two years.

As Pfizer states in its Opening Brief, the first-filed rule applies "where cases *involving the same basic set of facts* are pending in federal courts of equal rank." (D.I. 22 at 5 (emphasis added).)   In this case, the first-filed New York Action involves the same basic facts as the current action.  Both cases revolve around the identity of the crystalline form of azithromycin in Teva's azithromycin products.

While the Third Circuit has not directly addressed the issue, other courts have found that application of the first-filed rule does not require that the first-filed and second-filed cases be identical.  Rather, the first-filed rule is applied as long as there is "overlap" in the substantive issues in the two cases.  *See, e.g., Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 n.6 (5th Cir. 1971) (considering overlap in "substantive issues" in deciding whether a case is first-filed) (quoting *Rickey Land & Cattle Co. v. Miller & Lux*, 218 U.S. 258, 262 (1910)); *Intel Corp. v. AmberWave Sys. Corp.*, No. 05-301, 2005 U.S. Dist. LEXIS 29830, *5 (D. Del. Nov. 29, 2005) (copy attached hereto) (first-filed rule applied when the technology involving two different patents was "closely enough related"); *AmberWave Sys. Corp. v. Intel Corp.*, No. 05-321, 2005 U.S. Dist. LEXIS 30010, *4 (E.D. Tex. Nov. 1, 2005) (copy attached hereto) (first-filed rule is applied

7

when two cases "involve closely related questions or subject matter or the core issues substantially overlap, but the core issues do not need to be identical.") (citations omitted); *Filler v. Lernout*, Nos. 01-191, 01-298, 01-379 and 01-380, 2002 U.S. Dist. LEXIS 2373, *7 (D. Del. Feb. 8, 2002) (copy attached hereto) (transferring four cases that involved "the same set of facts, although not necessarily the same claims" as those pending in an earlier filed case in another district).

In *Mann*, the defendants had filed a patent-related declaratory judgment action in New York.  Mann subsequently filed a patent infringement action in the Western District of Texas concerning the same accused products, but a different, yet related, patent, and moved to enjoin the New York action.  439 F.2d at 406.  The Texas court granted Mann's motion.  *Id.*  In reversing, the Fifth Circuit found that the New York court had "prior jurisdiction over common subject matter" because "the overall content of each suit . . . would likely overlap to a substantial degree."  *Id.* at 407.  The Fifth Circuit directed the Texas court to either dismiss the Texas action or transfer it to the Southern District of New York.  *Id.* at 408.

Similarly, in the Delaware and Texas *Intel* cases, the courts found that a Delaware action was "first-filed" with respect to Texas actions that involved the same parties, the same accused products, but different, yet related, patents involving the same basic technology.  *Amberwave*, 2005 U.S. Dist. LEXIS 30010, at *2, 5 (finding "substantial overlap" even though the closely related patent did not arise from the same chain of applications); *Intel*, 2005 U.S. Dist. LEXIS 29830, *8 (same).  As the Delaware court noted, the first-filed rule applied because presentations on infringement in both

cases would require familiarity with "the same field of art, the same fundamental sciences and technology . . . [and] the same allegedly infringing devices."  *Id.* at *7.

Here, as in the *Mann* and *Intel* cases, the first-filed New York Action involves the same parties, the same accused products, the same technology, and related patents.  Accordingly, the New York Action should be considered the "first-filed" case, and principles of comity support transfer of this case to the Southern District of New York.[2]

**B.    Even if This Action Were Deemed to be "First-Filed," the "First-Filed Rule" Would Not Apply**

**1.    The First-Filed Rule Is An Equitable Doctrine That is Not Rigidly Applied**

Contrary to Pfizer's assertions, exceptions to the first-filed rule "are not rare, and are made when justice or expediency requires, as in any issue of choice of forum."  *Hunt Mfg. Co. v. Fiskars Oy Ab*, Civ. Action No. 97-2460, 1997 U.S. Dist. LEXIS 15457, *7 (E.D. Pa. Sep. 30, 1997) (citing *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993)).  Recognized exceptions include "when the choice of forum of the first-filed case was the result of forum shopping" and when "the balance of convenience favors the second forum."  *Id.* at *6 (citations omitted).

Pfizer's suggestion that the application of the first-filed rule is somehow mandatory in this case is contradicted by the very cases that it cites in support of its motion.  *See, e.g., Equal Employment Opportunity Comm'n v. University of Pennsylvania*, 850 F.2d 969, 977 (3d Cir. 1988) (stating that "[t]he letter and spirit of the

---

[2]  Pfizer argues in a footnote, without citing any authority, that the New York Action cannot be first-filed because "it did not address the '243 patent."  (D.I. 22 at 6.)  Contrary to Pfizer's assertion, the *Mann* and *Intel* decisions demonstrate that application of the first-filed rule does not require that the same patent be at issue in both cases.

first-filed rule . . . are grounded on equitable principles" and upholding a district court's

decision not to enjoin a second-filed case); *Polaroid Corp. v. Casselman*, 213 F. Supp.

379, 384 (S.D.N.Y. 1962) (declining to enjoin a second-filed case).  As the Third Circuit

explained in *EEOC*:

> The first-filed rule encourages sound judicial administration and promotes
> comity among federal courts of equal rank.  It gives a court "the power" to
> enjoin the subsequent prosecution of proceedings involving the same
> parties and the same issues already before another district court.  *That
> authority, however, is not a mandate directing wooden application of the
> rule without regard to rare and extraordinary circumstances, inequitable
> conduct, bad faith, or forum shopping.*  District courts have always had the
> discretion to retain jurisdiction given appropriate circumstances justifying
> departure from the first-filed rule.

850 F.2d at 971-72 (citations omitted) (emphasis added).  The *Polaroid* court similarly

stated:

> The problem of whether to enjoin another action involving the same
> parties and issues, however, cannot be solved by blind application of a
> mechanical "rule of thumb."  Rather, its solution requires a balancing not
> of empty [filing date] priorities but of equitable considerations genuinely
> relevant to the ends of justice.

213 F. Supp. at 381.

The equitable considerations in this case, as well as the interests of justice,

support transfer of this case to the Southern District of New York.

### 2.    Pfizer Engaged in Forum Shopping

Even if the Delaware action were deemed to be first-filed, two well-

recognized exceptions to the first-filed rule – forum shopping and bad faith – warrant a

denial of Pfizer's motion.  *See, e.g., EEOC*, 850 F.2d at 972 (affirming a district court's

refusal to enjoin a second-filed action due to the first-filed plaintiff's forum shopping).

Despite Pfizer's protestations to the contrary, it is clear that Pfizer brought

this suit in Delaware to avoid having Judge Preska preside over the case, and not for any

10

legitimate reason.  Pfizer cannot dispute that its arguments in this case regarding the contents of Teva's tablets are inconsistent with those that it made before Judge Preska in the related New York Action, or that Judge Preska is aware of those inconsistencies. Pfizer's forum shopping could not be any more transparent.  Given that Pfizer has deliberately chosen to seek an injunction from this Court, instead of seeking a dismissal of Teva's DJ Action from Judge Preska herself, Pfizer's assertion that it is not forum shopping in the hopes of avoiding Judge Preska is simply not credible.

Pfizer weakly argues that it did not engage in forum shopping because the New York Action is "effectively over" and "unrelated" to the subject matter of this litigation.  (D.I. 22 at 5, 7.)  In particular, Pfizer claims that the patent at issue in the New York Action is "unrelated" to the patent at issue in this case (*id.* 22 at 7), and that "the issues to be considered in the Delaware Action were never considered or addressed in the prior New York Action and could not have been." (*Id.* 22 at 7-8.)  As described in detail in Sections IV.A-IV.D, *supra*, Pfizer is wrong on both counts, as demonstrated by Judge Preska's determination that the cases are related.

Pfizer's other claimed "good faith" bases for bringing this case in Delaware actually suggest that the action should have been brought in New York.  Pfizer has previously acknowledged that Delaware is not its home turf and that none of the parties have any documents, witnesses, or facilities located in Delaware.  (D.I. 18 at 13, 20.)  The only connections between this action and Delaware that Pfizer points to in its Opening Brief are:  (1) the incorporation of two of the parties in Delaware; and (2) the parties' unrelated litigations in Delaware.  (D.I. 22 at 7.)  Pfizer, however, is admittedly located in New York, has litigated there on numerous occasions, and undoubtedly has

relationships with New York counsel, including the attorneys that litigated on its behalf in the New York Action. (D.I. 27, Hardman Supp. Transfer Dec. ¶ 10 and Ex. O.)

Moreover, one of the cases that Pfizer cites in its Opening Brief, *Polaroid*, shows that a weak nexus to the chosen forum, such as the one asserted by Pfizer here, is insufficient to enjoin a second-filed case brought in a more appropriate forum. 213 F. Supp. at 383. In *Polaroid*, a first-filed plaintiff's motion in New York to enjoin a second-filed case was denied, and the defendants' cross-motion to have the case transferred was granted. 213 F. Supp. at 384. In reaching its decision, the *Polaroid* court acknowledged that the plaintiff maintained an office in New York, but nevertheless reasoned that the lack of any "real connection" between the forum and the subject matter of the litigation showed that the case "was imported here for no reason other than forum shopping." *Id.* at 383.

As in *Polaroid*, the only logical explanation for Pfizer's conduct here is forum shopping, and its request for an injunction against Teva's DJ Action must therefore be denied.

## VI.    CONCLUSION

For the foregoing reasons, as well as those set forth in connection with Teva's motion to transfer this case to the Southern District of New York (D.I. 9 and 26), Teva respectfully requests that the Court deny Pfizer's motion.

Dated: March 23, 2006                By: _____/s/ Mary B. Matterer_____
                                         Mary B. Matterer #2696
                                         MORRIS, JAMES, HITCHENS & WILLIAMS LLP
                                         222 Delaware Avenue, 10th Floor
                                         P.O. Box 2306
                                         Wilmington, DE  19899-2306
                                         Tel.: (302) 888-6800
                                         mmatterer@morrisjames.com

                                         *Counsel for Defendants Teva Pharmaceuticals*
                                         *USA, Inc. and Teva Pharmaceutical Industries Ltd.*

*Of Counsel:*
Steven J. Lee
Elizabeth J. Holland
Sheila Mortazavi
Cynthia Lambert Hardman
KENYON & KENYON LLP
One Broadway
New York, NY 10004
Tel.: (212) 425-7200
Fax:  (212) 425-5288

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 23rd day of March, 2006, I electronically filed the foregoing document, **ANSWERING BRIEF OF DEFENDANTS TEVA PHARMACEUTICALS USA, INC. AND TEVA PHARMACEUTICAL INDUSTRIES, LTD. IN OPPOSITION TO PFIZER INC.'S CONTINGENT MOTION TO ENJOIN DEFENDANTS FROM PROCEEDING WITH THEIR SUIT FILED IN THE SOUTHERN DISTRICT OF NEW YORK,** with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Rudolf E. Hutz
Connolly Bove Lodge & Hutz LLP
1007 N. Orange Street
Wilmington, DE 19801


Additionally, I hereby certify that on the 23rd day of March, 2006, the foregoing document was served as indicated:

**VIA HAND DELIVERY**
Rudolf E. Hutz, Esq.
Daniel C. Mulveny, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
Wilmington, DE  19801


By:_____*/s/ Mary B. Matterer*_____
Mary B. Matterer (#2696)
MORRIS JAMES HITCHENS & WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE  19899-2306
Tel.: (302) 888-6800
mmatterer@morrisjames.com

*Counsel for Defendants*

**EXHIBIT A**

2 of 2 DOCUMENTS

**AMBERWAVE SYSTEM CORPORATION, Plaintiff vs. INTEL CORPORATION, Defendant**

**CASE NO. 2:05-CV-321**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, MARSHALL DIVISION**

*2005 U.S. Dist. LEXIS 30010*

**November 1, 2005, Decided**
**November 1, 2005, Filed**

**SUBSEQUENT HISTORY:** Transferred to, Motion granted by *Intel Corp. v. AmberWave Sys. Corp., 2005 U.S. Dist. LEXIS 29830 (D. Del., Nov. 29, 2005)*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant company moved to transfer plaintiff patentee's patent infringement action.

**OVERVIEW:** Two months earlier, the company brought a declaratory judgment action against the patentee, seeking a judgment that the company did not infringe another patent. The company sought to transfer this case to the District of Delaware, where the declaratory judgment action was pending, because the Delaware action was the first-filed action. The instant court concluded that transfer was appropriate. If the court retained this action, there would be two complex and simultaneous actions between the same parties over related technologies and involving the same accused products. Consequently, justice and expediency did not outweigh application of the first-to-file rule.

**OUTCOME:** The motion to transfer was granted.

**LexisNexis(R) Headnotes**

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN1] When overlapping suits are filed in multiple federal courts, each court must decide whether to keep the case, or whether interests of judicial economy favor transferring the case to a sister court so all issues can be resolved in the same forum. The general rule favors the forum of the first-filed action as the forum for resolving all the issues in dispute. Exceptions to this rule though are not rare, and are made when justice or expediency requires.

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN2] The first-to-file rule applies when the two actions involve closely related questions or subject matter or the core issues substantially overlap, but the core issues do not need to be identical. A subsequent action that does not have complete identity of the parties can still substantially overlap on the substantive issues of the first-filed action, warranting dismissal or transfer.

*Civil Procedure > Venue > Change of Venue in Federal Courts*

[HN3] Once it has been proven that the two actions might substantially overlap, the court with the second-filed action transfers the case to the court where the first-filed action is pending. The court of the first-filed action then decides if the cases actually do substantially overlap and require consolidation.

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN4] For purposes of the first-to-file rule, substantial overlap does not require that the core issues be identical, but that the two actions will involve closely related questions or subject matter.

**COUNSEL:** [*1] For AmberWave Systems Corporation, Plaintiff: Sidney Calvin Capshaw, III, Brown McCarroll -- Longview, Longview, TX; Amir A Naini, Christopher A Vanderlaan, David I Gindler, Jason G Sheasby, Irell & Manella LLP -- Los Angeles, Los Angeles, CA; Franklin Jones, Jr, Jones & Jones -- Marshall, Marshall, TX; Morgan Chu, Irell & Manella, Los Angeles, CA; Otis W Carroll, Jr, Ireland Carroll & Kelley, PC, Tyler, TX; Thomas John Ward, Jr, Law Office of T John Ward Jr PC, Longview, TX.

For Intel Corporation, Defendant: George M Newcombe, Harrison J Frahn, IV, Jeffrey E Ostrow, Patrick E King, Simpson Thacher & Bartlett LLP, Palo Alto, CA; Harry Lee Gillam, Jr, Gillam & Smith, L.L.P., Marshall, TX; Henry B Gutman, Jeremy S Pitcock, Simpson Thacher & Bartlett -- New, York, New York, NY; John Frederick Bufe, Michael Edwin Jones, Potter Minton, Tyler, TX.

**JUDGES:** LEONARD DAVIS, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Leonard E. Davis

**OPINION:**

### MEMORANDUM OPINION AND ORDER

Before the Court is Intel's Motion to Transfer (Docket No. 17). Having considered the parties' written submissions, the Court **GRANTS** the motion.

### BACKGROUND

AmberWave Systems Corporation brought this suit on July 15, 2005 accusing [*2] Intel Corporation of infringing *U.S. Patent No. 6,881,632.* Two months earlier, on May 17, 2005, Intel brought a declaratory judgment action against AmberWave in Delaware seeking a judgment that Intel does not infringe AmberWave's *U.S. Patent No. 6,831,292.* The *'632 patent* teaches a method of constructing inverters and other circuits using strained semiconductor transistors. The *'292 patent* teaches a method minimizing or eliminating the impurities in the semiconductor material while fabricating individual transistors. Thus, the patents are related to different scientific fields in the same area of technology. Amber-Wave and Intel are the only two entities involved in both litigations, and the same products are accused in both litigations.

Intel moves the Court to transfer this case to the Delaware court where the declaratory judgment action is pending. Intel claims the Delaware action is the first-filed action and therefore, under the first-to-file rule, this Court should transfer this action to the Delaware court where the declaratory judgment action is pending.

### APPLICABLE LAW

[HN1] When overlapping suits are filed in multiple federal courts, each court must decide whether to keep [*3] the case, or whether interests of judicial economy favor transferring the case to a sister court so all issues can be resolved in the same forum. *See Tex. Instruments, Inc. v. Micron Semiconductor, 815 F. Supp. 994, 997-98 (E.D. Tex. 1993).* "The general rule favors the forum of the first-filed action" as the forum for resolving all the issues in dispute. *Genentech v. Eli Lilly & Co., 998 F.2d 931, 937 (Fed. Cir. 1993).* Exceptions to this rule though "are not rare, and are made when justice or expediency requires." *Id.*

[HN2] The first-to-file rule applies when the two actions involve closely related questions or subject matter or the core issues substantially overlap, but the core issues do not need to be identical. *Texas Instruments Inc., 815 F. Supp. at 997.* A subsequent action that does not have complete identity of the parties can still substantially overlap on the sub-

stantive issues of the first-filed action, warranting dismissal or transfer. *Superior Sav. Ass'n v. Bank of Dallas, 705 F. Supp. 326, 328-29 (N.D. Tex. 1989); see Save Power Ltd. v. Syntek Fin. Corp., 121 F.3d 947, 950 (5th Cir. 1997). [*4]*

[HN3] Once it has been proven that the two actions might substantially overlap, the court with the second-filed action transfers the case to the court where the first-filed action is pending. The court of the first-filed action then decides if the cases actually do substantially overlap and require consolidation. *Cadle Co. v. Whataburger of Alice, Inc., 174 F.3d 599 (5th Cir. 1999).* The underlying policies supporting the first-to-file rule are comity and the orderly administration of justice. *Superior Sav. Ass'n, 705 F. Supp. at 331.*

**ANALYSIS**

It is undisputed that Intel filed the Delaware action two months before AmberWave brought suit in this Court. The parties do dispute whether the two actions substantially overlap such that the first-to-file rule applies. [HN4] Substantial overlap does not require that the core issues be identical, but that the two actions will involve closely related questions or subject matter. *See Texas Instruments Inc., 815 F. Supp. at 997.* The patents address different scientific aspects, mechanical engineering and electrical engineering, of semiconductor transistors. Thus the patents do not raise identical issues [*5] in the two actions, but the subject matter is closely related. Although not required for substantial overlap, the same parties are involved in both actions. Additionally, the same products are accused in both actions. Importantly, the Honorable Kent A. Jordan, presiding over the Delaware action, thought the cases would involve overlapping issues:

> You guys [AmberWave] have created now a conflict that probably shouldn't have existed by suing the same party in another district. Now, maybe you got a good reason for that and it's just not something I'm aware of but is certainly does, on the face of it, create the potential for conflicting discovery rules and schedules and that is a problem. That is a real problem.

*Intel Corp. v. AmberWave Sys. Corp.*, No. 05-301, Telephonic Conference, September 7, 2005. Overlapping discovery would be much less of a concern for either court if the technologies at issue and products in dispute were unrelated. Based on these considerations, the two actions do involve closely related questions and subject matter such that their core issues substantially overlap.

AmberWave argues that the first-to-file rule should not apply because Intel [*6] brought its declaratory judgment action in a race to the courthouse to gain a strategic advantage while the parties were involved in good faith negotiations. The Court disagrees with AmberWave's perception of the impetus for the declaratory judgment action. AmberWave's evidence, a letter from Intel's counsel to AmberWave's counsel accompanying a copy of the complaint, demonstrates that Intel filed suit after "AmberWave chose to escalate the matter by placing Intel on 'formal notice' [of infringement] and in light of the serious nature of the allegations." Given that AmberWave had escalated the dispute between the parties, it is not clear that the parties were negotiating in such good faith that Intel filed suit only to gain an upper hand in the ongoing negotiations. Thus, this argument does not defeat the application of the first-to-file rule. Additionally, AmberWave has not challenged the propriety of the Delaware action in the Delaware court "in order to facilitate a prompt adjudication of the patent."

AmberWave also argues that convenience weighs against transfer. If this Court retains this action, there will be two complex and simultaneous actions between the same parties over [*7] related technologies and involving the same accused products. Consequently, justice and expediency do not outweigh application of the first-to-file rule. Accordingly, the Court applies the first-to-file rule and transfers the case to Judge Jordan's docket in the District of Delaware.

**CONCLUSION**

Having found that the first-to-file rule applies, the Court **GRANTS** Intel's motion and **ORDERS** the case transferred to Judge Jordan in the District of Delaware.

**So ORDERED and SIGNED this 1st day of November, 2005.**

**LEONARD DAVIS**

**UNITED STATES DISTRICT JUDGE**

LEXSEE 2002 U.S. DIST. LEXIS 2373

**GARY B. FILLER and LAWRENCE PERLMAN, Trustees of the TRA RIGHTS TRUST, Plaintiffs, v. JO LERNOUT, POL HAUSPIE, GASTON BASTIAENS, CARL DAMMEKENS, NICO WILLAERT, KLYNVELD PEAT MARWICK GOERDELER BEDRIJFSREVISOREN, and PAUL BEHETS, Defendants. STONINGTON PARTNERS, INC., STONINGTON CAPITAL CAPITAL APPRECIATION 1994 FUND L.P., STONINGTON HOLDINGS, L.L.C., Plaintiffs, v. CARL DAMMEKENS, KLYNVELD PEAT MARWICK GOERDELER BEDRIJFSREVISOVEN, KPMG UK, PAUL BEHETS, KPMG INTERNATIONAL, KPMG LLP, CORPORATIONS A-Z, JOHN DOES 1-50, Defendants. PAUL G. BAMBERG, ROBERT ROTH, PAUL G. BAMBERG and DONALD B. FLETCHER, JR., as Trustees of the Paul G. Bamberg Trust u/a dated 8/18/89, as amended 10/20/93, and CHERRY F. BAMBERG and DONALD B. FLETCHER, JR., as Trustees of the Cherry F. Bamberg Trust u/a dated 8/18/89, as amended 10/20/93, Plaintiffs, v. JO LERNOUT, POL HAUSPIE, NICO WILLAERT, CARL DAMMEKENS, DIRK CAUWELIER, FERNAND CLOET, JAN COENE, MARC G.H. DE PAUW, HUBERT DETREMMERIE, ROEL PIEPER, RVD SECURITIES, N.V., ALEX VIEUX, GERARD VAN ACKER, BERNARD VERGNES, FRANCIS VANDERHOYDONCK, L & H HOLDING, N.V., L & H HOLDING, III, OLDCO, N.V., L & H INVESTMENT COMPANY, N.V., LEHA, KPMG INTERNATIONAL, KPMG LLP, KPMG UK and KPMG BELGIUM, Defendants. JANET BAKER and JAMES BAKER, JKBAKER LLC and JMBAKER LLC, Plaintiffs, v. KPMG LLP, KPMG INTERNATIONAL, KPMG BELGIUM, KPMG UK, PAUL BEHETS, SG COWEN SECURITIES CORPORATION, JO LERNOUT, POL HAUSPIE, CARL DAMMEKENS, NICO WILLAERT, ROEL PIEPER, and CORPORATIONS A-Z, AND JOHN DOES 1-50, Defendants.**

Civil Action No. 01-191-SLR, Civil Action No. 01-298-SLR, Civil Action No. 01-379-SLR, Civil Action No. 01-380-SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

*2002 U.S. Dist. LEXIS 2373*

**February 8, 2002, Decided**

**DISPOSITION:** [*1] Motions to transfer granted. Actions transferred.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant global speech recognition software company moved to transfer plaintiff stockholders complaint pursuant to *28 U.S.C.S. § 1404*(a).

**OVERVIEW:** The present action arose from a series of events related to security transactions involving the company. After the company filed bankruptcy, the stockholders alleged that fraudulent transactions and accounting practices had enabled the company to artificially inflate its revenues, earnings, and the value of its stock. Similar lawsuits were filed first in the United States District Court for the District of Massachusetts, and the company moved, pursuant to *28 U.S.C.S. § 1404*(a), for transfer to Massachusetts under the first-filed rule. The court granted the motion to transfer the matter because the cases involved the same set of facts, although not necessarily the same claims as those pending in Massachusetts. Since the shareholder actions in Massachusetts were filed first, transfer promoted judicial administration and consistency of results.

**OUTCOME:** The company's motion to transfer was granted.

2002 U.S. Dist. LEXIS 2373, *

**LexisNexis(R) Headnotes**

*Civil Procedure > Venue > Coordination for Trial*
[HN1] The first-filed rule is where in all cases of federal concurrent jurisdiction the court which first had possession of the subject must decide it. Consequently, the second filed action should be stayed or transferred to the court where the first filed action is pending. The rule encourages sound judicial administration and promotes comity among federal courts of equal rank. The decision to transfer or stay the second action is within the discretion of the trial court. However, invocation of the rule will usually be the norm, not the exception. Courts must be presented with exceptional circumstances before exercising their discretion to depart from the first-filed rule.

**COUNSEL:** For GARY B. FILLER, LAWRENCE PERLMAN, plaintiffs (01-CV-191): Elizabeth M. McGeever, Prickett, Jones & Elliott, Wilmington, DE.

For JO LERNOUT, defendant (01-CV-191): Henry A. Heiman, Heiman, Aber, Goldlust & Baker, Wilmington, DE.

For GASTON BASTIAENS, defendant (01-CV-191): Brian A. Sullivan, Werb & Sullivan, Wilmington, DE.

For KLYNVELD PEAT MARWICK GOERDELER BEDRIJFSREVISOREN, defendant (01-CV-191): Kevin R. Shannon, Potter Anderson & Corroon, LLP, Wilmington, DE.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINIONBY:** Sue L. Robinson

**OPINION:**

**MEMORANDUM ORDER**

**I. INTRODUCTION**

Presently before the court are defendants' motions n1 to transfer pursuant to *28 U.S.C. § 1404*(a). For the reasons that follow, the motions will be granted.

n1 C.A. 01-379-SLR, D.I. 4; C.A. 01-380-SLR, D.I. 66; C.A. 01-191-SLR, D.I. 29. In C.A. 01-298-SLR, defendant Klynveld moved to dismiss under the common-law doctrine of forum non conveniens contending that the proper forum is Belgium and that the matter should be dismissed. (D.I. 37)

[*2]

**II. BACKGROUND**

The above captioned actions arise from a series of events related to security transactions involving Lernout & Hauspie Speech Products N.V. ("L & H"). L & H is a global speech recognition software company that offers products and services including automatic speech recognition, text-to-speech, digital speech and music compression and text-to-text translation. (C.A. 01-191-SLR, D.I. 1, P 1)

Plaintiffs Janet Baker and James Baker n2 were majority owners of the shares of Dragon Systems, Inc. ("Dragon"), then a leading worldwide supplier of speech and language technology. L & H was a chief competitor of Dragon. On June 7, 2000, the Bakers purchased L & H n3 stock in an all-stock transaction whereby Dragon was merged into a U.S. subsidiary of L & H, known as L & H Holdings USA, Inc.. This transaction occurred pursuant to an Agreement and Plan of Merger among the Bakers, L & H, L & H Holdings USA Inc., Dragon Systems, Inc., and certain other principal shareholders of Dragon, dated March 27, 2000.

n2 Additional plaintiffs in C.A. 01-380-SLR are JK Baker LLC and JMBaker LLC. Plaintiffs claim damages, as a result of their exchange of their 51% interest in Dragon, worth hundreds of millions of dollars, for artificially inflated L & H stock.

[*3]

n3 Defendant is a Belgium corporation.

Plaintiffs Gary B. Filler and Lawrence Perlman n4 represent Seagate, a world leader in storage technology for Internet, business and consumer applications. Seagate designed, manufactured and marketed products for storage, retrieval and management of data on computer systems, including disc drives, disc drive components, tape drives and software. (C.A. No. 01-191-SLR, D.I. 1, P 1) Seagate n5 alleges it sold its nearly $ 170 million interest in Dragon for L & H stock as part of the Agreement outlined above.

n4 Plaintiffs in C.A. No. 01-191-SLR, and trustees of the TRA Rights Trust.

2002 U.S. Dist. LEXIS 2373, *

n5 Gary B. Filler and Lawrence Perlman, plaintiffs in C.A. 01-191, are the former Co-Chairman of the Board of Seagate and currently the Trustees of the TRA Rights Trust, the sole successor in interest to Seagate for and on behalf of the stockholders of Seagate with respect to any and all claims and causes of action possessed by Seagate arising out of, in connection with, or relating to Seagate's acquisition or ownership of shares of, or holdings in L & H.

[*4]

Plaintiffs Stonington Partners, Inc, Stonington Capital Appreciation 1994 Fund L.P. and Stonington Holdings, L.L.C. n6 purchased L & H stock in a merger of Dictaphone Corporation into a subsidiary of L & H that was consummated in May 2000.

n6 Plaintiffs in C.A. 01-298.

Plaintiffs Paul F. Bamberg, Donald B. Fletcher, Jr., Donald B. Fletcher, J. and Cherry F. Bamberg and Donald B. Fletcher, Jr. n7 were shareholders of Dragon.

n7 Plaintiffs in C.A. 01-379.

In November, 2000, L & H announced it would have to restate its financial statements for 1998, 1999 and the first half of 2000 because of accounting irregularities. (C.A. 01-380-SLR, D.I. 1, P 4) Subsequently, L & H filed for bankruptcy protection in the United States and Belgium, the NASDAQ Exchange delisted L & H stock and investigations followed. A wave of securities fraud actions followed [*5] brought by shareholders of L & H against, inter alia, L & H officers and directors, L & H auditors, and various investment bankers. (C.A. 01-380, D.I. 66)

Essentially, all of the above captioned plaintiffs assert L & H engaged in fraudulent transactions and accounting practices that enabled L & H to artificially inflate its revenues, earnings and the value of its stock. Similar lawsuits were first instituted in the United States District Court for the District of Massachusetts, In re Lernout & Hauspie Securities Litigation, Civil Action No. 00-CV-11589-PBS. n8

n8 The class action complaint was filed on August 4, 2000. C.A. No. 01-380-SLR (D.I. 69, Ex. A). It was subsequently consolidated with other cases in the District of Massachusetts as

well as the Eastern District of Pennsylvania. Id. at Ex. D.

## III. DISCUSSION

More than fifty years ago, the Third Circuit Court of Appeals adopted [HN1] the "first-filed rule" where "in all cases of federal concurrent jurisdiction the court which first had [*6] possession of the subject must decide it." *Crosley Corp. v. Hazeltine Corp., 122 F.2d 925, 929 (3d Cir. 1941)*(quoting *Smith v. M'Iver, 22 U.S. (9 Wheat.) 532, 6 L. Ed. 152 (1824))*. Consequently, the second filed action should be stayed or transferred to the court where the first filed action is pending. *Peregrine Corp. v. Peregrine Indus., Inc., 769 F. Supp. 169, 171 (E.D. Pa 1991); Dippold-Harmon Enterprises, Inc. v. Lowe's Companies, Inc., 2001 U.S. Dist. LEXIS 18547, Civil Action No. 01-532- GMS, 2001 WL 1414868 (D.Del. 2001).* The rule "encourages sound judicial administration and promotes comity among federal courts of equal rank." *E.E.O.C. v. University of Pennsylvania, 850 F.2d 969, 971 (3d Cir. 1988).* The decision to transfer or stay the second action is within the discretion of the trial court. *Id., at 972, 977.* However,

invocation of the rule will usually be the norm, not the exception. Courts must be presented with exceptional circumstances before exercising their discretion to depart from the first-filed rule.

*Id. at 979.*

The court finds the four cases involve the same [*7] set of facts, although not necessarily the same claims as those pending in the United States District Court for the District of Massachusetts. Since the shareholder actions in Massachusetts were filed first, transfer of these subsequently filed Delaware actions will promote judicial administration and consistency of results.

## IV. CONCLUSION

For the reasons stated, at Wilmington, this 8th day of February, 2002, IT IS ORDERED that:

1. The motions to transfer n9 are granted.

n9 C.A. 01-379-SLR, D.I. 4; C.A. 01-380-SLR, D.I. 66; C.A. 01-191-SLR, D.I. 29; 01-298-SLR D.I. 37.

2002 U.S. Dist. LEXIS 2373, *

February 8, 2002

2. The above-captioned actions shall be transferred to the United States District Court for the District of Massachusetts.

Sue L. Robinson

United States District Judge

LEXSEE 1997 U.S. DIST. LEXIS 15457

## HUNT MANUFACTURING CO. v. FISKARS OY AB, FISKARS HOLDINGS, INC., and FISKARS, INC.

### CIVIL ACTION No. 97-2460

### UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

#### *1997 U.S. Dist. LEXIS 15457*

#### September 30, 1997, Decided

**DISPOSITION:** [*1] Defendant's Motion to Dismiss GRANTED. Plaintiff's Motion to Enjoin Defendants from Pursuing Judicial Action in Other Forums DENIED as moot.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff patent infringer brought a declaratory judgment action against defendant patent holder after the holder complained of the infringement. The holder brought an action on the infringement in Wisconsin. The holder here brought a motion to either dismiss the case or transfer it to Wisconsin, while the infringer brought a motion to enjoin the Wisconsin action.

**OVERVIEW:** Patent holder told patent infringer that it was infringing on the holder's patent and demanded that it stop. After telling the holder it would respond to the accusation, the infringer instead brought this action, seeking a declaratory judgment. The holder brought its own action in Wisconsin federal court. The holder filed a motion asking the court either to dismiss the case or transfer it to the Wisconsin court. The infringer filed a motion seeking to enjoin the holder from prosecuting litigation in other courts. The court dismissed the case. The court held that the first-filed rule was tempered by the court's discretion in determining that the infringer was forum-shopping. Also, judicial and litigant economy favored dismissal. Instead of trying to get the Wisconsin case dismissed, the infringer only sought dismissal of one plaintiff. Therefore, if this case was not dismissed there would be duplicative proceedings. The court denied the infringer's motion to enjoin the holder from prosecuting the Wisconsin action as moot.

**OUTCOME:** The court granted the holder's motion to dismiss the infringer's declaratory judgment action. The

court denied the infringer's motion to enjoin the holder from pursuing the Wisconsin patent infringement action as moot.

**LexisNexis(R) Headnotes**

*Civil Procedure > Remedies > Declaratory Relief*
[HN1] The Declaratory Judgment Act, *28 U.S.C.S. § 2201*(a), provides that in a case of actual controversy within its jurisdiction any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

*Patent Law > Infringement Actions > Burdens of Proof*
*Civil Procedure > Appeals > Standards of Review > Abuse of Discretion*
*Patent Law > Inequitable Conduct > General Overview*
[HN2] To demonstrate the presence of an actual controversy the declaratory plaintiff must show that (1) it has acted, or has made preparations to act, in a way that could constitute infringement, and (2) the patentee has created in the declaratory plaintiff a reasonable apprehension of suit for infringement. However, the presence of an actual controversy, while providing authority, does not require the Court to accept jurisdiction over a declaratory judgment action. The Declaratory Judgment Act's "may" language gives the court unique and substantial discretion in deciding whether to declare the rights of litigants. It grants the court leeway in which to make a reasoned judgment whether the investment of time and resources will be worthwhile. The Declaratory Judgment Act is an enabling act that provides the courts with the power, rather than the obligation, to grant relief. Accordingly, the district court's decision to accept or

refuse jurisdiction is reviewed under an abuse of discretion standard.

*Patent Law > Infringement Actions > Defenses > Estoppel & Laches > General Overview*
*Civil Procedure > Remedies > Declaratory Relief*
*Patent Law > Remedies > Declaratory Relief*

[HN3] As between a mirror-image declaratory judgment action and affirmative patent infringement action, the general rule favors the forum of the first-filed action, whether or not it is the declaratory action. However, this presumption is not firm. Exceptions to the first-filed rule are not rare, and are made when justice or expediency requires, as in any issue of choice of forum. Recognized exceptions include when the choice of the forum of the first-filed case was the result of pure forum shopping, if the balance of convenience favors the second forum, or if the first filed action is against a customer of the alleged infringer and the second involves the infringer himself. The court may also depart from the rule based on general considerations of judicial and litigant economy and the just and effective disposition of disputes. Thus, the trial court's discretion tempers the preference for the first-filed suit, when such preference should yield to the forum in which all interests are best served.

*Civil Procedure > Remedies > Declaratory Relief*
*Patent Law > Remedies > General Overview*
*Patent Law > Infringement Actions > General Overview*

[HN4] The purpose of the Declaratory Judgment Act (Act) is to enable a person caught in controversy to obtain resolution of the dispute, instead of being forced to await the initiative of the antagonist. In many cases, the declaratory defendant is prepared to, and does, file its own affirmative suit shortly afterwards. Therefore, a district court cannot dismiss a proper declaratory action merely because affirmative infringement litigation is subsequently brought elsewhere. It may, however, dismiss the action where it is shown that the declaratory action was filed in anticipation of the impending litigation and motivated solely by considerations of forum shopping. Such a case falls outside the Act's purpose, in the patent context, of providing a remedy where a patentee delays suit in order to further damage the alleged infringer's business.

**COUNSEL:** For HUNT MANUFACTURING CO., PLAINTIFF: JOSEPH F. POSILLICO, SYNNESTVEDT & LECHNER, PHILADELPHIA, PA USA.

For FISKARS OY AB, FISKARS HOLDINGS, INC., FISKARS, INC., DEFENDANTS: ANTHONY R. TWARDOWSKI, WOLF, BLOCK, SCHORR AND SOLIS-COHEN, PHILA, PA USA.

For FISKARS OY AB, FISKARS HOLDINGS, INC., FISKARS, INC., DEFENDANTS: DAVID J. HARTH, JOAN L. EADS, NANCY Y.T. HANEWICZ, FOLEY AND LARDNER, MADISON, WI USA.

**JUDGES:** HERBERT J. HUTTON, J.

**OPINIONBY:** HERBERT J. HUTTON

**OPINION: MEMORANDUM AND ORDER**

HUTTON, J.

September 30, 1997

Presently before the Court are the Defendants' Motion to Dismiss, or in the Alternative, to Transfer Venue, and the Plaintiff's opposition thereto. Also before the Court are the Plaintiff's Motion to Enjoin Defendants from Pursuing Judicial Action in Other Forums, and Defendants' response thereto. For the following reasons, Defendants' Motion to Dismiss is GRANTED and Plaintiff's Motion to Enjoin is DENIED.

**I. BACKGROUND**

The Plaintiff, Hunt Manufacturing Co. ("Hunt"), is a Pennsylvania corporation based in Philadelphia. The Defendants are Fiskars Oy AB, a Finnish corporation, and its subsidiaries Fiskars Inc. and Fiskars Holdings, Inc., both Wisconsin corporations (collectively "Fiskars"). Both Hunt and Fiskars are in the business of making paper-cutting products.

Fiskars Oy AB is the owner of United States Patent No. *5,322,001* (the *"001* patent"), and Fiskars Inc. is its exclusive licensee. The 001 patent, issued June 21, 1994, discloses a paper cutter with [*2] a circular blade, mounted on a track. Paper is placed on a flat surface and the circular cutter is drawn along the track to cut the paper.

Hunt manufactures and sells a similar rotary paper-cutter product under the "BOSTON (R) " brand name. Although not relevant to the procedural question before the Court, Hunt alleges that its product does not incorporate the specific aspects of Fiskars' product embraced by the 001 patent.

Earlier this year, Fiskars determined that Hunt's product infringed on the 001 patent. Therefore, on March 4, 1997, Fiskars' attorney sent a letter to Donald L. Thompson, Hunt's President and Chief Operation Offi-

1997 U.S. Dist. LEXIS 15457, *

cer, charging Hunt with patent infringement and unfair competition, and demanding that Hunt immediately cease and desist from such activity. The letter imposed a 14 day deadline to comply in all respects or else Fiskars would bring suit.

On March 10, 1997, Hunt's attorneys notified Fiskars that they had been asked to review the matter, and that they would communicate with Fiskars promptly after completing the review.

The March 18 deadline passed without Fiskars taking any action. Fiskars' attorneys finally called Hunt's on March 28, and Hunt's returned [*3] the call on March 31. Hunt's attorneys told Fiskars' that Hunt would give its response to the infringement charges by April 11, 1997.

Hunt filed the present declaratory judgment action in the Eastern District of Pennsylvania on April 10, 1997. Fiskars first learned of the action on April 14, and was served with summons and complaint on April 17. Fiskars then filed its own affirmative patent infringement suit in the Western District of Wisconsin on April 18, 1997.

In the Wisconsin litigation, Hunt sought only the dismissal of Fiskars, Inc. as a plaintiff against it in the action. See Fiskars, Inc. v. Hunt Mfg. Co., No. 97-C-0255-C, slip op. at 1-2 (W.D.Wi. August 15, 1997) (dismissing plaintiff Fiskars, Inc. for lack of standing as a patentee under 35 U.S.C. § 281 (1994)). Hunt apparently did not file a motion to dismiss the Wisconsin litigation or transfer venue to this Court.

## II. DISCUSSION

In the present motion, Fiskars asks the Court either to dismiss this action or transfer venue to the Western District of Wisconsin. Hunt opposes the motion, and further requests that the Court enjoin the Wisconsin litigation.

### A. Jurisdiction Under the Declaratory [*4] Judgment Act

[HN1] The Declaratory Judgment Act, 28 U.S.C. § 2201(a) (1994), provides that:

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

[HN2] To demonstrate the presence of an actual controversy the declaratory plaintiff must show that (1) it has acted, or has made preparations to act, in a way that could constitute infringement, and (2) the patentee has created in the declaratory plaintiff a reasonable apprehension of suit for infringement. Serco Services Co., L.P. v. Kelley Co., Inc., 51 F.3d 1037, 1038 (Fed. Cir. 1995). In the present case, the parties do not dispute that Hunt has designed and sold a rotary paper-cutter similar to that disclosed in the 001 patent. Likewise, there is little question that Fiskars' March 4th letter to Hunt placed Hunt in reasonable apprehension of being sued for infringement. Therefore, the case presents a controversy sufficient to establish this Court's capacity to hear the case under the [*5] Declaratory Judgment Act.

However, the presence of an actual controversy, while providing authority, does not require the Court to accept jurisdiction over a declaratory judgment action. See EMC Corp. v. Norand Corp., 89 F.3d 807, 813 (Fed. Cir. 1996), cert. denied, 136 L. Ed. 2d 730, 117 S. Ct. 789 (1997). The Act's "may" language gives the Court "unique and substantial discretion in deciding whether to declare the rights of litigants." Wilton v. Seven Falls Co., 515 U.S. 277, 115 S. Ct. 2137, 2143, 132 L. Ed. 2d 214 (1995). It grants the Court leeway in which to make "a reasoned judgment whether the investment of time and resources will be worthwhile." Serco Services, 51 F.3d at 1039. Both the Supreme Court and the Federal Circuit have emphasized recently that the Act is an enabling act that provides the courts with the power, rather than the obligation, to grant relief. See Wilton, 115 S. Ct. at 2144; Norand, 89 F.3d at 813. Accordingly, the district court's decision to accept or refuse jurisdiction is reviewed under an abuse of discretion standard. Norand, 89 F.3d at 813.

### B. Motion to Dismiss

In their motion, the Defendants argue that this action should be dismissed in favor of the [*6] subsequently filed Wisconsin litigation. They state that Hunt mislead them of its intention to bring the present action for the sole purpose of winning the "race to the courthouse." This, they claim, is an abuse of the Declaratory Judgment Act, 28 U.S.C. § 2201 (1994), which was not meant to provide a potential defendant with a means of forum-shopping. Hunt responds that this declaratory judgment action was appropriate under the circumstances, and that the Court should continue to entertain it under the principle that in all cases of concurrent federal jurisdiction the first-filed action should take precedence.

### 1. First-Filed Rule and Exceptions

Hunt is correct that [HN3] as between a mirror-image declaratory judgment action and affirmative patent infringement action, the general rule favors the forum of the first-filed action, whether or not it is the declaratory action. Genentech, Inc. v. Eli Lilly & Co., 998 F.2d 931,

937-38 (Fed. Cir. 1993) (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.,* 342 U.S. 180, 96 L. Ed. 200, 72 S. Ct. 219 (1952)). However, this presumption is not so firm as Hunt suggests. *Novo Nordisk of North America, Inc v. Genentech, Inc.,* 874 F. Supp. 630, 632 (S.D.N.Y. [*7] 1995). Exceptions to the first-filed rule "are not rare, and are made when justice or expediency requires, as in any issue of choice of forum." *Genentech,* 998 F.2d at 937. Recognized exceptions include "when the choice of the forum of the first-filed case was the result of pure forum shopping, or the balance of convenience favors the second forum, or if the first filed action is against a customer of the alleged infringer and the second involves the infringer himself." *Novo Nordisk,* 874 F. Supp. at 632. The Court may also depart from the rule based on general considerations of "judicial and litigant economy" and "the just and effective disposition of disputes." *Serco Services,* 51 F.3d at 1039. "Thus, the trial court's discretion tempers the preference for the first-filed suit, when such preference should yield to the forum in which all interests are best served." Id. (quoting *Kerotest,* 342 U.S. at 184).

## 2. Forum-Shopping Exception Applies

[HN4] The purpose of the Declaratory Judgment Act is "to enable a person caught in controversy to obtain resolution of the dispute, instead of being forced to await the initiative of the antagonist." *Genentech,* 998 [*8] F.2d at 937. See *Serco Services,* 51 F.3d at 1039. In many cases, the declaratory defendant is prepared to, and does, file its own affirmative suit shortly afterwards. Therefore, a district court cannot dismiss a proper declaratory action merely because affirmative infringement litigation is subsequently brought elsewhere. See *Genentech,* 998 F.2d at 938. It may, however, dismiss the action where it is shown that the declaratory action was filed in anticipation of the impending litigation and motivated solely by considerations of forum shopping. See *Serco Services,* 51 F.3d at 1040; *Novo Nordisk,* 874 F. Supp. at 633. Such a case falls outside the Act's purpose, in the patent context, of providing a remedy where a patentee delays suit in order to further damage the alleged infringer's business. See 10A Charles A. Wright, Arthur R. Miller, et al., Federal Practice and Procedure § 2761 (1983).

In Serco Services, the Federal Circuit upheld the Northern District of Texas' decision to dismiss a similar declaratory judgment action as anticipatory. Both the declaratory plaintiff, Serco, and the declaratory defendant, Kelly, manufactured loading dock equipment used in [*9] the trucking industry. *Serco Services,* 51 F.3d at 1037. Kelly sent Serco a December 23, 1992 letter charging Serco with patent infringement, and giving Serco until February 1, 1993 to reply. *Id. at 1038.* Serco re-

sponded on January 29th with its conclusion that its product did not infringe. Id. Kelly took no action for over eight months. Finally, on September 8, 1993, Kelly sent Serco a letter that reiterated the charges and threatened suit if Serco did not comply by September 20th. Id. On the 20th, Serco notified Kelly that it continued to deny the charge of infringement, and that it had taken "the necessary action in Texas" to protect itself. Id. In fact, Serco had filed its declaratory judgment action in the Northern District of Texas on September 17th. Id. Therefore, on the 20th, Kelley filed its own patent infringement action in the Eastern District of Wisconsin. Id.

The Northern District of Texas dismissed Serco's declaratory judgment action in favor of Kelly's subsequent infringement action. *Id. at 1039.* The Court found that Serco's suit was filed in anticipation of Kelley's, and that the balance of convenience favored proceeding in the Wisconsin [*10] forum. The Federal Circuit affirmed, finding that the district court had not abused its discretion in relying on forum-shopping in combination with other factors. *Id. at 1039-40.*

In the present case, the Court finds that Hunt, like Serco, filed its declaratory judgment action solely for forum-shopping purposes. Fiskars believed that Hunt would enter settlement negotiations, as it had in a previous infringement dispute. Its demand letter was merely the first step in the process. Fiskars' failure to bring suit at the conclusion of the fourteen day period indicates not that Fiskars was "hanging the Sword of Damocles" over Hunt, but that Fiskars hoped to settle matters without litigation. Hunt's declaratory judgment action cut short the possibility of extra-judicial settlement. Permitting this case to go forward would discourage similar efforts at informal settlement and promote "irresponsible litigation." See *Davox Corp. v. Digital Sys. Int'l, Inc.,* 846 F. Supp. 144, 148 (D.Mass. 1993) (dismissing declaratory judgment action filed for forum-shopping purposes alone).

Hunt seeks to portray Fiskars as wielding its claim of infringement in a menacing manner, to place a cloud over [*11] Hunt's business. However, Hunt does not allege that Fiskars took any threatening action other than sending its demand letter. Fiskars did not, for example, publicize its claim or threaten Hunt's customers with suit. Instead, Hunt employed the same subterfuge as Serco in an attempt to preempt the "natural plaintiff" in its choice of forum. Hunt's only purpose for bringing this action on the 10th must have been to surprise Fiskars and have this litigation take place in Pennsylvania rather than Wisconsin. Therefore, the Court finds that Hunt filed its declaratory action solely for forum-shopping purposes.

## 3. Judicial and Litigant Economy Favors Dismissal

Whether or not forum-shopping alone is a sufficient basis for dismissal, in this case considerations of judicial and litigant economy further counsel dismissal. See *Serco Services, 51 F.3d at 1039.*

In the Wisconsin litigation, Hunt did not move to dismiss or transfer the proceedings to this Court. Instead, it sought and obtained only the dismissal of Fiskars, Inc. As a result, the Wisconsin litigation continued, and has already been scheduled for trial. Therefore, if the Court does not dismiss this matter there will [*12] be duplicative proceedings, wasting the resources of both the litigants and the federal judiciary.

Hunt argues that the Western District of Wisconsin's dismissal of Fiskars, Inc. as a plaintiff means that only this litigation can afford Hunt complete relief. But Hunt deliberately procured these circumstances by its own motion to dismiss. The Court will not allow Hunt to raise Fiskars, Inc.'s absence in the Wisconsin litigation as grounds for continuing this litigation. Finally, although duplicative proceedings could be avoided by enjoining the Wisconsin action, doing so would unduly reward Hunt's forum-shopping conduct.

**C. Motions to Transfer Venue and to Enjoin Judicial Action**

Given the Court's disposition on Fiskars' Motion to Dismiss, it need not reach its alternative Motion to Transfer Venue. Likewise, Hunt's Motion to Enjoin the Wisconsin action is necessarily denied as moot.

An appropriate Order follows.

**ORDER**

AND NOW, this 30th day of September, 1997, upon consideration of the Defendants' Motion to Dismiss, or in the Alternative, To Transfer Venue, and the Plaintiff's opposition thereto, IT IS HEREBY ORDERED that the Defendant's Motion to Dismiss [*13] is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Enjoin Defendants from Pursuing Judicial Action in Other Forums is **DENIED** as moot.

BY THE COURT:

HERBERT J. HUTTON, J.

LEXSEE 2005 U.S. DIST. LEXIS 29830

**INTEL CORPORATION, Plaintiff, v. AMBERWAVE SYSTEMS CORPORATION, Defendant.**

**Civil Action No. 05-301-KAJ**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2005 U.S. Dist. LEXIS 29830*

**November 29, 2005, Decided**

**PRIOR HISTORY:** *AmberWave Sys. Corp. v. Intel Corp., 2005 U.S. Dist. LEXIS 30010 (E.D. Tex., Nov. 1, 2005)*

**COUNSEL:** [*1] For Intel Corporation, Plaintiff: Josy W. Ingersoll, Karen Elizabeth Keller, Young, Conaway, Stargatt & Taylor, Wilmington, DE.

For Amberwave Systems Corporation, Defendant: Jack B. Blumenfeld, Morris, Nichols, Arsht & Tunnell, Wilmington, DE; Amir A. Naini, Christopher A. Vanderlaan, David I. Gindler, Jason G. Sheasby, Morgan Chu, Pro Hac Vice.

For Amberwave Systems Corporation, Counter Claimant: Leslie A. Polizoti, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

**JUDGES:** Kent A. Jordan, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Kent A. Jordan

**OPINION:**

   **MEMORANDUM ORDER**

**Introduction**

   In this patent case, Intel Corporation ("Intel") seeks a declaratory judgment of non-infringement of certain patent rights held by defendant AmberWave Systems Corporation ("AmberWave"). (See Docket Item ["D.I."] 1 at PP 11-15.) Before me now is Intel's motion (D.I. 30; the "Motion") to supplement its complaint by adding a claim for declaratory judgment of non-infringement as to a patent newly issued to AmberWave, *U.S. Patent No: 6,946,371* (the "*371 patent*"). For the reasons stated herein, I am granting the Motion.

**Background and Procedural History**

   For purposes of this Motion,  [*2]  the relevant background flows primarily from the parties' forum shopping. AmberWave, kicked things off by sending a cease-and-desist letter to Intel on May 9, 2005. (*See* D.I. 31 at Ex. C.) In that letter, counsel for AmberWave identified an issued patent, *U.S. Patent No. 6,831,292* (the "*292 patent*"), and two allowed patent applications, No. 2004/0161947 (the "'947 application") and No. 2004/00445499 (the "'499 application") as having been discussed by the parties in a meeting about AmberWave's concern that Intel was infringing AmberWave's intellectual property rights. (*Id.*) The letter went on to say, "this will serve as formal notice to Intel that its current commercial products ... infringes [sic] claims of the patent and the allowed applications ... ." (*Id.*) Intel responded by filing the present suit on May 17, 2005. (D.I. 1.) In its original complaint, Intel not only specified that it was seeking "a declaration that [it] has not infringed the *'292 Patent* ... ," it also stated that it wished to reserve "all rights to amend this Complaint to seek a declaratory judgment of non-infringement of the patents that issue from the '947 and '499 Applications." (*Id.* at [*3]  P 10.)

Two months later, on July 15, 2005, AmberWave filed suit against Intel in the United States District Court for the Eastern District of Texas, alleging that Intel infringed AmberWave's *U.S. Patent No. 6,881,632* (the "'632 patent"). Intel moved that court to transfer the '632 litigation to this court on the grounds that the '632 litigation and this case substantially overlap and that, because this case was filed first, this court is the appropriate forum to resolve the parties' disputes. (*See* D.I. 50, attaching Nov. 1, 2005 Memorandum Opinion and Order in *AmberWave Sys. Corp. v. Intel Corp.*,2005 U.S. Dist. LEXIS 30010, C.A. No. 2:05-CV-321 (E.D. Tex.) (the "Transfer Order").) The transfer motion was granted on November 1, 2005. (*Id.*)

Meanwhile, on September 20, 2005, the '499 application matured into the '371 patent. The proverbial race to the courthouse somehow began before business hours that same day. AmberWave was able, at 5:50 a.m. Central Time, to leave in a drop box at the U.S. District Court for the Eastern District of Texas a copy of an infringement complaint invoking the '371 patent against Intel. (*See* D.I. 31 at Ex. F.) Less than two hours later, at approximately 8:30 a.m. [*4] Eastern Time, Intel filed its complaint for a declaratory judgment of non-infringement, which is now pending as Civil Action No. 05-682-KAJ in this court. (*See* D.I. 31 at Ex. G.) On September 26th, Intel filed the present Motion, recognizing that the proposed supplementation of the Complaint in this case is duplicative of the non-infringement complaint it has already filed. (D.I. 31 at 2 n.2.)

Basic to its Motion is Intel's claim that the technology involved in the '292 patent and in the '371 patent is so closely connected that it is most just, fair, and efficient to try the parties' disputes over that technology in the same case. (*Id.* at 6-7.) The '292 patent is entitled "Semiconductor Structures Employing Strained Material Layers with Defined Impurity Gradients and Methods for Fabricating Same." ('292 patent, attached to D.I. 1 as Ex. A.) It is directed to fabricating "semiconductor structures and field effect transistors ... incorporating strained material layers and controlled impurity diffusion gradients." (*Id.* at col. 1, lines 17-20.) The '371 patent is entitled "Methods of Fabricating Semiconductor Structures Having Epitaxially Grown Source and Drain Elements. ('371 patent, [*5] attached to D.I. 1 of C.A. No. 05-682-KAJ as Ex. A.) It relates to "methods for fabricating semiconductor devices having substantially facetless raised source and drain elements." (*Id.* at col. 1, lines 16-18.) I do not pretend to have a grasp of the science of semiconductor fabrication, though the parties will no doubt be struggling valiantly to bring me up the learning curve as this case progresses. This much is discernable at this point, however: the technology is closely enough related that the same Intel devices are accused of infringing both patents and AmberWave itself chose to treat the inventions as related by making them the subject of the same infringement discussion last May and the same cease-and-desist letter in the wake of that discussion. (*See* D.I. 31 at Ex. C.)

## Discussion

*Rule 15(d) of the Federal Rules of Civil Procedure* provides that, "upon reasonable notice and upon such terms as are just," a party may be permitted "to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." The application of that rule is within the "broad discretion" [*6] of the court. *Medeva Pharma Ltd. v. Am. Home Prods. Corp.*, 201 F.R.D. 103, 104 (D. Del. 2001). "Leave to supplement should be granted if it will promote the just disposition of the case, will not cause undue prejudice or delay and will not prejudice the rights of any parties." *Id.*

Intel, of course, argues that its proposed supplementation meets that standard and should be allowed. Rather than address that standard, however, AmberWave argues that I should defer ruling until Intel files a motion to transfer in the Eastern District of Texas. AmberWave reasons that its '371 infringement action was filed before Intel's '371 noninfringement action was filed in this court. According to AmberWave, its infringement action is therefore the first filed action for purposes of determining which court should have priority and in deciding where the dispute is to be tried. (D.I. 39 at 6.) That argument ignores the persuasive analysis already undertaken by the court in Texas in the related '632 litigation.

Judge Leonard Davis observed in transferring the '632 litigation from the Eastern District of Texas to this court that the '632 patent n1 and the '292 patent do not raise identical [*7] issues, "but the subject matter is closely related." (Transfer Order at 3.) He concluded that the cases involved "closely related questions and subject matter such that their core issues substantially overlap." (*Id.*) His conclusions in that regard appear to apply with even greater strength to the technology involved in the '371 patent and the '292 patent. While AmberWave argues that its infringement analysis will not overlap in presenting proof regarding the two patents and the infringing devices, only the narrowest and most artificial view of the issues could support that assertion. The more sensible view must acknowledge that, at a minimum, presentations on infringement for both the '292 and the '371 patents will require a judge, on the summary judgment motions that are sure to be filed, and a jury, at any trial of the case, to become familiar with the same field of art, the same

fundamental science and technology associated with methods of semiconductor fabrication, the same allegedly infringing devices, and, in any damages analysis, the same pricing, sales, and related market data. Moreover, because of AmberWave's assertions of willfulness (*see* D.I. 11 at P 24; D.I. 39 [*8] at Ex. I, P 21), it is highly likely that the same or substantially overlapping operative facts regarding Intel's decision-making and AmberWave's negotiations with Intel will also be at issue with regard to both patents. In short, as Judge Davis concluded in the related *'632* litigation, there is substantial overlap of core issues with respect to the alleged infringement of both the *'371* and the *'292 patents.*

n1 "The *'632 patent* teaches a method of constructing inverters and other circuits using strained semiconductor transistors." (Transfer Order at 1.)

That conclusion means that the present case, which preceded AmberWave's filing on the *'371 patent* in Texas by approximately four months is the first-filed action. AmberWave seeks to avoid that consequence by arguing that, even if the cases overlap, this cannot be the first-filed action because the proposed supplementation here cannot relate back to the original filing date of the complaint. According to AmberWave, the *'499* application could not serve as the basis [*9] of any claim until it became the *'371 patent* on September 20th, and therefore it cannot be a claim that relates back to the original May filing date in this case.

As authority, AmberWave relies on *GAF Building Materials Corp. v. Elk Corp. of Dallas, 90 F.3d 479 (Fed. Cir. 1996),* in which the Federal Circuit observed that an issued patent is a prerequisite to subject matter jurisdiction in a patent dispute. *See id. at 483* ("If there is no issued patent, 'no controversy under the patent laws exists, upon which [the accused infringer] can bring an action for declaratory judgment.'" (quoting *Muskegon Piston Ring Co. v. Olsen, 307 F.2d 85, 89 (6th Cir. 1962), cert. denied, 371 U.S. 952, 83 S.Ct. 508, 9 L.Ed.2d 500 (1963)).* That basic ruling does not, however, stretch to fit the circumstances here, as AmberWave would like. *GAF* does not hold that a case in which subject matter jurisdiction already exists cannot be supplemented by adding a dispute over a later-issued patent, nor does it hold that, when such supplementation occurs, relation back to the original filing date is inappropriate for purposes of determining [*10] which of two competing suits should go forward. AmberWave barely takes a pass at distinguishing cases cited by Intel on this issue, n2 saying simply that they are "unpersuasive" because they did not address the argument that AmberWave is pressing. (D.I. 39 at 13.) I disagree, and while I do not need to resolve the question of whether relation back would be appropriate in other circumstances, I am persuaded that, at least for purposes of determining the priority of litigation between this court and the Eastern District of Texas in this case, it is appropriate to consider this the first-filed action.

n2 Those cases include, for example, *Ramsey Group, Inc. v. EGS Intern., Inc., 208 F.R.D. 559, 563 (W.D.N.C. 2002)* (determining to allow supplementation of complaint to add a claim on a later issued patent and noting "the supplemental amended complaint relates back to the date of filing of the original complaint"), and *Cosden Oil & Chem. Co. v. Foster Grant Co., Inc., 432 F.Supp. 956, 960 (D. Del. 1977)* (declaratory judgment plaintiff was "entitled to add to its original complaint a claim for declaration of invalidity and noninfringement of [a later issued patent]").

[*11]

By AmberWave's own reasoning (D.I. 39 at 6), the court with the first-filed action should determine where the parties' dispute over the *'371 patent* should be resolved. For the reasons outlined, I have decided that this court is the more appropriate forum. AmberWave has done nothing to rebut Intel's showing (D.I. 31 at 5-9) that supplementation "will not cause undue prejudice or delay and will not prejudice the rights of any parties." *Medeva Pharma, 201 F.R.D. at 104.* I will already be dealing with the *'292* and the *'632 patents.* It makes no sense to burden the Eastern District of Texas with this third and latest version of the substantially overlapping disputes between the parties. *See EEOC v. Univ. of Pa., 850 F.2d 969, 971 (3d Cir. 1988)* ("The first-filed rule encourages sound judicial administration ... ."), *aff'd, 493 U.S. 182, 110 S. Ct. 577, 107 L. Ed. 2d 571 (1990).*

**Conclusion**

Accordingly, it is hereby ORDERED that (1) Intel's Motion (D.I. 30) is GRANTED; (2) within three days of the date of this Order, Intel shall file its Supplemental Complaint as a separate document, with the attachments required by

Local Rules 3.2 and 15.1; and (3) AmberWave shall [*12] file an answer or otherwise respond to the Supplemental Complaint within 10 days of that pleading being filed as a separate document.

UNITED STATES DISTRICT JUDGE

Kent A. Jordan

Wilmington, Delaware
November 29, 2005